## Docket No. 2024-1710

*In the*

# United States Court of Appeals

*For the*

# Federal Circuit

———————————

BLUE SKY THE COLOR OF IMAGINATION, LLC,

*Plaintiff-Appellant,*

v.

UNITED STATES,

*Defendant-Appellee.*

———————————

*Appeal from the United States Court of International Trade*
*Case No. 1:21-cv-00624-JAR · Senior Judge Jane A. Restani*

## APPELLANT'S OPENING BRIEF

CHRISTOPHER J. DUNCAN, ESQ.
ELON A. POLLACK, ESQ.
STEIN SHOSTAK SHOSTAK POLLACK
& O'HARA, LLP
865 South Figueroa, Suite 1388
Los Angeles, California 90017
(213) 630-8888 Telephone
(213) 630-8890 Facsimile
cduncan@steinshostak.com
elon@steinshostak.com

*Attorney for Appellant,*
*Blue Sky the Color of Imagination, LLC*



# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number**  2024-1710

**Short Case Caption**  Blue Sky the Color of Imagination, LLC

**Filing Party/Entity**  Plaintiff

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: May  24, 2024

Signature:  /s/ Christopher J. Duncan

Name:  Christopher J. Duncan

**FORM 9. Certificate of Interest**

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☒ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☒ None/Not Applicable |
| Blue Sky the Color of Imagination, LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☒  None/Not Applicable            ☐   Additional pages attached

| See Entry of Appearance | | |
|---|---|---|
| | | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☒   Yes (file separate notice; see below)   ☐   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☒   None/Not Applicable            ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF RELATED CASES ................................................. 1

JURISDICTIONAL STATEMENT ...................................................... 1

STATEMENT OF THE ISSUES.......................................................... 2

STATEMENT OF THE CASE.............................................................. 2

SUMMARY OF THE ARGUMENT ..................................................... 7

STANDARD OF REVIEW ................................................................... 8

ARGUMENT .......................................................................................... 9

A.     THE TRIAL COURT ERRED BY CONCLUDING
        THAT THE TARIFF TERM "DIARY" MEANS A BOOK FOR
        WRITING ABOUT FUTURE EVENTS RATHER
        THAN A RECORD OF PAST EVENTS AS THIS
        COURT HELD IN *MEAD*................................................................. 9

        1.     *Mead*'s Definition of "Diary" is Binding Precedent................. 9

        2.     *Mead* Correctly Concluded that the Term "Diary" Means
                A Record of the Past ................................................... 13

        3.     The CIT Incorrectly Concluded that "Diary" Means
                a Book to Write About the Future. ........................................ 14

# <u>TABLE OF CONTENTS (Cont'd)</u>

B.    THE CIT CLEARLY ERRED BY FINDING BLUE SKY
WEEKLY/MONTHLY PLANNING CALENDARS
ARE "DIARIES" IN HEADING 4820 RATHER THAN
"CALENDARS OF ANY KIND" IN HEADING 4910 ................... 19

     1.    Pursuant to GRI 1, Blue Sky Planning Calendars are
Classified in Heading 4910, Because they are Described in
Whole by the Tariff Term "Calendars of Any Kind." ............ 19

     2.    Pursuant to GRI 3(a), Blue Sky Planning Calendars are
Classified In Heading 4910 Because it is More Specific than
Heading 4820 ........................................................................ 25

     3.    Pursuant to GRI 3(b), Blue Sky Planning Calendars are
Classified In Heading 4910, Because Calendars
Give Them Their Essential Character ..................................... 26

     4.    Pursuant to GRI 3(c), Blue Sky Planning Calendars are
Classified in Heading 4910 Because it Occurs Last
In Numerical Sequence. .......................................................... 27

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ............................ 28

CERTIFICATE OF COMPLIANCE

ADDENDUM PURSUANT TO FEDERAL CIRCUIT RULE 28

CERTIFICATE OF SERVICE

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*A.N. Deringer, Inc. v. United States,*
    66 Cust. Ct. 378 (Cust. Ct. 1971).........................................................................26

*Anderson v. Liberty Lobby,*
    477 U.S. 242, 106 S.Ct. 2505, 91L.Ed.2d 202 (1986)......................................23

*Avenues In Leather, Inc. v. United States,*
    317 F.3d 1399 (Fed. Cir. 2003)............................................................................12

*Avenues In Leather, Inc. v. United States,*
    423 F.3d 1326 (Fed. Cir. 2005)..............................................................................9

*Bauer Nike Hockey USA, Inc. v. United States,*
    393 F.3d 1246 (Fed. Cir. 2004)............................................................................25

*CamelBak Prods., LLC v. United States,*
    649 F.3d 1361 (Fed. Cir. 2011)............................................................................20

*Carl Zeiss, Inc. v. United States,*
    195 F.3d 1375 (Fed. Cir. 1999)......................................................................14, 22

*Ford Motor Co. v. United States,*
    157 F.3d 849 (Fed. Cir. 1998)..............................................................................23

*Gerson Co., v. United States,*
    254 F. Supp.3d 1271 (CIT 2017)
    a*ff'd.* 898 F.3d 1232 (Fed. Cir. 2018).................................................................11

*Home Depot USA, Inc. v. United States,*
    30 C.I.T. 445 F. Supp.2d 1278 (2006)
    a*ff'd.* 491 F.3d 1334 (Fed. Cir. 2007)................................................................26

# TABLE OF AUTHORITIES (Cont'd.)

## CASES

*Jilin Forest Industry Jinqiao Flooring Group Co., Ltd. v. United States*
   CAFC Case No. 2023-2245,
   Reply Brief for Defendant-Appellant pp.3-4 (May 13, 2024).......................... 12

*Jing Mei Auto (USA) v. United States*,
   Slip Op. 23-180 2023 WL 9792953 (CIT De. 18, 2023)................................. 15

*JVC Co. of Am., Div. of US JVC Corp. v. United States*,
   234 F.3d 1348 (Fed. Cir. 2000)........................................................... 22

*Kahrs Int'l, Inc. v. United States*,
   35 C.I.T. 924 (2011),
   *Aff'd.* 713 F.3d 640 (Fed. Cir. 2013) ........................................... 9, 13

*La Crosse Tech. v. United States*,
   723 F.3d 1353 (Fed. Cir. 2013).......................................................... 20

*Len-Ron Mfg. Co., Inc. v. United States*,
   334 F.3d 1304 (Fed. Cir. 2003).......................................................... 25

*LeMans Corp. v. United States*,
   660 F.3d 1311 (Fed. Cir. 2011)............................................................ 8

*Lerner New York, Inc. v. United States*,
   37 CIT 604
   908 F. Supp.2d 1313 (2013) ............................................................. 15

*Lynteq, Inc. v. United States*,
   976 F.2d 693 (Fed. Cir. 1992).......................................................... 20

*Magid Glove & Safety Mfg. Co. v. United States*,
   87 F.4th 1352 (Fed. Cir. 2023)......................................................... 14

# TABLE OF AUTHORITIES (Cont'd.)

## CASES

*Marubeni Am. Corp. v. United States,*
    35 F.3d 530 (Fed. Cir. 1994) ............................................................ 16

*Mead Corp. v. United States,*
    283 F.3d 1342 (Fed. Cir. 2002) ................................................ *passim*

*Mendenhall v. Cedarapids, Inc.,*
    5 F.3d 1557 (Fed. Cir. 1993) ............................................................ 12

*Midwest Of Cannon Falls, Inc. v. United States,*
    122 F.3d 1423 (Fed. Cir. 1997) ........................................................ 16

*Millenium Lumber Distrib. v. United States,*
    558 F.3d 1326 (Fed. Cir. 2009) .......................................................... 8

*Orlando Food Corp. v. United States,*
    140 F.3d 1437 (Fed. Cir. 1998) ........................................................ 20

*Park B. Smith, Ltd. v. United States,*
    347 F.3d 922 (Fed. Cir. 2003) ............................................................ 9

*Pillowtex Corp. v. United States,*
    171 F.3d 1370 (Fed. Cir. 1999) ........................................................ 26

*Rohm & Haas Co. v. United States,*
    727 F.2d 1095 (Fed. Cir. 1984) ........................................................ 18

*Russell Stadelman & Co. v. United States,*
    242 F.3d 1044 (Fed. Cir. 2001) ............................................ 13, 15, 18

*Sigma-Tau HealthScience, Inc. v. United States,*
    838 F.3d 1272 (Fed. Cir. 2016) ........................................................ 18

# TABLE OF AUTHORITIES (Cont'd.)

## CASES

*Simod Am Corp. v. United States,*
  872 F.2d 1572 (Fed. Cir. 1989)......................................................... 13

*United States v. United Sates Gypsum Co.,*
  333 U.S. 364,
  68 S.Ct. 525, 92 L.Ed. 746 (1948)................................................. 10

*Victoria's Secret Direct, LLC v. United States,*
  769 F.3d 1102 (Fed. Cir. 2014)........................................................ 8

*Victoria's Secret Direct, LLC v. United States,*
  37 CIT 573;
  908 F. Supp. 2d 1332 (2013) ......................................................... 15

*Wilton Indus., Inc. v. United States,*
  741 F.3d 1263 (Fed. Cir. 2013)...................................................... 20

## STATUTES

28 U.S.C. § 1295 ............................................................................. 1

28 U.S.C. § 1581 ............................................................................. 1

28 U.S.C. § 2636 ............................................................................. 1

## RULES

Fed. Cir. Rule §47.5 ....................................................................... 1

## U.S. CUSTOMS AND BORDER PROTECTION

Customs Ruling HQ 956135 (August 4, 1994) ........................................21

# TABLE OF AUTHORITIES (Cont'd.)

## HARMONIZED TARIFF SYSTEM OF THE UNITES STATES

Chapter 48 Heading 4820 ............................................................. *passim*

Chapter 49 Heading 4910 ............................................................. *passim*

## OTHER AUTHORITIES

301 of the Trade Act of 1974 ......................................................... 2, 3, 4

Cambridge English Dictionary
(https://dictionary.cambridge.org/us/dictionary/essential-british-
english/notebook) ..................................................................... 23

General Rules of Interpretation 1 ................................................. passim

General Rules of Interpretation 2 ........................................................ 24

General Rules of Interpretation 3 ................................................. passim

Oxford English Dictionary
(https://www.oed.com/search/dictionary/?scope=Entries&q=notebook) .......... 23

World Customs Organization's (WCO) Explanatory Notes .......................... 11, 15

## STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. R. 47.5, no appeal in this civil action has been before this or any other appellate court. The following cases in the U.S. Court of International Trade (CIT) will be affected by the Court's decision in this matter: 21-000624 and 22-00008.

## JURISDICTIONAL STATEMENT

Appellant Blue Sky the Color of Imagination, LLC (Blue Sky) seeks review of the judgment issued by the CIT on April 10, 2024, partially granting Blue Sky's Motion for Summary Judgment and denying Appellee United States' (government) Cross-Motion for Summary Judgment. On April 16, 2024, Blue Sky timely appealed the final judgment to this Court, which has exclusive jurisdiction over an appeal from the CIT. 28 U.S.C. § 1295(a)(5). The CIT had subject matter jurisdiction over the case because U.S. Customs and Border Protection (CBP) denied Blue Sky's protest regarding classification under the Harmonized Tariff System of the United States (HTSUS) and Blue Sky timely filed a summons and complaint in the CIT challenging the denied protest. *See* 28 U.S.C. § 1581(a); 28 U.S.C. §2636(a)(1).

## STATEMENT OF THE ISSUES

1.      Whether the CIT erred by concluding the tariff term "diary" means "a book in which you write things that you must remember to do" in the *future* contrary to this Court's holding in *Mead Corp. v. United States*, 283 F.3d 1342, 1349 (Fed. Cir. 2002) that "diary" means "a 'record' in the sense that it 'recalls or relates *past* events.'"

2.      Whether the CIT clearly erred by finding Blue Sky weekly/monthly planning calendars are "diaries" in Heading 4820 not "calendars" in Heading 4910 contrary to the HTSUS General Rules of Interpretation (GRIs).

## STATEMENT OF THE CASE

The appeal concerns the classification of Blue Sky calendar year 2021 weekly/monthly planning calendars in the HTSUS. Blue Sky argues they are classified as "calendars of any kind" in Heading 4910, Subheading 4910.00.20.00, a duty-free HTSUS provision that does not carry any Section 301 tariffs. Appx0035-Appx0390; Appx1496-Appx1572. The government argues they are classified as "other" paper products in Heading 4820, Subheading 4820.10.40.00, a duty-free HTSUS basket provision that carries a 25 percent Section 301 tariff. Appx0391-Appx1495. The CIT rejected both parties' proposed classifications, and, contrary to this Court's binding precedent, and based on its own factual findings not supported by the parties' statements of undisputed material facts, found they are classified as

"diaries" in Heading 4820, Subheading 4820.10.20.10, a duty-free HTSUS provision that carries a 25 percent Section 301 tariff. Appx0001-Appx0017.

The relevant HTSUS provisions are:

| Heading 4910 | **Calendars of any kind**, printed, including calendar blocks: Printed on paper or paperboard in whole or in part by a lithographic process: |
|---|---|
| 4910.00.20.00 | Not over 0.51 mm in thickness |

*****

| Heading 4820 | Registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, **diaries** and similar articles, exercise books, blotting pads, binders (looseleaf or other), folders, file covers, manifold business forms, interleaved carbon sets and other articles of stationery, of paper or paperboard; albums for samples or for collections and book covers (including cover boards and book jackets) of paper or paperboard: |
|---|---|
| 4820.10 | Registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles: |
| 4820.10.20 | **Diaries**,    notebooks    and    address    books,    bound; memorandum pads, letter pads and similar articles: |
| 4820.10.20.10 | **Diaries** and address books |
| 4820.10.40.00 | **Other** |

(emphasis added).

3

For over 20 years, Blue Sky imported its annually dated weekly/monthly planning calendars as "calendars of any kind" in HTSUS Heading 4910. Appx0041. During this entire more than 20-year time-period CBP examined Blue Sky's weekly/monthly planning calendars on multiple occasions and routinely liquidated them "as entered." Appx0041. In 2019, shortly after the imposition of Section 301 tariffs, CBP reclassified Blue Sky's weekly/monthly planning calendars, as well as Blue Sky's annually dated desk pad calendars and monthly planning calendars, to "other" paper products in Heading 4820. Appx0041.

Blue Sky timely protested CBP's reclassification of the Blue Sky 2021 weekly/monthly planning calendars at issue in this case, as well as Blue Sky 2021 desk pad calendars and 2021 monthly planning calendars. Appx0021. CBP denied Blue Sky's protest. Appx0021. Blue Sky filed a summons and complaint in the CIT. Appx0021. The government agreed to stipulate that Blue Sky 2021 desk pad calendars and 2021 monthly planning calendars are classified as "calendars of any kind" in Heading 4910. Appx0041. Accordingly, only the Blue Sky 2021 weekly/monthly planning calendars remain in dispute. Appx0041.

The Blue Sky 2021 weekly/monthly planning calendars are titled "Weekly/Monthly Planner, Jan 2021-Dec 2021." Appx0402-Appx0407; Appx0451-Appx1078. They are wire-bound with tabbed monthly and weekly calendars. Appx0402-Appx0407; App0451-Appx1078. They contain the following pages: (1)

one page each for yearly goals, contacts, and important dates; (2) a yearly overview calendar page showing printed yearly calendars for the years 2021 and 2022; (3) 36 pages of printed monthly calendars for the months July 2020 through December 2021with 6 lines for writing notes in boxes for each day; (4) 106 pages of weekly calendars for the weeks of Monday, December 28, 2020, to Sunday, January 3, 2021, through Monday, December 27, 2021, to Sunday, January 2, 2022, with 8 to 11 lines for writing notes in boxes for each day; (5) 5 pages of lined notes; (6) one page each for holidays and state capitols. Appx0402-Appx0407; Appx0451-Appx1078.

Over 93 percent of the pages (143 of 153 pages) in each Blue Sky 2021 weekly/monthly planning calendar depict kinds of printed yearly, monthly, or weekly calendars in tabular formats. Appx0402-Appx0407; Appx0451-Appx1078; Appx1508-Appx1511. They are designed, marketed, advertised, and sold as calendars, and include packaging advertising they contain "weekly + monthly calendars." Appx1508-Appx1511. Like all calendars covering the year 2021, and unlike generic stationary products such as notebooks, after 2021, they expired and became obsolete. Appx1508-Appx1511.

Both parties filed motions for summary judgment arguing the material facts are not in genuine dispute. Appx0035-Appx0390; Appx0391-Appx1495. Blue Sky argued the 2021 weekly/monthly planning calendars are wholly "calendars of any kind" classified in Heading 4910. Appx0035-Appx0390. The government argued

they are "other" paper products classified in Heading 4820, asserting that while the yearly and monthly calendars are calendars, the weekly calendars are not calendars. Appx0391-Appx1495. Given it is undisputed planning calendars are for planning the *future*, neither party argued they are "diaries" classified in Heading 4820 because of this Court's holding in *Mead* that a diary is a record that recalls or relates *past* events, thoughts, feelings, and observations. Appx0425-Appx0426; Appx1518-Appx1519.

The CIT *sua sponte* scheduled oral argument on the parties' competing motions for summary judgment for March 26, 2024. Appx1606. On March 19, 2024, a few days prior to oral argument, the CIT emailed the parties a letter asking the parties to be prepared to answer five questions concerning the British English versus American English meanings of tariff terms and this Court's decision in *Mead*. Appx1607.

During oral argument, the CIT indicated for the first time it believed it is not bound by this Court's legal conclusion on the definition of the tariff term "diary" in *Mead*. Appx1639-Appx1640. Blue Sky opposed the CIT's position and argued the CIT is bound by this Court's holding on the meaning of "diary." Appx1615. The government first argued the CIT is bound then reversed course and argued it is not bound. Appx1639-Appx1640. On April 5, 2024, Blue Sky filed a motion for leave

to file supplemental briefing to address this issue. Appx1683-Appx1685. Within hours, the CIT issued a paperless order denying Blue Sky's motion. Appx1686.

Five days later, on April 10, 2024, the CIT entered judgment partially denying Blue Sky's motion for summary judgment and denying the government's cross-motion for summary judgment. Appx0001-Appx0018. The CIT did not follow *Mead*'s binding precedent that the tariff term "diary" means a record of past events and instead created its own contrary definition that a diary is also a book to write notes about future events. Appx0013-Appx0014. Based on the CIT's expanded definition of "diary," it rejected both parties' asserted classifications and classified the Blue Sky 2021 weekly/monthly planning calendars as "diaries" in Heading 4820. Appx0014.

## <u>SUMMARY OF THE ARGUMENT</u>

This Court should reverse the CIT's decision partially denying Blue Sky's motion for summary judgment because the CIT's legal conclusion that the tariff term "diary" means a book to write about the future is erroneous and its resulting factual finding that Blue Sky weekly/monthly planning calendars are "diaries" in Heading 4820 is clearly erroneous. The CIT's legal conclusion that "diary" means a book to write about the future is erroneous because binding precedent in *Mead* correctly defines "diary" as a record of the past. The CIT's factual finding that Blue Sky 2021 weekly/monthly planning calendars are classified as "diaries" in Heading 4820 is

clearly erroneous because the HTSUS GRIs classify them "calendars of any kind" in Heading 4910. If, as Blue Sky argues, its planning calendars are classified in a single heading, under GRI 1, the planning calendars are classified in Heading 4910 because they are wholly comprised of calendars. If, alternatively, as the CIT and government argue, the planning calendars are composite articles with elements classified in both Heading 4910 and Heading 4820, under GRI 3, they are classified in Heading 4910 because it is more specific, calendars of Heading 4910 give the planning calendars their essential character and Heading 4910 occurs last in numerical sequence in the tariff.

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment by the CIT for correctness as a matter of law and decides *de novo* the proper interpretation of the tariff provisions as well as whether there are genuine issues of material fact precluding summary judgment. *Millenium Lumber Distrib. v. United States*, 558 F.3d 1326, 1328 (Fed.Cir.2009). The Court employs the same standard employed by the CIT to assess CBP's classification determinations. *LeMans Corp. v. United States*, 660 F.3d 1311, 1315 (Fed.Cir.2011). A classification decision involves two steps. First, the court must "ascertain the meaning of specific terms in the tariff provisions." *Victoria's Secret Direct, LLC v. United States*, 769 F.3d 1102, 1106 (Fed.Cir.2014). Second, the court must determine "whether the subject merchandise

comes within the description of those terms." *Id.* "Determining the proper meaning of terms is a question of law that this Court reviews *de novo*, while determining whether the item fits within such meaning is a question of fact that we review for clear error." *Avenues In Leather, Inc. v. United States*, 423 F.3d 1326, 1330 (Fed.Cir.2005). "The appellant bears the burden of establishing reversible error in the decision of the Court of International Trade, by showing that the court erred in its interpretation of the law, or that its findings of fact are clearly erroneous with due consideration to the appropriate level of deference." *Park B. Smith, Ltd. v. United States,* 347 F.3d 922, 925 (Fed. Cir. 2003).

## **ARGUMENT**

A.   The Trial Court Erred by Concluding that the Tariff Term "Diary" Means a Book for Writing about Future Events Rather than a Record of Past Events as this Court Held in *Mead*.

1.   *Mead*'s Definition of "Diary" is Binding Precedent.

Under the doctrine of *stare decisis*, when this Court has made a legal conclusion on the meaning of a tariff term, this interpretation constitutes binding precedent on the CIT. *Kahrs Int'l, Inc. v. United States*, 35 C.I.T. 924, 927–28 (2011), *aff'd,* 713 F.3d 640 (Fed. Cir. 2013). The CIT must follow this Court's binding precedent on the legal meaning of a tariff term unless it is clearly erroneous. *Id.* "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the

definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

In *Mead*, this Court concluded that the tariff term "diary" means "a 'record' in the sense that it 'recalls or relates ***past*** events.'" *Mead,* 283 F.3d at 1348 (emphasis added). A diary, this Court concluded, is "retrospective, not prospective." *Id*. The CIT acknowledged this Court's holding in *Mead* that a diary is a retrospective record of the past, yet it concluded to the contrary that a diary is also a book to prospectively write about the future:

> A diary may, as the Federal Circuit correctly identified, be a document for the retrospective record of events; but, reading the broader British definition and utilizing the ENs for guidance, today it is also "a book in which you write things that you must remember to do.".

Appx0016.

In expanding this Court's definition of diary beyond a record of the past to also include a book to write about the future, the CIT did not follow this Court's binding precedent. Further, neither party argued below that this Court's definition of the term "diary" in *Mead* is clearly erroneous. The CIT raised the issue *sua sponte* for the first time during oral argument and did not allow the parties to brief the issue. In its summary judgment decision, the CIT did not conclude this Court made a mistake in *Mead* or apply the "clear error" standard in formulating its expanded definition of diary. Rather, it announced a novel, alternative rationale to not follow this Court's precedent, set forth in a single footnote in its decision, footnote 24.

The CIT's rationale is unavailing. First, the CIT claimed it need not follow *Mead* because the *Mead* Court was determining the meaning of the term "diary" based on "pre-HTSUS caselaw." Appx0016. This is incorrect. In *Mead*, this Court explicitly reviewed the meaning of "diary" under "the more precise HTSUS classification scheme" and considered post-HTSUS dictionaries and other sources. *Mead*, 283 F.3d at 1342. Second, citing a single CIT case, *Gerson Co. v. United States*, 254 F. Supp.3d 1271, 1277 (CIT 2017), *aff'd*, 898 F.3d 1232 (Fed.Cir.2018), the CIT claimed that it need not follow *Mead* given the *Mead* Court did not consider the World Customs Organization (WCO) Explanatory Notes (ENs) to Heading 4910, which it contends indicate the term "diary" can mean a book to write about the future. Appx0016. *Gerson* is inapposite. It does not address the issue of whether a lower court must follow this Court's legal precedent on the meaning of a tariff term and the cited page, 1277, does not mention the ENs. *See Gerson*, 254 F. Supp. 3d at 1277. Further, in *Mead*, this Court directly addressed the issue of whether diaries are for prospectively noting future events as the CIT asserts, reviewed the very same Oxford British English dictionary definitions on which the CIT relied, and affirmatively rejected the expanded meaning used by the CIT. *Mead,* 283 F.3d at 1347-1348. Finally, the CIT claimed it need not follow *Mead* because the *Mead* Court's legal conclusion on the meaning of "diary" only applied to the merchandise before it. Appx0016. This argument incorrectly confuses this Court's legal

conclusions, such as the interpretation of tariff terms, which constitute binding

precedent on lower courts, with its factual findings, such as whether a specific good

falls within the description of a tariff term, which are not precedential. *See Avenues

In Leather, Inc. v. United States* 317 F.3d 1399, 1404 (Fed.Cir.2003). The

government recently clarified this point in a reply brief before this Court in a

different case:

> As we explained in our opening brief, the trial court failed to follow
> this Court's precedent, erroneously reasoning that the precedent was
> not binding because it was not factually *identical* to this case. *See*
> Opening Br. at 27-28; Appx68. The doctrine of *stare decisis* is broad in
> scope and posits that this Court's judgments on an *issue of law* are
> binding on future cases before this Court and on lower court cases over
> which this Court possesses appellate jurisdiction. *See Mendenhall v.
> Cedarapids, Inc.*, 5 F.3d 1557, 1570 (Fed. Cir. 1993). The trial court
> cited no authority, and we are aware of none, for the proposition that
> this Court's answers to questions of law are not binding on a trial court
> if the case before the trial court is not factually identical to precedential
> authority from this Court.
>
> *Jilin Forest Industry Jinqiao Flooring Group Co., Ltd. v. United States*,
> CAFC Case No. 2023-2245, Reply Brief for Defendant-Appellant
> (May 13, 2024), pp. 3-4.

The CIT made no showing that *Mead's* legal conclusion on the definition of "diary,"

an issue of law, was clearly erroneous. Accordingly, the CIT's failure to follow this

Court's binding precedent in *Mead* is reversible error.

2.    *Mead* Correctly Concluded that the Term "Diary" Means a Record of the Past.

If the CIT performed the required "clear error" analysis, it would have concluded that this Court did not make a mistake concluding the correct meaning of the tariff term "diary" in *Mead*. When a tariff term is not defined in either the HTSUS or its legislative history, the term's correct meaning is its common and commercial meaning in the absence of legislative intent to the contrary. *Russell Stadelman & Co. v. United States*, 242 F.3d 1044, 1048 (Fed.Cir.2001). The common meaning of a term used in commerce is presumed to be the same as its commercial meaning. *Simod Am. Corp. v. United States,* 872 F.2d 1572, 1576 (Fed.Cir.1989). To determine the common meaning of a tariff term, a court may rely upon its own understanding of terms used, and may consult dictionaries, scientific authorities, and other reliable information sources. *Kahrs,* 713 F.3d at 644. It follows that while a court's inquiry may commence with a consideration of British English dictionary definitions because HTSUS terms are expressed in British English nomenclature, its inquiry does not end there and should include any relevant secondary sources conveying the common meaning of the term.

In *Mead*, this Court conducted such an extensive inquiry, including reviewing the same British English dictionary on which the CIT relied, the Oxford English Dictionary, as well as other British and American dictionaries. *Mead,* 283 F.3d at 1348. After weighing various definitions, this Court concluded that the *common*

meaning of the tariff term "diary" is a retrospective record that recalls or relates *past* events. *Id*. This Court, like all courts making such an inquiry, necessarily weighed various competing dictionary definitions and discounted those that presented uncommon meanings, such as a book to write about future events, that do not comport with the common and commercial meaning of "diary." Accordingly, this Court's legal conclusion of the meaning of "diary" was correct and bound the CIT.

3.    The CIT Incorrectly Concluded that "Diary" Means a Book to Write About the Future.

By contrast, the CIT did not employ this Court's longstanding "common and commercial meaning" analysis and instead conducted a flawed analysis of the correct meaning of the tariff term "diary" based exclusively on a review of British and French definitions of the term. In its pursuit of the British English and French meaning of the term "diary," it neglected its obligation to determine the *common and commercial* meaning of the term in the U.S., which this Court has repeatedly concluded is the proper standard for a court to use to determine a tariff term's correct meaning. *See, e.g., Magid Glove & Safety Mfg. Co. LLC v. United States*, 87 F.4th 1352, 1358 (Fed.Cir.2023) (*citing Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed.Cir.1999)). The CIT erred when it did not determine which of the various definitions of "diary" is the common and commercial, and therefore correct, meaning of "diary."

14

In concluding that only the British or French definitions of diary were relevant to its analysis, the CIT relied on three CIT cases, *Victoria's Secret Direct, LLC v. United States*, 37 CIT 573, 908 F. Supp.2d 1332 (2013), *Jing Mei Auto. (USA) v. United States,* Slip Op. 23-180, 2023 WL 9792953 (CIT Dec. 18, 2023), and *Lerner New York, Inc. v. United States,* 37 CIT 604, 617, 908 F. Supp.2d 1313, 1326 (2013). The CIT's reliance on these lower court cases was misplaced. These cases do not concern the issue here, tariff term interpretation, but instead concerned the different issue of whether Congress intends to expand the scope of a tariff heading when it changes the terms in a heading from British English to American nomenclature. Further, none of these cases held that the CIT can *only* consider the British English definitions in determining the common meaning of a term. In fact, in all three cases, the CIT cited to American dictionaries and other non-British English or French sources as well. Accordingly, these cases do not stand for the novel standard the CIT advances that a court must only consider British English or French definitions to analyze the correct meaning of a tariff term.

In concluding that its notion of the British English meaning of "diary" as a book to write about the future is the correct meaning of "diary," the CIT relied heavily on the WCO ENs. Although the ENs are non-binding, a court may refer to them for guidance in interpreting subheadings from the WCO's perspective. *Russell Stadelman,* 242 F.3d at 1048. But absent clear showing of Congressional intent, this

Court will not import incidental characteristics of the examples in the ENs into the

headings of the HTSUS. *See Marubeni Am. Corp. v. United States,* 35 F.3d 530, 535

n. 3 (Fed.Cir.1994) ("Explanatory Notes are only instructive and are not dispositive

or binding."). The Court will not import extraneous limitations in the ENs that are

not based on the actual language of the headings. *See Midwest of Cannon Falls, Inc.*

*v. United States*, 122 F.3d 1423, 1428 (Fed.Cir.1997).

The CIT claimed the ENs in Heading 4910 support the CIT's legal conclusion

that diaries are for writing about the future:

> The EN's explanation that its exclusion of diaries includes "so-called
> engagement calendars" confirms that the word diary within the HTSUS
> is intended to capture both the retrospective definition of a diary and
> the prospective definition.

Appx0016.

However, the opposite is true. The ENs support this Court's contrary legal

conclusion that diaries are only for recording *past* events because they specifically

exclude "memorandum pads incorporating calendars, and diaries, including so-

called engagement calendars" from Heading 4910 and place them in Heading 4820.

As this Court correctly held in *Mead*, diaries, including engagement calendars, even

if dated, are for recording *past* events, unlike calendars, which are for prospective

planning. *See Mead,* 283 F.3d at 1348. As the CIT found, "engagement calendar,"

which the ENs describes as a type of diary, is similarly defined in American

dictionaries as "an appointment *book* for the *daily recording* of social engagements

16

and other appointments." Appx0016 (emphasis added). As this Court observed in *Mead*, the verb "record" is used to signify a person's act of memorializing events *after they happen* for later reference. *See Mead,* 283 F.3d at 1348 ("A diarist records events, observations, feelings, or thoughts after they happen."). The use of the term "daily" further demonstrates an engagement book is used to record daily events after they happen because a person does not make *daily* notes about future events and instead makes such notes on an *ad hoc* basis as they learn of them. Finally, the use of the term "book" emphasizes that, like a memorandum pad and diary, and unlike a calendar, an engagement calendar provides substantial space to write extensively about any subject-matter. Given these purely record-keeping features are not present in a calendar, the ENs exclude memorandum pads and diaries, including engagement calendars, from Heading 4910 even if they have a calendar insert or are dated. Accordingly, the ENs strengthen and support this Court's holding that the meaning of the term "diary," as distinct from a "calendar," is a record of *past*, not *future*, information, with substantial space to make extensive recordings.

Even if the ENs supported the CIT's interpretation of "diary" as a book to write about the future, the Court should discount them here because they conflict with the clear meaning of terms in both headings and dictionary definitions conveying the commercial meaning of the tariff term "diary" in the U.S. To the extent that dictionaries or other extrinsic references such as the ENs disagree with

one another, no one extrinsic source is determinative, and a court may properly rely on the definition **most commonly found** in lexicographical sources to derive the common meaning of this term. *See Sigma-Tau HealthScience, Inc. v. United States*, 838 F.3d 1272, 1279 (Fed.Cir. 2016). To rebut the presumption that a term in the tariff laws should not be given its common or dictionary meaning, a party must prove that there is a different commercial meaning in existence, which is definite, uniform, and general throughout the trade. *Rohm & Haas Co. v. United States,* 727 F.2d 1095, 1097 (Fed.Cir.1984). In *Russell Stadelman,* this Court did not apply the ENs because they conveyed a meaning of a tariff term that is inconsistent with the general U.S. meaning of the term. *Russell Stadelman,* 242 F.3d at 1049. Given Congress "applies its attention to description of the articles as they derived their appellations in our own markets…while the Explanatory Notes indicate that the pilot-names delineated in the Annex are based on the popular name employed in the principal country of production or consumption…the Explanatory Notes are not controlling. *Id.* (internal citations omitted). "In accordance with Supreme Court jurisprudence, in considering the commercial designation of a tariff term, only the **commercial use of that term in the United States** is relevant." *Id.* (emphasis added).

Here, as this Court correctly concluded in *Mead*, the most common dictionary definition of the term "diary," and the commercial meaning of the term "diary" in

the U.S., are a record of the past. As a practical matter, importers classifying goods imported into the U.S. should be able to reasonably rely on the common and commercial U.S. meaning of terms in the HTSUS, not an obscure meaning of the term in Great Britain, France, or an exporting country. If, as the CIT proposes, the ENs instead promote a meaning of diary that is used in Europe but not the U.S., the ENs must be disregarded. By relying exclusively on foreign dictionaries and the ENs, rather than determining the common use of the term "diary" in the U.S., the CIT concluded the incorrect meaning of the tariff term "diary."

    **B.**    <u>The CIT Clearly Erred by Finding Blue Sky Weekly/Monthly Planning Calendars are "Diaries" in Heading 4820 rather than "Calendars of Any Kind" in Heading 4910.</u>

        **1.**    <u>Pursuant to GRI 1, Blue Sky Planning Calendars are Classified in Heading 4910 Because They are Described in Whole by the Tariff Term "Calendars of Any Kind."</u>

If this Court affirms *Mead* and reverses the CIT's legal conclusion of the meaning of the tariff term "diary," it must also reverse the CIT's factual finding that Blue Sky weekly/monthly planning calendars are "diaries" in Heading 4820 because it is undisputed that in plain terms planning calendars are not records of the past. If this Court instead reverses *Mead* and agrees with the CIT's expanded definition of "diary," it should still reverse the CIT's finding that planning calendars are diaries in Heading 4820 because, regardless of the definition of "diary," pursuant to the HTSUS GRIs, they are classified in Heading 4910, not Heading 4820.

The HTSUS scheme "is organized by headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category." *Wilton Indus., Inc. v. United States*, 741 F.3d 1263, 1266 (Fed.Cir.2013). The correct classification of merchandise entering the U.S. is governed by the HTSUS GRIs. *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed.Cir.1998). This Court, like the CIT, applies the GRIs in numerical order, beginning with GRI 1, which provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." *La Crosse Tech. v. United States*, 723 F.3d 1353, 1358 (Fed.Cir.2013). Where an "imported article is described in whole by a single classification heading or subheading, then that single classification applies, and the succeeding GRIs are inoperative." *Id*. This Court considers a HTSUS heading or subheading an *eo nomine* provision when it describes an article by a specific name. *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed.Cir.2011). Absent an indication of legislative intent to the contrary, **an *eo nomine* designation without terms of limitation includes all forms of the article**. *See Lynteq, Inc. v. United States,* 976 F.2d 693, 697 (Fed.Cir.1992) (emphasis added). If an article is not specifically and completely described in a heading or subheading, the Court must proceed to subsequent GRIs in order. *La Crosse*, 723 F.3d at 1358.

Blue Sky weekly/monthly planning calendars are described in whole in Heading 4910 by the term "calendars of any kind." This heading is expressed in the broadest possible manner in that it covers every single kind of calendar without any limitation. The tariff term "calendar" means a system, table, or contrivance showing the days, weeks, and months of a civil year. Appx0012. The government has described the purpose of a calendar as follows:

> The essential purpose of a calendar is to demarcate and establish the relative position of the days, weeks and months of a year with regard to one another. Calendars are used to define time and therefore are presented in a particular format which allows a viewer to see dates in a particular sequence or relation to one another.

> U.S. Customs Ruling HQ 956135 (August 4, 1994).

Blue Sky 2021 planning calendars clearly meet the calendar definition and purpose accepted by the CIT and government because they display the days, weeks, and months of the year 2021 systematically in organized tabular rows and columns, are formatted to allow a user to see dates sequentially and are used to ascertain where a date is relative to other days in a week, month, or year. Appx0051.

The CIT admitted that Blue Sky planning calendars are indeed comprised of "calendars" in Heading 4910, but, contrary to, and independent of, the parties' statements of undisputed material facts, found that they are "notebooks:"

> Portions of the subject merchandise meet [the calendar] definition, but the whole of each item of the subject merchandise classified in this case exceeds Blue Sky's proffered *eo nomine* classification, as the products are not merely charts for showing the division of a given year, but rather are bound notebooks

21

that contain charts that meet the calendar definition along with space to write information about each day/month as well as space to write additional notes, addresses, and telephone numbers. The subject merchandise in this case serves a consumer that not only wishes to keep track of the days, but to make notations regarding them, and thus heading 4820, HTSUS, not heading 4910, HTSUS, is the appropriate heading here, as the ENs further demonstrate.

Appx0012-Appx0013.

The CIT's core finding here is clearly erroneous because it: (1) incorrectly applies the "more than" doctrine to "calendars" in Heading 4910; and (2) makes its own finding of fact that planning calendars are "notebooks" that is not supported by the parties' statements of undisputed material facts.

First, in finding that the planning calendars meet the "calendar" definition but "exceed" and are "not merely" the *eo nomine* term "calendars of any kind" in Heading 4910 because they include some additional note-taking functions, the CIT improperly applied the judicially-created "more than" doctrine, which this Court has held does not apply to cases such as this arising under the HTSUS. *See JVC Co. of Am., Div. of US JVC Corp. v. United States*, 234 F.3d 1348, 1353 (Fed. Cir. 2000) ("However, we agree with the government that the "more than" doctrine, having been supplanted by the GRIs, does not apply to cases arising under the HTSUS."). Rather, under the HTSUS, as an *eo nomine* provision, Heading 4910 includes "all forms" of calendars regardless of whether they include additional non-calendar features. *See id.* (*citing Carl Zeiss,* 195 F.3d at 1379). Having found that planning calendars meet the definition of "calendars," under GRI 1, the CIT should have

ended its analysis and classified them in Heading 4910 even if they also have subsidiary minimal note-taking features. The CIT's application of the "more than" doctrine is clear error.

Second, the CIT's finding that the planning calendars are "notebooks" is not based on the undisputed material facts. Due to the nature of the proceeding, courts must not make their own findings of fact on summary judgment. *See Ford Motor Co. v. United States*, 157 F.3d 849, 854 (Fed. Cir. 1998) (*citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal citations omitted)). Despite extensively discussing British and French definitions of the term "diary," the CIT did not cite to a single definition of the term "notebook." The Oxford English Dictionary and the Cambridge English Dictionary, on which the CIT relied for its definition of "diary," define "notebook" similarly as "a small book with blank or ruled pages" (https://www.oed.com/search/dictionary/?scope=Entries&q=notebook) and "a book with empty pages you can write in" (https://dictionary.cambridge.org/us/dictionary/essential-british-english/notebook). Neither party asserted in their respective statements of undisputed material facts that planning calendars are "notebooks" or have notebook parts, and the undisputed

material facts demonstrate that only five inconsequential pages at the end of the planning calendars are blank lined notes pages that meet the definition of the term "notebook." Appx0402-Appx0407; Appx0602-Appx0606; Appx0760-0764; Appx0916-Appx0920; Appx1072-Appx1076. As such, the CIT improperly made its own finding of fact on summary judgment that the planning calendars are "notebooks." The CIT's factual finding that planning calendars are "notebooks" is clear error.

Notwithstanding the impropriety of the CIT's factual finding, if planning calendars are, as the CIT found, comprised of both "calendars" in Heading 4910 and "notebooks" in Heading 4820, they cannot be classified pursuant to GRI 1 because under this logic they would not be described in whole by a single heading. The CIT's failure to proceed to the next GRI despite its finding that planning calendars are composite articles described in two headings is also clear error.

If this Court does not find that the Blue Sky planning calendars are "calendars" described in whole in Heading 4910, it must proceed from GRI 1 to the next GRI. GRI 2 does not apply here because it covers only unfinished, incomplete, unassembled, and disassembled goods, as well as mixtures. Accordingly, if this Court does not classify the planning calendars in Heading 4910 under GRI 1, it must proceed to GRI 3, which covers composite articles.

2.    <u>Pursuant to GRI 3(a), Blue Sky Planning Calendars are
Classified in Heading 4910 Because it is More Specific than
Heading 4820.</u>

When goods are *prima facie* classifiable under two or more headings, this

Court applies GRI 3. *Bauer Nike Hockey USA, Inc. v. United States*, 393 F.3d 1246,

1251–52 (Fed.Cir.2004). GRI 3(a) states that the "heading which provides the **most

specific description shall be preferred** to headings providing a more general

description." *Id.* (emphasis added). "Under this rule of relative specificity, a court

look[s] to the provision with requirements that are more difficult to satisfy and that

describe the article with the greatest degree of accuracy and certainty." *Len–Ron

Mfg. Co., Inc. v. United States,* 334 F.3d 1304, 1313 (Fed.Cir.2003) (internal quotes

omitted). GRI 3(a) provides that if two or more headings apply, the more specific

heading prevails, unless the headings apply to different parts, in which case they are

considered equally specific. Assuming the headings do not help narrow the selection,

the Court must look to the subheading which provides the more specific

description. *Id.*

Here, if this Court finds that Blue Sky planning calendars fall within the

descriptions of terms in both Heading 4910 and Heading 4820, as both the CIT and

government argue, they are classified in Heading 4910 because it is more specific.

Heading 4910 covers only calendars, a single type of merchandise. It has stringent

requirements to satisfy in that the article must not only be dated but also present the

days, weeks, and years in a systematic printed calendar format, such as a chart, table, or other arrangement, covering one civil year. In contrast, Heading 4820 broadly covers 20 materially different types of generic paper items from registers, to blotting pads, to book covers. The vast and diverse scope of articles covered by Heading 4820 makes it more all-encompassing and therefore easier to satisfy. Alternatively, if the Court finds that certain parts of the Blue Sky planning calendars meet the description of "calendars" of Heading 4910 and other parts meet the description of a term in Heading 4820, for purposes of GRI 3(a), the headings are considered equally specific, and the Court must proceed to GRI 3(b).

> 3. <u>Pursuant to GRI 3(b), Blue Sky Planning Calendars are Classified in Heading 4910 Because Calendars Give Them Their Essential Character.</u>

GRI 3(b) provides that if a composite good cannot be classified under GRI 3(a), it should be classified under the heading of the component that gives it its essential character. The essential character of an article is the attribute that is indispensable to the structure, core, or condition of the article, and which strongly marks or serves to distinguish what it is. *Home Depot USA, Inc. v. United States*, 30 C.I.T. 445, 460, 427 F. Supp. 2d 1278, 1293 (2006), *aff'd*, 491 F.3d 1334 (Fed.Cir.2007) (*citing A.N. Deringer, Inc. v. U.S.*, 66 Cust. Ct. 378, 383 (Cust.Ct.1971)). The essential character inquiry is factual in nature. *Pillowtex Corp. v. United States*, 171 F.3d 1370, 1376 (Fed. Cir. 1999).

As discussed in depth above, the defining characteristic of Blue Sky planning calendars is their weekly, monthly, and yearly calendars printed on nearly every page. These calendars are indispensable to the purpose and function of planning calendars because without this calendar printing they would consist entirely of blank pages that are useless to plan future events by demarcating and establishing the relative position of the days, weeks and months of a year with regard to one another. This calendar planning function is the core purpose of a planning calendar. In contrast, Blue Sky planning calendars are not characterized by their lined space, which is a complimentary, not indispensable, feature, to the calendar function that allows users to write brief notations after using the calendars to identify a certain date in the future. Given printed calendars, not blank writing space, give the planning calendars their essential character, they are classified in Heading 4910. However, if the Court is still unable to determine that any component gives Blue Sky planning calendars their essential character, it must proceed to GRI 3(c).

4. Pursuant to GRI 3(c), Blue Sky Planning Calendars are Classified in Heading 4910 Because It Occurs Last in Numerical Sequence.

GRI 3(c) provides that if two or more specific headings apply equally, the article is classified in the heading that occurs last in numerical sequence in the HTSUS. If the Court does not classify Blue Sky weekly/monthly planning calendars

under preceding GRIs, pursuant to GRI 3(c), they are classified in Heading 4910, not Heading 4820, because Heading 4910 comes last in the tariff.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

This Court should reverse the CIT's decision partially denying Blue Sky's motion for summary judgment because the CIT committed reversible error in both its legal conclusion on the meaning of "diary" and its factual finding on the classification of Blue Sky weekly/monthly planning calendars. The CIT erred as a matter of law by: (1) not following this Court's binding and correct legal conclusion that "diary" means a record of the past; and/or (2) instead incorrectly concluding that "diary" means a book to write about the future. The CIT clearly erred as a matter of fact by: (1) incorrectly finding that Blue Sky 2021 weekly/monthly planning calendars fall within the description of "diaries" even though it is undisputed they are not records of the past; and/or (2) not properly applying the HTSUS GRIs, which classify the planning calendars as "calendars of any kind" in Heading 4910.

Appellant Blue Sky seeks the following relief from this Court:

1.     Reverse the CIT's judgment partially denying Blue Sky's motion for summary judgment.

2.     Grant Blue Sky's motion for summary judgment.

3.     Order that the Blue Sky 2021 weekly/monthly planning calendars are classified as "calendars of any kind" in Heading 4910, Subheading 4910.00.20.00.

28

4.    Award Blue Sky such other relief as this Court deems appropriate.

Dated May 24, 2024, Los Angeles, California.

Respectfully submitted,

STEIN SHOSTAK SHOSTAK POLLACK & O'HARA
Christopher J. Duncan
Elon A Pollack
Attorneys for Plaintiff
865 S. Figueroa Street, Suite 1388
Los Angeles, California 90017
Telephone: (213) 630-8888

By    /s/ Christopher J. Duncan

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-1710

**Short Case Caption:** Blue Sky the Color of Imagination, LLC v. US

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☒ the filing has been prepared using a proportionally-spaced typeface and includes 6,784 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: May 24, 2024

Signature: /s/ Christopher J. Duncan

Name: Christopher J. Duncan, Esq.

**ADDENDUM**

**Pursuant to Federal Circuit Rule 28**

## **TABLE OF CONTENTS TO ADDENDUM**

**Docket**
**Entry**          **Description**                                                      **Page(s)**


41            *Blue Sky the Color of Imagination  v. United States*,
             Slip Op. 24-42 (CIT 2024)
             Filed April 10, 2024 ..............................................................Appx0001


42            Judgment Order,
             Filed April 10, 2024  .............................................................Appx0018


             HTSUS GENERAL RULES OF INTERPRETATION
             (GRIS)...................................................................................ADD-0001

             HTSUS CHAPTER 48 ...........................................................ADD-0003

             HTSUS CHAPTER 48 EXPLANATORY NOTES .............ADD-0029

             HTSUS CHAPTER 49 ...........................................................ADD-0030

             HTSUS CHAPTER 49 EXPLANATORY NOTES..............ADD-0035

             *Mead Corp. v. United States,*  283 F.3d 1342
             (Fed. Cir. 2002).....................................................................ADD-0036

Slip Op. 24-42

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| BLUE SKY THE COLOR OF IMAGINATION, LLC, | |
| Plaintiff, | |
| v. | Before: Jane A. Restani, Judge |
| | Court No. 21-00624 |
| UNITED STATES, | |
| Defendant. | |

## OPINION

[In a Customs classification matter, judgment issued declaring classification other than as claimed by the parties.]

Dated: April 10, 2024

Christopher J. Duncan and Elon A. Pollack, Stein Shostak Shostak Pollack & O'Hara, LLP, of Los Angeles, CA, argued for the plaintiff, Blue Sky the Color of Imagination, LLC.

Monica P. Triana, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY argued for the defendant. With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Justin R. Miller, Attorney-In-Charge, and Aimee Lee, Assistant Director. Of counsel on the brief was Fariha B. Kabir, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection of New York, NY.

Restani, Judge: Before the court are cross-motions for summary judgment. Pl.'s Mot. for

Summ. J., ECF No. 20 (Aug. 23, 2023) ("Blue Sky MSJ"); Def.'s Mem. in Supp. of Cross-Mot.

for Summ. J. and Opp'n to Pl.'s Mot. for Summ. J., ECF No. 25 (Nov. 17, 2023) ("Gov. MSJ").

Plaintiff Blue Sky the Color of Imagination, LLC ("Blue Sky") challenges the United States

Customs and Border Protection's ("Customs") classification of certain paper products under

subheading 4820.10.40.00 of the Harmonized Tariff Schedule of the United States ("HTSUS").

At issue, as framed by the parties, is whether certain notebooks containing calendars are classified

instead as calendars of any kind or "[o]ther" paper products for tariff purposes. See Blue Sky MSJ

at 3. The United States ("Government") asks that the court sustain Customs' classification. Gov.

MSJ at 15. For the reasons laid out below, the court concludes that neither classification is correct,

and the paper products are diaries classified in subheading 4820.10.20.10, HTSUS.

## I.   **Background**

### A. Procedural Background

There are no material factual disputes in this case. Gov. MSJ at 15; Blue Sky MSJ at 22.

On December 2, 2021, Blue Sky imported ten models of desk calendars and planners and, upon

import, classified all ten models of desk calendars and planners as "[c]alendars of any kind" under

heading 4910, HTSUS. Blue Sky MSJ at 6. At liquidation, Customs reclassified all ten models

of desk calendars and planners as "[o]ther" under subheading 4820.10.40.00, HTSUS. Blue Sky

MSJ at Ex. 4. Blue Sky timely protested Customs' reclassification. Id. Customs denied Blue

Sky's protest, and Blue Sky brought this case before the court. Blue Sky MSJ at 7, Ex. 4. Since

this case was initiated, Customs has settled with Blue Sky as to several models of the subject

merchandise; the sole remaining issue before this court is the classification of four models of Blue

Sky weekly/monthly planners. Blue Sky MSJ at 4.

### B. Description of Subject Merchandise

The subject merchandise consists of four paper products that have variously been called

"planners" and "planning calendars" by the parties. Gov. MSJ at 3; Blue Sky MSJ at 3. The

subject merchandise consists of four different "weekly/monthly" models. Gov. MSJ at 3; Blue

Sky MSJ at 3. Although the sizes vary among the models, all four models include full page month

calendars followed by weekly sections that include space to write notes.  Gov. MSJ at Ex. A; Blue

Sky Reply to Gov. Mot. for Summ. J. at 8–9, ECF No. 26 (Dec. 22, 2023).  The subject

merchandise has the term "planner" on the front.  Gov. MSJ at Ex. F; Blue Sky MSJ at Ex. 8.2.

The subject merchandise is "used to note future appointments."  Blue Sky MSJ at 13; <u>see</u> Gov.

MSJ at 27.  They are spiral bound as notebooks are and contain a few additional pages for addresses

and phone numbers.  Gov. MSJ at Ex. A; Blue Sky MSJ at Ex. 13.

## II.     Jurisdiction and Standard of Review

The court has jurisdiction under 28 U.S.C. § 1581(a).  The court will grant summary

judgment if "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  USCIT R. 56(a).  Summary judgment is appropriate in tariff

classification cases where "there is no genuine dispute as to the nature of the merchandise and the

classification turns on the proper meaning and scope of the relevant tariff provisions."  <u>Deckers</u>

<u>Outdoor Corp. v. United States</u>, 714 F.3d 1363, 1371 (Fed. Cir. 2013) (citation omitted).  The court

decides classification <u>de novo</u>.  <u>See</u> 28 U.S.C. § 2640(a)(1) (2018); <u>Telebrands Corp. v. United</u>

<u>States</u>, 36 CIT 1231, 1234, 865 F. Supp. 2d 1277, 1279–80 (2012).

## III.    Discussion

A.  <u>Legal Framework</u>

The meaning of a tariff term is a question of law, and whether subject merchandise falls

under any given tariff term is a question of fact.  <u>See</u> <u>Wilton Indus. v. United States</u>, 741 F.3d

1263, 1265–66 (Fed. Cir. 2013) (citations omitted).  The plaintiff has the burden of establishing

that the government's classification of the subject merchandise was incorrect but does not bear the

burden of establishing the correct classification; instead, it is the court's independent duty to arrive

at "the correct result, by whatever procedure is best suited to the case at hand."  <u>Jarvis Clark Co.</u>

v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984).  In making this determination, the court "must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative."  Id.

In order to determine the meaning of and apply a tariff term to the facts at hand, the court relies on the General Rules of Interpretation ("GRIs") and, if applicable, the Additional U.S. Rules of Interpretation.  Wilton, 741 F.3d at 1266.  The court applies the GRIs in numerical order, and only proceeds to each subsequent GRI if a previous GRI alone cannot classify the goods.  Id.  The first GRI, GRI 1, requires classification to "be determined according to the terms of the headings and any relative section or chapter notes . . . ."  GRI 1, HTSUS.  HTSUS chapter and section notes are considered binding statutory law.  See BenQ Am. Corp. v. United States, 646 F.3d 1371, 1376 (Fed. Cir. 2011).

Tariff terms are generally adopted from the Harmonized System ("HS"), an international product nomenclature that the U.S. implements as the HTSUS.  See Marubeni Am. Corp. v. United States, 35 F.3d 530, 532–33 (Fed. Cir. 1994) (describing the adoption of the HTSUS system).  The HS is the product of a treaty, the International Convention on the Harmonized Commodity Description and Coding System ("the Convention"), which the U.S. acceded to in 1989.[1]  When adopting the HS, the United States agreed to adopt the same tariff language as the other negotiating parties up to the six-digit coding level.  Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1378 n.1 (Fed. Cir. 1999).  The Convention is not a self-executing treaty; this agreement is implemented

---

[1] See U.S. Dep't of State, Treaties in Force, A List of Treaties and Other International Agreements of the United States in Force on January 1, 2020, https://www.state.gov/wp-content /uploads/2020/08/TIF-2020-Full-website-view.pdf (last visited Mar. 21, 2024); International Convention on the Harmonized Commodity Description and Coding System, signed June 14, 1983, amended June 24, 1986, https://www.wcoomd.org/-/media/wco/public/global/pdf/topics/ nomenclature/instruments-and-tools/hs-convention/hs-convention_en.pdf?la=en (last visited Apr. 4, 2024).

into U.S. law by Congressional statute.[2]  See 19 U.S.C. § 3004 (1988) (implementing the HS into U.S. law).

The United States adopted the HS and implemented it as the HTSUS to achieve "harmonization" of the tariff schedule; the intent was "to implement in United States law the nomenclature established internationally by the Convention."  19 U.S.C. § 3001 (1988); see also Value Vinyls, Inc. v. United States, 568 F.3d 1374, 1378–1379 (Fed. Cir. 2009) (quoting H. R. Rep. No. 100–576, at 548 (1988) (Conf. Rep.), reprinted in 1988 U.S.C.C.A.N. 1547, 1581); Marubeni Am. Corp., 35 F.3d at 532.  The HTSUS "provides a common core language for trade." Marubeni Am. Corp., 35 F.3d at 533.  In implementing the HS into U.S. law, Congress expressly stated that its purpose was "to implement in United States law the nomenclature established internationally by the Convention."  19 U.S.C. § 3001.  Thus, wherever no evidence exists to suggest a Congressional intent to alter the meaning of the HS terms when issuing the HTSUS, courts will presume that Congress intended to implement the unchanged international nomenclature utilized by the HS into U.S. law.[3]

_____

[2] Self-executing treaties become part of the law of the land through U.S. ratification; non self-executing treaties are implemented by the legislature.  See Foster v. Neilson, 27 U.S. 253, 254, 314 (1829), overruled on other grounds by United States v. Percheman, 32 U.S. 51 (1833) ("Our constitution declares a treaty to be the law of the land. . . . But when the terms of the stipulation import a contract, when either of the parties engages to perform a particular act, the treaty addresses itself to the political, not the judicial department; and the legislature must execute the contract before it can become a rule for the Court.").

[3] Congress can and has varied from the language of the HS when it deems it necessary to do so; in the absence of evidence of an intent to vary from the HS language, it is reasonable to infer that the stated Congressional intent to implement the "nomenclature of the Convention" governs the meaning of the HTSUS.  For an example of language that could have been varied from but clearly was not, see heading 8204, HTSUS ("Hand-operated spanners and wrenches") implementing HS 82.04 ("Hand-operated spanners and wrenches").  HTSUS 8204 (2024); HS 82.04 (2022).  In contrast, see HS 87.05 where "breakdown lorries, crane lorries, fire fighting vehicles, concrete mixer lorries, road sweeper lorries, spraying lorries" became "wreckers, mobile cranes, fire fighting vehicles, concrete mixers, road sweepers, spraying vehicles," in heading 8705, HTSUS. See HS 87.05 (2022); HTSUS 8705 (2024).

When "a tariff term is not defined in either the HTSUS or its legislative history, the term's

correct meaning is its common or dictionary meaning in the absence of evidence to the contrary."

Russell Stadelman & Co. v. United States, 242 F.3d 1044, 1048 (Fed. Cir. 2001) (citations

omitted). In construing tariff terms, the court may "consult lexicographic and scientific authorities,

dictionaries, and other reliable information" or may rely on its "own understanding of the terms

used." Baxter Healthcare Corp. v. United States, 182 F.3d 1333, 1337–38 (Fed. Cir. 1999)

(citation omitted). Courts will also look to the Explanatory Notes ("ENs") to the Harmonized

Commodity Description and Coding System for guidance in interpreting the HTSUS terms. Carl

Zeiss, Inc., 195 F.3d at 1378 n.1. The ENs are not dispositive evidence of the meaning of the tariff

terms,[4] but the ENs are "generally indicative of [the] proper interpretation of the various

provisions" and so are persuasive evidence of the international meaning of the tariff terms.[5] Carl

---

[4] When it implemented the HS into U.S. law, Congress was mindful that the ENs, unlike the HS, were not part of the terms of the Convention's agreement and thus the ENs were not binding on the United States in the same way that the agreement to adopt the HS nomenclature was. See H. R. Rep. No. 100–576, at 549 (1988) (Conf. Rep.), reprinted in 1988 U.S.C.C.A.N. 1547, 1582 ("Although generally indicative of proper interpretation of the various provisions of the Convention, the Explanatory Notes, like other similar publications of the Council, are not legally binding on contracting parties to the Convention. Thus, while they should be consulted for guidance, the Explanatory Notes should not be treated as dispositive."). Nonetheless, Congress was also mindful that the ENs represent useful elaboration on the international meaning of the tariff terms, which the United States had agreed to adopt and which Congress has explicitly stated that it was its intent to implement into U.S. law. See id.; see also 19 U.S.C. § 3001. Thus, absent evidence of a specific Congressional intent to adopt a meaning contrary to the ENs, the ENs are persuasive evidence of what the tariff terms may mean on an international level, and are persuasive evidence of the meaning of the language adopted by Congress.

[5] Congress may diverge from the international meaning; regardless of U.S. treaty obligations, Congress always retains the right to adopt whatever laws it thinks are "necessary and proper." U.S. Const. art. I, § 8, cl. 18; see also Medellín v. Texas, 552 U.S. 491, 509 n.5 (2008) ("Whether or not the United States 'undertakes' to comply with a treaty says nothing about what laws it may enact. The United States is always 'at liberty to make . . . such laws as [it] think[s] proper.'"). In this case, evidence before the court indicates that, with this particular treaty, the overall Congressional intent was to adhere to the meaning of the international nomenclature in U.S. law. This may not be the case in all instances of U.S. implementation of self-executing treaties, and

Zeiss, Inc., 195 F.3d at 1378 n.1; see also BenQ Am. Corp., 646 F.3d at 1376; H.R. Rep. No. 100-576, 549, reprinted in 1988 U.S.C.C.A.N. 1547, 1582.

English is spoken in both the United Kingdom and in the United States of America, but there are some linguistic distinctions among the dialects spoken by the two countries. See, e.g., Victoria's Secret Direct, LLC v. United States, 37 CIT 573, 585–86, 908 F. Supp. 2d 1332, 1345 (2013); Jing Mei Auto. (USA) v. United States, Slip Op. 23-180, 2023 WL 9792953, at *12 (CIT Dec. 18, 2023). Because the court aims to understand what a tariff term would mean within context of its origin as part of the "international nomenclature" for trade, the court presumes that HS terms that are implemented into the HTSUS without any alteration may encompass both the British and American definitions of the term. See, e.g., Victoria's Secret, 37 CIT at 585–86, 908 F. Supp. 2d at 1345; Jing Mei Auto., 2023 WL 9792953, at *12. When Congress wishes to exclude a British definition or otherwise alter the HTSUS, it can change the HS language or otherwise adopt an Additional U.S. Rule of Interpretation ("ARI"). Lerner New York, Inc. v. United States, 37 CIT 604, 617, 908 F. Supp. 2d 1313, 1326 (2013) (noting availability of Additional U.S. Rules of Interpretation and assessing an instance in which Congress had replaced the British "vest" with the American "tank top"). In the absence of a specific, American change, the court aims to identify what the tariff term would mean if used as part of the "common core language for trade" and where appropriate consider the British definition of the term.[6]

---

when interpreting a statute that implements a treaty the court must always examine Congressional guidance prior to looking to the international document for the meaning of a U.S. statute.

[6] The HS was developed through the Customs Co-Operation Council ("the Council"). See Marubeni Am. Corp., 35 F.3d at 533. The Council was established by treaty in 1952. See Convention Establishing a Customs Co-Operation Council, signed Dec. 15, 1950, https://www.wcoomd.org/-/media/wco/public/global/pdf/about-us/legal-instruments/conventions-and-agreements/ccc/convccc.pdf?la=en (last visited Mar. 29, 2024) (entered into force Nov. 4, 1952). The United Kingdom was a contracting party at the time of the

   In addition to its English version, the Convention was also drafted in French; the French
and English texts are considered equally authoritative treaty texts.[7]  In both treaty versions, parties
agree to adopt the international nomenclature of the Convention; where the English text indicates
that the parties undertake to adopt the language of the HS, the French text indicates that the parties
will adopt the language of the "Système harmonisé" or "SH."[8]  Accordingly, the HS is also issued
in French,[9] and the French SH, like the English HS, implements the nomenclature of the

_____

Council's origin; the United States did not ratify or accede to the Council until 1970.  See World
Customs Org., Position as Regards Ratifications and Accessions, https://www.wcoomd.org/-
/media/wco/public/global/pdf/about-us/legal-instruments/conventions-and-agreements/
conventions/sg0228ea.pdf?la=en (last updated June 30, 2023).  The original Convention on
Nomenclature signed in 1950 was issued in English and French, with both texts equally
authoritative, and the English version contains British spellings.  See Convention on Nomenclature
for the Classification of Goods in Customs Tariffs, signed Dec. 15, 1950,
https://www.wcoomd.org/-/media/wco/public/global/pdf/about-us/legal-instruments/conventions
-and-agreements/conventions/nom_conv_bil.pdf?la=en (last visited Mar. 29, 2024); Appendix to
the Convention on Nomenclature for the Classification of Goods in Customs Tariffs § VI, signed
Dec. 15, 1950, https://www.wcoomd.org/-/media/wco/public/global/pdf/about-us/legal-
instruments/conventions-and-agreements/conventions/nom_conv_bil.pdf?la=en (last visited Mar.
29, 2024) ("colour").  British spelling persists in the 2022 HS Nomenclature.  See generally HS
Nomenclature 2022 edition, Chapter 32, https://www.wcoomd.org/en/topics/nomenclature
/instrument-and-tools/hs-nomenclature-2022-edition/hs-nomenclature-2022-edition.aspx     (last
visited Mar. 29, 2024) ("colouring").  The court therefore presumes that these terms are authored
in British English at the international level and, if unchanged from that original language, the
British English terms are adopted by Congress.

[7] See the Convention, Art. 20, ("Done at Brussels on the 14th day of June 1983 in the English and
French languages, both texts being equally authentic . . . ."); see also Convention Internationale
sur le Système Harmonisé de Désignation et de Codification des Marchandises, Art. 20, signed
June 14, 1983; amended June 24, 1986, ("the Convention (French Edition)"),
https://www.wcoomd.org/-/media/wco/public/fr/pdf/topics/nomclature/instruments-and-
tools/hs-convention/hs-convention_fr.pdf?la=fr (last visited Mar. 27, 2024) ("Fait à Bruxelles, le
14 juin 1983 en langues française et anglaise, les deux textes faisant également foi . . . .").

[8] See the Convention (French Edition), Art. 3 ("[S]es nomenclatures tarifaire et statistiques soient
conformes au Système harmonisé . . . .") (emphasis added); see also the Convention, Art. 3 ("Each
Contracting Party undertakes . . . [that] its Customs tariff and statistical nomenclatures shall be in
conformity with the Harmonized System. . . . [I]t shall use all the headings and subheadings of the
Harmonized System without addition or modification . . . .").

[9] See, e.g., Organisation Mondiale des Douanes, Nomenclature du SH Édition 2022,
https://www.wcoomd.org/fr/topics/nomenclature/instrument-and-tools/hs-nomenclature-2022-
edition.aspx (last visited Mar. 22, 2024).

Convention that the parties have agreed to adopt.[10]  Where treaty provisions are drafted in two

different languages, if the two drafts can be read to agree, "that construction which establishes

this conformity ought to prevail."  United States v. Percheman, 32 U.S. 51, 52 (1833).

    B.  Competing Tariff Provisions

    Customs classified the paper items at issue here under subheading 4820.10.40.00, HTSUS,

which reads:

| | |
|---|---|
| Heading 4820 | Registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles, exercise books, blotting pads, binders (looseleaf or other), folders, file covers, manifold business forms, interleaved carbon sets and other articles of stationery, of paper or paperboard; albums for samples or for collections and book covers (including cover boards and book jackets) of paper or paperboard: |
| 4820.10 | Registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles:[11] |
| 4820.10.20 | Diaries, notebooks and address books, bound; memorandum pads, letter pads and similar articles |
| 4820.10.20.10 | Diaries and address books |
| 4820.10.40.00 | Other |

---

[10] See the Convention (French Edition), Art. 3 ("[S]es nomenclatures tarifaire et statistiques soient conformes au Système harmonisé . . . .") (emphasis added); see also the Convention, Art. 3 ("Each Contracting Party undertakes . . . [that] its Customs tariff and statistical nomenclature shall be in conformity with the Harmonized System . . . .") (emphasis added).

[11] In French, this section reads "Registres, livres comptables, carnets (de notes, de commandes, de quittances), blocs-mémorandums, blocs de papier à lettres, agendas et ouvrages similaires."  See Organisation Mondiale des Douanes, Nomenclature du SH Édition 2017, 48.20, https://www.wcoomd.org/-/media/wco/public/fr/pdf/topics/nomenclature/instruments-and-tools/hs-nomenclature-2017/2017/1048_2017f.pdf?la=fr (last visited Apr. 4, 2024).

Blue Sky argues that the paper merchandise is better classified under subheading 4910.00.20.00, HTSUS, which reads:

| Heading 4910 | Calendars of any kind, printed, including calendar blocks:[12] |
| | Printed on paper or paperboard in whole or in part by a lithographic process: |
| 4910.00.20.00 | Not over 0.51 mm in thickness |
| 4910.00.40.00 | Over 0.51 mm in thickness |
| 4910.00.60.00 | Other |

Both of these provisions classify items which are normally imported duty free, but Customs' classification falls under 9903.88.03, HTSUS which provides a duty rate of 25 percent ad valorem pursuant to Section 301 of the Trade Act of 1974 (codified as amended at 19 U.S.C. § 2411). Gov. MSJ at 2. If the subject merchandise is classified under subheading 4910.00.20.00, HTSUS, however, it is not subject to the additional Section 301 duty. Id.

C. Argument

Blue Sky argues that the merchandise in this case was incorrectly classified as "[o]ther" paper products when it should in fact be classified as calendars. Blue Sky MSJ at 3. Blue Sky argues that this classification is appropriate because the calendar provision is an eo nomine provision that the product by definition meets. Blue Sky MSJ at 16–18. Blue Sky further argues that because there is no ambiguity in the HTSUS provision, the ENs should not be reached in this case because they conflict with the HTSUS's unambiguous language. Blue Sky MSJ at 18–20. The Government argues that the subject merchandise is not calendars, but is properly found to be

---

[12] In French, this section reads "Calendriers de tous genres, imprimés, y compris les blocs de calendriers à effeuiller." See Organisation Mondiale des Douanes, Nomenclature du SH Édition 2017, 49.10, https://www.wcoomd.org/-/media/wco/public/fr/pdf/topics/nomenclature/instruments-and-tools/hs-nomenclature-2017/2017/1049_2017f.pdf?la=fr (last visited Apr. 4, 2024).

"similar articles" to those listed in subheading 4820.10.40.00, HTSUS. Gov. MSJ at 14. The

Government supports this argument by asserting that the predominant use of the objects is not as

calendars, and that the ENs support that the product should not be classified as a calendar. Gov.

MSJ at 17–22. The Government further argues that the Federal Circuit's ruling in <u>Mead Corp. v.</u>

<u>United States</u>, 283 F.3d 1342, 1349 (Fed. Cir. 2002) addressed a similar set of facts and classified

the subject merchandise in that case as "[o]ther" paper products. Gov. MSJ at 23. The court begins

its analysis under GRI 1.

        D.  <u>Tariff Classification of the Paper Merchandise</u>

      As a threshold matter, the court must determine whether the merchandise is properly

classified under heading 4910, HTSUS, or heading 4820, HTSUS. Heading 4820, HTSUS, falls

within Chapter 48 of the HTSUS, which is generally described as containing headings that classify

"paper and paperboard; articles of paper pulp, of paper or of paperboard." Chapter 48, HTSUS

(2020). Heading 4910, HTSUS falls within Chapter 49 of the HTSUS, which contains headings

which classify "printed books, newspapers, pictures and other products of the printing industry;

manuscripts, typescripts and plans." Chapter 49, HTSUS (2020). While Chapter 49 includes paper

products where the printing provides the essential character of the articles, the ENs clarify that

Chapter 48 is for other paper products that can be used to record various kinds of information.

<u>Compare</u> EN 48.20 ("Some articles of this heading often contain a considerable amount of printed

matter but remain classified in this heading (and not Chapter 49) <u>provided</u> that the printing is

subsidiary to their primary use, for example . . . diaries (essentially for writing)."), <u>with</u> EN 49.10

("This heading relates to calendars of any kind . . . <u>provided</u> that the printing gives the article its

essential character.").

Blue Sky argues that these products are <u>eo nomine</u> calendars.  Blue Sky MSJ at 18.  The

Government argues that although the subject merchandise contains some limited printed calendar

pages the subject merchandise is not defined by those pages, but instead as a whole is defined by

space to record information.  Gov. MSJ at 21.  To begin the <u>eo nomine</u> analysis, the court looks to

the Oxford English Dictionary,[13]  which defines a calendar as:

> The system according to which the beginning and length of successive civil years,
> and the subdivision of the year into its parts, is fixed; as the Babylonian, Jewish,
> Roman, or Arabic calendar
>
> [or]
>
> A table showing the division of a given year into its months and days, and referring
> the days of each month to the days of the week; often also including important
> astronomical data, and indicating ecclesiastical or other festivals, and other events
> belonging to individual days. Sometimes containing only facts and dates belonging
> to a particular profession or pursuit, as <u>Gardener's Calendar</u>, <u>Racing Calendar</u>, etc.
> Also a series of tables, giving these facts more fully; an almanac
>
> [or]
>
> A contrivance for reckoning days, months, etc.[14]

Portions of the subject merchandise meet this definition, but the whole of each item of the subject

merchandise classified in this case exceeds Blue Sky's proffered <u>eo nomine</u> classification, as the

products are not merely charts for showing the division of a given year, but rather are bound

notebooks that contain charts that meet the calendar definition along with space to write

information about each day/month as well as space to write additional notes, addresses, and

---

[13] In order to support its argument, Blue Sky cites to the Oxford American Dictionary's definition
of "calendar."  Blue Sky MSJ at 14.  The Government cites to several other definitions.  Gov. MSJ
at 18.  At oral argument, Blue Sky confirmed that the court should look to British English to define
the tariff terms.  As British English "calendar" is what informs the HTSUS, reference to the Oxford
English Dictionary is appropriate.  <u>See, e.g.</u>, <u>Victoria's Secret</u>, 37 CIT at 585–86, 908 F. Supp. 2d
at 1345.
[14] <u>Calendar</u>, Oxford Eng. Dictionary, https://www.oed.com/dictionary/calendar_n?tl=true (last
visited Mar. 21, 2024).

telephone numbers.  The subject merchandise in this case serves a consumer that not only wishes to keep track of the days, but to make notations regarding them, and thus heading 4820, HTSUS, not heading 4910, HTSUS, is the appropriate heading here, as the ENs further demonstrate.[15]

The EN associated with heading 4910, HTSUS clarifies that heading 4910, HTSUS "<u>does not cover</u> articles whose essential character is not determined by the presence of a calendar" and also excludes "[m]emorandum pads incorporating calendars and diaries (including so-called engagement calendars) (<u>heading 48.20</u>)."[16]  EN 49.10.  The Cambridge Essential British English dictionary defines a diary as either "a book in which you write about what you have done and your thoughts and feelings," or "a book in which you write things that you must remember to do."[17]  The Oxford English Dictionary defines a diary as "[a] daily record of events or transactions, a journal; specifically, a daily record of matters affecting the writer personally, or which come under his or her personal observation" or "[a] book prepared for keeping a daily record, or having spaces with printed dates for daily memoranda and jottings; also, applied to calendars containing daily memoranda on matters of importance to people generally, or to members of a particular profession,

---

[15] Blue Sky argues that the ENs should be ignored here because they conflict with the unambiguous language of heading 4910, HTSUS.  Blue Sky MSJ at 18.  There is a difference between a "calendar" and a "book with a calendar," just as there is a difference between a "wheel" and a "vehicle that moves by wheels."  The language of heading 4910, HTSUS, is neither so unambiguous as applied here that reference to the ENs is inappropriate nor, when properly understood, does the language of the EN conflict with the language of heading 4910, HTSUS.

[16] Blue Sky argues that because the paper products expire, this makes them calendars.  Blue Sky MSJ at 18.  The Government responds that the ENs clarify that merely being "dated" does not make an item a calendar.  Gov. MSJ at 19–20.  Reviewing the EN, it is clear that, even if portions of the subject merchandise could be defined as calendars, not all items incorporating calendars are covered by heading 4910's "calendars of any kind."  <u>See</u> EN 49.10.  Blue Sky's argument is therefore not persuasive.

[17] <u>Diary</u>, Cambridge Dictionary, Essential British English, https://dictionary.cambridge.org /dictionary/essential-british-english/diary (last visited Feb. 21, 2024).

occupation, or pursuit."[18]  These broad definitions recognize two different uses of the same word: diaries are both retrospective journals, and prospective scheduling devices.  Examining the subject merchandise in this case, it appears that the court is presented with a series of notebooks "in which you write things that you must remember to do."  The subject merchandise therefore appears to the court to be diaries, and thus properly excluded from heading 4910, HTSUS and properly classified within heading 4820, HTSUS.

This conclusion is further supported by examination of the French SH text, which uses "agendas" in place of the English "diary."[19]  "Agendas" in French means "[r]egistre, carnet comportant un calendrier et dans lequel on inscrit pour chaque jour ce que l'on se propose de faire,"[20] or "carnet de rendez-vous,"[21] which roughly translates as "registers, a notebook with a calendar and in which one writes for each day what one proposes to do" and "appointment book."[22] Where, as here, the French and English texts may be read in agreement, "that construction which establishes this conformity ought to prevail."  Percheman, 32 U.S. at 52.

---

[18] Diary, Oxford Eng. Dictionary, https://www.oed.com/dictionary/diary_n?tab=meaning_and_use#6942057 (last visited Mar. 18, 2024).

[19] "Registres, livres comptables, carnets (de notes, de commandes, de quittances), blocs-mémorandums, blocs de papier à lettres, agendas et ouvrages similaires." See Organisation Mondiale des Douanes, Nomenclature du SH Édition 2017, 48.20, https://www.wcoomd.org/-/media/wco/public/fr/pdf/topics/nomenclature/instruments-and-tools/hs-nomenclature-2017/2017/1048_2017f.pdf?la=fr (last visited Apr. 4, 2024).

[20] Agenda, Dictionnaire de L'Academie Francaise, https://www.dictionnaire-academie.fr/article/A9A0834 (last visited Mar. 22, 2024).

[21] Agenda, Cambridge French-English Dictionary, https://dictionary.cambridge.org/us/dictionary/french-english/agenda (last visited Mar. 22, 2024).

[22] See Cambridge French–English Dictionary, https://dictionary.cambridge.org/dictionary/french-english/ (last visited Mar. 27, 2024).

Although perhaps of little interest to the parties, as the tariff does not differ, the court must select the proper classification, here at the eight-digit level.[23]  See GRI 6, HTSUS.  The Government agrees that the subject merchandise is excluded from heading 4910.00, HTSUS, by the EN and should be classified within heading 4820, HTSUS, but argues that the subject merchandise should be classified within subheading 4820.10.40.00, HTSUS, "[o]ther" paper products.  Gov. MSJ at 2.  Here, in order to classify this subject merchandise as "[o]ther," the court would have to decide that this subject merchandise is not, in fact, a diary.  The Government based its argument for the "[o]ther" classification on a prior ruling from the Federal Circuit, where a day planner had been classified as subheading 4820.10.40.00, HTSUS, "[o]ther."  See Mead, 283 F.3d at 1349; Blue Sky MSJ at Ex. 2, 42:12 to 43:7; Gov. MSJ at 23.  There, however, the subject merchandise at issue had many different components—it was

> a calendar, a section for daily notes, a section for telephone numbers and addresses, and a notepad . . . with additional items such as a daily planner section, plastic ruler, plastic pouch, credit card holder, and computer diskette holder. A loose-leaf ringed binder holds the contents of the day planner, except for the notepad, which fits into the rear flap of the day planner's outer cover.

Mead, 283 F.3d at 1344.  In that case, the court found that the items in question were neither diaries nor bound, which required classification as "[o]ther."  See id. at 1350.  Unlike in Mead, the notebooks here are clearly bound, and there is very little in them besides date pages for scheduling

---

[23] This classification dispute is past the six-digit level, but the meaning of the HS is still instructive at this level because the terms broken out at the eight-digit level come from the six-digit level of the HTSUS.  For example, subheading 4820.10, HTSUS, which reads "[r]egisters, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles," narrows to become subheading 4820.10.20, HTSUS, "[d]iaries, notebooks and address books, bound; memorandum pads, letter pads and similar articles."  Here, the dispute is between subheading 4820.10.20.10, HTSUS, "[d]iaries and address books" or subheading 4820.10.40.00, HTSUS, "[o]ther."  As the subheadings are merely more narrow divisions of tariff terms used at the six-digit level, it would be illogical to argue that "diary" should mean one thing at the six-digit level, and another at the eight-digit level, without some evidence of a Congressional intent to redefine the term.

purposes.[24]  What little additional content there is supports the scheduling function; a few pages for notes, a page for goals, and a page for contacts.  As the products at issue are diaries, the correct classification is 4820.10.20.10, HTSUS.  Accordingly, the Government's asserted basket provision, "[o]ther," is rejected.

The obligation of the court, in interpreting the HTSUS, is to ensure that U.S. law reflects "the nomenclature established internationally by the Convention," see 19 U.S.C. § 3001, unless altered by Congress.  Reviewing the HS, the SH, multiple English and French definitions, and the

---

[24] Given the lack of discussion of the HS and the ENs in Mead the court need not rely on the narrow definition used there.  In Mead, the court was asked by the parties to determine whether the subject merchandise then before it met the definition of diary as the court and parties understood it from pre-HTSUS caselaw.  See Mead, 283 F.3d at 1346; see also, e.g., Baumgarten v. United States, 49 Cust. Ct. 275 (1962).  The subject merchandise now before the court is different from the subject merchandise that was before the court in Mead.  Further, in Mead no party raised the argument that the subject merchandise in that case was a calendar.  See Mead, 283 F.3d at 1347 ("Neither party in this case would classify the day planners as calendars.").  Because the parties did not raise this issue before the Mead court, the Mead court was not called upon to examine the EN associated with heading 4910, HTSUS.  See, e.g., Gerson Co. v. United States, 254 F. Supp. 3d 1271, 1277 (CIT 2017), aff'd, 898 F.3d 1232 (Fed. Cir. 2018).  Here, because of the arguments of the parties in this case, the court was required to analyze the ENs and finds that the EN for heading 4910, HTSUS, not raised in Mead, clarifies the meaning of "diary" within heading 4820, HTSUS.  The EN for heading 4910, HTSUS excludes "diaries (including so-called engagement calendars)."  EN 49.10.  An engagement calendar is not defined by the Oxford English Dictionary, and it appears to primarily be an American English term meaning "an appointment book for the daily recording of social engagements and other appointments."  Engagement Calendar,            Collins            Dictionary,            https://www.collinsdictionary.com /us/dictionary/english/engagement-calendar (last visited Mar. 18, 2024); see also Engagement Calendar, Dictionary.com, https://www.dictionary.com/browse/engagement-calendar (last visited Mar. 18, 2024) ("[A]n appointment book for the daily recording of social engagements and other appointments").  As previously covered, in British English, a diary may be "a book in which you write things that you must remember to do."  See supra at n.17.  Thus, the terms "diary" and "engagement calendar" appear to be synonyms, one term in British English, and the other American English, both meaning a notebook used for scheduling purposes.  The EN's explanation that its exclusion of diaries includes "so-called engagement calendars" confirms that the word diary within the HTSUS is intended to capture both the retrospective definition of a diary and the prospective definition.  A diary may, as the Federal Circuit correctly identified, be a document for the retrospective record of events; but, reading the broader British definition and utilizing the ENs for guidance, today it is also "a book in which you write things that you must remember to do."

ENs, the court finds that "diary" includes "a book in which you write things that you must remember to do," and this particular subject merchandise is a "diary" as the term is used in the HTSUS. Customs' classification of this product under subheading 4820.10.40.00, HTSUS was incorrect and the subject merchandise should instead be classified as subheading 4820.10.20.10, HTSUS.

## CONCLUSION

For the foregoing reasons, the court grants in part Blue Sky's motion for summary judgment, denies Government's motion for summary judgment, and holds that the Government improperly classified the subject merchandise under subheading 4820.10.40.00, HTSUS. The subject merchandise is properly classified as "diaries" under subheading 4820.10.20.10, HTSUS. Judgment will be entered accordingly.

/s/ Jane A. Restani
Jane A. Restani, Judge

Dated: April 10, 2024
New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

BLUE SKY THE COLOR OF IMAGINATION, LLC,

<div style="margin-left:2em">Plaintiff,</div>

<div style="margin-left:4em">v.</div>

UNITED STATES,

<div style="margin-left:2em">Defendant.</div>

Before: Jane A. Restani, Judge

Court No. 21-00624

## <u>JUDGMENT</u>

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; now therefore, in conformity with said decision:

Judgment is entered declaring that the entries before the court are classified under subheading 4820.10.20.10, HTSUS.

<div style="text-align:right">
/s/ Jane A. Restani<br>
Jane A. Restani, Judge
</div>

Dated: <u>April 10, 2024</u>
<div style="margin-left:2em">New York, New York</div>

# GENERAL RULES OF INTERPRETATION

Classification of goods in the tariff schedule shall be governed by the following principles:

1. The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following provisions:

2. (a) Any reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished, provided that, as entered, the incomplete or unfinished article has the essential character of the complete or finished article. It shall also include a reference to that article complete or finished (or falling to be classified as complete or finished by virtue of this rule), entered unassembled or disassembled.

   (b) Any reference in a heading to a material or substance shall be taken to include a reference to mixtures or combinations of that material or substance with other materials or substances. Any reference to goods of a given material or substance shall be taken to include a reference to goods consisting wholly or partly of such material or substance. The classification of goods consisting of more than one material or substance shall be according to the principles of rule 3.

3. When, by application of rule 2(b) or for any other reason, goods are, prima facie, classifiable under two or more headings, classification shall be effected as follows:

   (a) The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods or to part only of the items in a set put up for retail sale, those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

   (b) Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

   (c) When goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration.

4. Goods which cannot be classified in accordance with the above rules shall be classified under the heading appropriate to the goods to which they are most akin.

5. In addition to the foregoing provisions, the following rules shall apply in respect of the goods referred to therein:

   (a) Camera cases, musical instrument cases, gun cases, drawing instrument cases, necklace cases and similar containers,specially shaped or fitted to contain a specific article or set of articles, suitable for long-term use and entered with the articles for which they are intended, shall be classified with such articles when of a kind normally sold therewith. This rule does not,however, apply to containers which give the whole its essential character;

   (b) Subject to the provisions of rule 5(a) above, packing materials and packing containers entered with the goods therein shall be classified with the goods if they are of a kind normally used for packing such goods. However, this provision is not binding when such packing materials or packing containers are clearly suitable for repetitive use.

6. For legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, mutatis mutandis, to the above rules, on the understanding that only subheadings at the same level are comparable. For the purposes of this rule, the relative section, chapter and subchapter notes also apply, unless the context otherwise requires.

**Harmonized Tariff Schedule of the United States (2020) Revision 28**
Annotated for Statistical Reporting Purposes

GN p.2

General Note 1

## ADDITIONAL U.S. RULES OF INTERPRETATION

1.    In the absence of special language or context which otherwise requires--

    (a)    a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use;

    (b)    a tariff classification controlled by the actual use to which the imported goods are put in the United States is satisfied only if such use is intended at the time of importation, the goods are so used and proof thereof is furnished within 3 years after the date the goods are entered;

    (c)    a provision for parts of an article covers products solely or principally used as a part of such articles but a provision for "parts" or "parts and accessories" shall not prevail over a specific provision for such part or accessory; and

    (d)    the principles of section XI regarding mixtures of two or more textile materials shall apply to the classification of goods in any provision in which a textile material is named.

**[COMPILER'S NOTE: Multiple sets of changes to the Harmonized System have caused heading and subheading numbers and product coverage in some rules of origin for free trade agreements to be inconsistent with those in current tariff schedule chapters. First, the rules of origin provisions for certain United States free trade agreements have NOT been updated since major changes to the HTS were proclaimed effective on February 3, 2007, and will therefore contain tariff numbers that do not exist in the chapters of the HTS; these outdated rules are included in terms of HS 2002. Other agreements, including the new United States-Mexico-Canada Free Trade Agreement, are set forth in terms of HS 2012 and may not contain current tariff numbers. However, the rules for the North American Free Trade Agreement [expired; retained for reference through June 30, 2021], the United States-Australia Free Trade Agreement, the United States-Chile Free Trade Agreement, the United States-Bahrain Free Trade Agreement, and the United States-Korea Free Trade Agreement have been updated, and the pertinent general notes do reflect proclaimed rectifications through 2007 or 2012, depending on the agreement. See Presidential Proclamation 8097, which modified the HTS to reflect World Customs Organization changes to the Harmonized Commodity Description and Coding System and was effective as of Feb. 3, 2007; proclaimed modifications appear on the Web site of the United States International Trade Commission, www.usitc.gov.**

**Second, the rules of origin for the United States-Chile Free Trade Agreement have been updated to reflect the modifications to the HTS made by Presidential Proclamation 8771 of December 29, 2011 and effective as of February 3, 2012, to reflect the WCO changes to the Harmonized System recommended to be effective in 2012. In addition, the rules of origin for the United States-Korea Free Trade Agreement were updated effective on and after January 1, 2014, pursuant to Presidential Proclamation 9072. Presidential Proclamation 9555 set forth modifications to the rules of origin for the United States-Oman Free Trade Agreement (effective February 1, 2017), the United States-Panama Trade Promotion Agreement (to become effective pursuant to a future Federal Register notice from USTR), and the Dominican Republic-Central America-United States Free Trade Agreement (effective as of November 1, 2020) The United States-Singapore Free Trade Agreement's rules were updated in annex IV to Presidential Proclamation 10053 of June 2020, effective as of September 1, 2020; and the United States-Colombia Trade Promotion Agreement updates are scheduled to be effective January 1, 2021. Where not updated for HS 2017, be aware that the rule you try to apply may contain HTS numbers as in effect in 2002, 2007 or 2012. Changes to FTA rules must be negotiated whenever Harmonized System changes arise and must go through appropriate national processes prior to implementation. You can find U.S. proclamations updating rules in the *Federal Register*. Last, the new trade agreement between the United States and Japan (see general note 36 and chapter 99 subchapter XXI) does contain rules of origin that do not appear in the tariff schedule. Consult Customs for guidance if materials have not been posted on their site.**

**Contact officials of U.S. Customs and Border Protection in order to ascertain how to apply out-of-date rules and whether affected goods qualify for FTA treatment. A ruling on an individual shipment may be necessary.]**

## General Notes

CHAPTER 48

PAPER AND PAPERBOARD; ARTICLES OF PAPER PULP,
OF PAPER OR OF PAPERBOARD

X
48-1

Notes

1.   For the purposes of this chapter, except where the context otherwise requires, a reference to "paper" includes references to paperboard (irrespective of thickness or weight per $m^2$).

2.   This chapter does not cover:

   (a)   Articles of chapter 30;

   (b)   Stamping foils of heading 3212;

   (c)   Perfumed papers or papers impregnated or coated with cosmetics (chapter 33);

   (d)   Paper or cellulose wadding impregnated, coated or covered with soap or detergent (heading 3401), or with polishes, creams or similar preparations (heading 3405);

   (e)   Sensitized paper or paperboard of headings 3701 to 3704;

   (f)   Paper impregnated with diagnostic or laboratory reagents (heading 3822);

   (g)   Paper-reinforced stratified sheeting of plastics, or one layer of paper or paperboard coated or covered with a layer of plastics, the latter constituting more than half the total thickness, or articles of such materials, other than wallcoverings of heading 4814 (chapter 39);

   (h)   Articles of heading 4202 (for example, travel goods);

   (ij)   Articles of chapter 46 (manufactures of plaiting material);

   (k)   Paper yarn or textile articles of paper yarn (section XI);

   (l)   Articles of chapter 64 or chapter 65;

   (m)   Abrasive paper or paperboard (heading 6805) or paper- or paperboard-backed mica (heading 6814) (paper and paperboard coated with mica powder are, however, to be classified in this chapter);

   (n)   Metal foil backed with paper or paperboard (generally section XIV or XV);

   (o)   Articles of heading 9209;

   (p)   Articles of chapter 95 (for example, toys, games, sports requisites); or

   (q)   Articles of chapter 96 (for example, buttons, sanitary towels (pads) and tampons, napkins (diapers) and napkin liners for babies).

3.   Subject to the provisions of note 7, headings 4801 to 4805 include paper and paperboard which have been subjected to calendering, super-calendering, glazing or similar finishing, false water-marking or surface sizing, and also paper, paperboard, cellulose wadding and webs of cellulose fibers, colored or marbled throughout the mass by any method. Except where heading 4803 otherwise requires, these headings do not apply to paper, paperboard, cellulose wadding or webs of cellulose fibers which have been otherwise processed.

4.   In this chapter, the expression "newsprint" means uncoated paper of a kind used for the printing of newspapers, of which not less than 50 percent by weight of the total fiber content consists of wood fibers obtained by a mechanical or chemi-mechanical process, unsized or very lightly sized, having a surface roughness Parker Print Surf (1 MPa) on each side exceeding 2.5 micrometers (microns), weighing not less than 40 $g/m^2$ and not more than 65 $g/m^2$, and applies only to paper: (a) in strips or rolls of a width exceeding 28 cm; or (b) in rectangular (including square) sheets with one side exceeding 28 cm and the other side exceeding 15 cm in the unfolded state.

**Harmonized Tariff Schedule of the United States (2020) Revision 28**
Annotated for Statistical Reporting Purposes

X
48-2

<u>Notes</u> (con.)

5.  For the purposes of heading 4802, the expressions "<u>paper and paperboard, of a kind used for writing, printing or other graphic purposes</u>" and "<u>nonperforated punch-cards and punch tape paper</u>" mean paper and paperboard made mainly from bleached pulp or from pulp obtained by a mechanical or chemi-mechanical process and satisfying any of the following criteria:

For paper or paperboard weighing not more than 150 g/m$^2$:

(a)  Containing 10 percent or more of fibers obtained by a mechanical or chemi-mechanical process, and

1.  weighing not more than 80 g/m$^2$, or

2.  colored throughout the mass; or

(b)  Containing more than 8 percent ash, and

1.  weighing not more than 80 g/m$^2$, or

2.  colored throughout the mass; or

(c)  Containing more than 3 percent ash and having a brightness of 60 percent or more; or

(d)  Containing more than 3 percent but not more than 8 percent ash, having a brightness less than 60 percent and a burst index equal to or less than 2.5 kPa·m$^2$/g; or

(e)  Containing 3 percent ash or less, having a brightness of 60 percent or more and a burst index equal to or less than 2.5 kPa·m$^2$/g.

For paper or paperboard weighing more than 150 g/m$^2$:

(a)  Colored throughout the mass; or

(b)  Having a brightness of 60 percent or more, and

1.  a caliper of 225 micrometers (microns) or less, or

2.  a caliper of more than 225 micrometers but not more than 508 micrometers (microns) and an ash content of more than 3 percent; or

(c)  Having a brightness of less than 60 percent, a caliper of 254 micrometers (microns) or less and an ash content of more than 8 percent.

Heading 4802 does not, however, cover filter paper or paperboard (including teabag paper) or felt paper or paperboard.

6.  In this chapter "<u>kraft paper and paperboard</u>" means paper and paperboard of which not less than 80 percent by weight of the total fiber content consists of fibers obtained by the chemical sulfate or soda processes.

7.  Except where the terms of the headings otherwise require, paper, paperboard, cellulose wadding and webs of cellulose fibers answering to a description in two or more of the headings 4801 to 4811 are to be classified under that one of such headings which occurs last in numerical order in the tariff schedule.

8.  Headings 4803 to 4809 apply only to paper, paperboard, cellulose wadding and webs of cellulose fibers:

(a)  In strips or rolls of a width exceeding 36 cm; or

(b)  In rectangular (including square) sheets with one side exceeding 36 cm and the other side exceeding 15 cm in the unfolded state.

9.  For the purposes of heading 4814, the expression "<u>wallpaper and similar wall coverings</u>" applies only to:

(a)  Paper in rolls, of a width of not less than 45 cm and not more than 160 cm, suitable for wall or ceiling decoration:

(i)  Grained, embossed, surface-colored, design-printed or otherwise surface-decorated (for example, with textile flock), whether or not coated or covered with transparent protective plastics;

(ii)  With an uneven surface resulting from the incorporation of particles of wood, straw, etc.;

Case: 24-1710     Document: 8     Page: 66     Filed: 05/24/2024
**Harmonized Tariff Schedule of the United States (2020) Revision 28**
Annotated for Statistical Reporting Purposes

X
48-3

<u>Notes</u> (con.)

     (iii)  Coated or covered on the face side with plastics, the layer of plastics being grained, embossed, colored, design-printed or otherwise decorated; or

     (iv)  Covered on the face side with plaiting material, whether or not bound together in parallel strands or woven;

  (b)  Borders and friezes of paper, treated as above, whether or not in rolls, suitable for wall or ceiling decoration;

  (c)  Wall coverings of paper made up of several panels, in rolls or sheets, printed so as to make up a scene, design or motif when applied to a wall.

Products on a base of paper or paperboard, suitable for use both as floor coverings and as wall coverings, are to be classified in heading 4823.

10.  Heading 4820 does not cover loose sheets or cards, cut to size, whether or not printed, embossed or perforated.

11.  Heading 4823 applies, <u>inter alia</u>, to perforated paper or paperboard cards for Jacquard or similar machines and paper lace.

12.  Except for the articles of heading 4814 or 4821, paper, paperboard, cellulose wadding and articles thereof, printed with motifs, characters or pictorial representations, which are not merely incidental to the primary use of the goods, fall in chapter 49.

<u>Subheading Notes</u>

1.  For the purposes of subheading 4804.11 and 4804.19, "<u>kraftliner</u>" means machine-finished or machine-glazed paper and paperboard, of which not less than 80 percent by weight of the total fiber content consists of wood fibers obtained by the chemical sulfate or soda processes, in rolls, weighing more than 115 g/m$^2$ and having a minimum Mullen bursting strength, as indicated in the following table, or the linearly interpolated or extrapolated equivalent for any other weight:

| <u>Weight</u> (g/m$^2$) | <u>Minimum Mullen bursting strength</u> (kPa) |
|---|---|
| 115 | 393 |
| 125 | 417 |
| 200 | 637 |
| 300 | 824 |
| 400 | 961 |

2.  For the purposes of subheadings 4804.21 and 4804.29, "<u>sack kraft paper</u>" means machine-finished paper, of which not less than 80 percent by weight of the total fiber content consists of fibers obtained by the chemical sulfate or soda processes, in rolls, weighing not less than 60 g/m$^2$ but not more than 115 g/m$^2$ and meeting one of the following sets of specifications:

  (a)  Having a Mullen burst index of not less than 3.7 kPa·m$^2$/g and a stretch factor of more than 4.5 percent in the cross direction and of more than 2 percent in the machine direction.

  (b)  Having minima for tear and tensile as indicated in the following table, or the linearly interpolated equivalent for any other weight:

| Weight | Minimum tear | | Minimum tensile | |
|---|---|---|---|---|
| | Machine direction | Machine direction plus cross direction | Cross direction | Machine direction plus cross direction |
| (grams per square meter) | (millinewtons) | | (kilonewtons per meter) | |
| 60 | 700 | 1,510 | 1.9 | 6 |
| 70 | 830 | 1,790 | 2.3 | 7.2 |
| 80 | 965 | 2,070 | 2.8 | 8.3 |
| 100 | 1,230 | 2,635 | 3.7 | 10.6 |
| 115 | 1,425 | 3,060 | 4.4 | 12.3 |

**Harmonized Tariff Schedule of the United States (2020) Revision 28**
Annotated for Statistical Reporting Purposes

X
48-4

Subheading Notes (con.)

3.  For the purposes of subheading 4805.11, "semichemical fluting paper" means paper, in rolls, of which not less than 65 percent by weight of the total fiber content consists of unbleached hardwood fibers obtained by a combination of mechanical and chemical pulping processes, and having a CMT 30 (Corrugated Medium Test with 30 minutes of conditioning) crush resistance exceeding 1.8 newtons/g/m$^2$ at 50 percent relative humidity, at 23°C.

4.  Subheading 4805.12 covers paper, in rolls, made mainly of straw pulp obtained by a combination of mechanical and chemical pulping processes, weighing 130 g/m$^2$ or more, and having a CMT 30 (Corrugated Medium Test with 30 minutes of conditioning) crush resistance exceeding 1.4 newtons/g/m$^2$ at 50 percent relative humidity, at 23°C.

5.  Subheading 4805.24 and 4805.25 cover paper and paperboard made wholly or mainly of pulp recovered (waste and scrap) paper or paperboard. Testliner may also have a surface layer of dyed paper or of paper made of bleached or unbleached non-recovered pulp. These products have a Mullen burst index of not less than 2 kPa·m$^2$/g.

6.  For the purposes of subheading 4805.30, "sulfite wrapping paper" means machine-glazed paper, of which more than 40 percent by weight of the total fiber content consists of wood fibers obtained by the chemical sulfite process, having an ash content not exceeding 8 percent and having a Mullen burst index of not less than 1.47 kPa·m$^2$/g.

7.  For the purposes of subheading 4810.22, "light-weight coated paper" means paper, coated on both sides, of a total weight not exceeding 72 g/m$^2$, with a coating weight not exceeding 15 g/m$^2$ per side, on a base of which not less than 50 percent by weight of the total fiber content consists of wood fibers obtained by a mechanical process.

Additional U.S. Notes

1.  For the purposes of this chapter the provisions for cellulose wadding and webs of cellulose fibers cover only products obtained from the pulp of chapter 47.

2.  Samples used in determining the weight of paper or paperboard classifiable in this chapter according to weight shall be conditioned in an atmosphere at 50 percent ( $\pm$ 2 percent) relative humidity and at a temperature of 23°C( $\pm$ 2°C).

Statistical Notes

1.  The term "standard newsprint paper" covers printing papers of heading 4801 which conform to the following specifications:

    Weight: Not less than 46.3 g/m$^2$ nor more than 57 g/m$^2$.

    Size: Rolls not less than 33 cm wide and not less than 71 cm in diameter; sheets not less than 51 cm by 76 cm.

    Thickness: Not more than 0.11 mm.

    Sizing: Time of transudation of water shall be not more than 10 seconds by the ground glass method.

    Ash Content: Not more than 6.5 percent.

    Color and Finish: White; or tinted shades of pink, peach or green in rolls; not more than 50 percent gloss when tested with the Ingersoll glarimeter.

2.  For the purposes of statistical reporting number 4823.90.8620, shoe coverings (booties) must be 50 percent or more by weight of cellulose/paper. This provision does not include disposable shoe coverings (booties) of non-woven textile fibers classified in heading 6307.

**Harmonized Tariff Schedule of the United States (2020) Revision 28**
Annotated for Statistical Reporting Purposes

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4801.00.01 | | Newsprint, in rolls or sheets.................................... | ................ | Free[1/] | | Free |
| | 20 | Standard newsprint paper...................................... | t | | | |
| | 40 | Other.................................................................... | t | | | |
| 4802 | | Uncoated paper and paperboard, of a kind used for writing, printing or other graphic purposes, and non perforated punch-cards and punch tape paper, in rolls or rectangular (including square) sheets, of any size, other than paper of heading 4801 or 4803; hand-made paper and paperboard: | | | | |
| 4802.10.00 | 00 | Handmade paper and paperboard.................................... | kg............. | Free[1/] | | 17.5% |
| 4802.20 | | Paper and paperboard of a kind used as a base for photo-sensitive, heat-sensitive or electro-sensitive paper or paperboard: | | | | |
| 4802.20.10 | 00 | In strips or rolls of a width exceeding 15 cm or in rectangular (including square) sheets with one side exceeding 36 cm and the other side exceeding 15 cm in the unfolded state................. | m²............. | Free[1/] | | 20% |
| | | Other: | | | | |
| 4802.20.20 | 00 | Basic paper to be sensitized for use in photography............................................. | kg............. m² | Free[1/] | | 5% |
| 4802.20.40 | | Other............................................................ | ................ | Free[1/] | | 30% |
| | 20 | Containing by weight 25 percent or more cotton fiber.............................................. | kg | | | |
| | 40 | Other............................................................ | kg | | | |
| 4802.40.00 | 00 | Wallpaper base (hanging paper)............................. | kg............. | Free[1/] | | 10% |
| | | Other paper and paperboard, not containing fibers obtained by a mechanical or chemi-mechanical process or of which not more than 10 percent by weight of the total fiber content consists of such fibers: | | | | |
| 4802.54 | | Weighing less than 40 g/m²: | | | | |
| | | In strips or rolls of a width exceeding 15 cm or in rectangular (including square) sheets with one side exceeding 36 cm and the other side exceeding 15 cm in the unfolded state: | | | | |
| 4802.54.10 | 00 | Writing paper.............................................. | kg............. | Free[1/] | | 28% |
| 4802.54.20 | 00 | India and bible paper.................................... | kg............. | Free[1/] | | 18% |
| 4802.54.31 | 00 | Other.......................................................... | kg............. | Free[1/] | | 11.5% |
| | | Other: | | | | |
| 4802.54.50 | 00 | Basic paper to be sensitized for use in photography............................................. | kg............. m² | Free[1/] | | 5% |
| 4802.54.61 | 00 | Other.......................................................... | kg............. | Free[1/] | | 30% |

**Harmonized Tariff Schedule of the United States (2020) Revision 28**
Annotated for Statistical Reporting Purposes

X
48-6

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4802 (con.) | | Uncoated paper and paperboard, of a kind used for writing, printing or other graphic purposes, and non perforated punch-cards and punch tape paper, in rolls or rectangular (including square) sheets, of any size, other than paper of heading 4801 or 4803; hand-made paper and paperboard: (con.) | | | | |
| | | Other paper and paperboard, not containing fibers obtained by a mechanical or chemi-mechanical process or of which not more than 10 percent by weight of the total fiber content consists of such fibers: (con.) | | | | |
| 4802.55 | | Weighing 40 g/m² or more but not more than 150 g/m², in rolls: | | | | |
| | | Of a width exceeding 15 cm: | | | | |
| 4802.55.10 | 00 | Writing and cover paper.................................... | kg............. | Free[1]/ | | 28% |
| 4802.55.20 | 00 | Drawing paper................................................ | kg............. | Free[1]/ | | 15.5% |
| 4802.55.30 | 00 | India and bible paper ..................................... | kg............. | Free[1]/ | | 18% |
| 4802.55.40 | 00 | Other............................................................. | kg............. | Free[1]/ | | 11.5% |
| | | Other: | | | | |
| 4802.55.60 | 00 | Basic paper to be sensitized for use in photography........................................................ | kg............. m² | Free[1]/ | | 5% |
| 4802.55.70 | | Other............................................................. | ................. | Free[1]/ | | 30% |
| | 20 | Containing by weight 25 percent or more cotton  fiber.................................................. | kg | | | |
| | 40 | Other................................................... | kg | | | |
| 4802.56 | | Weighing 40 g/m² or more but not more than 150 g/m², in sheets with one side not exceeding 435 mm and the other side not exceeding 297 mm in the unfolded state: | | | | |
| | | With one side exceeding 360 mm and the other side exceeding 150 mm in the unfolded state: | | | | |
| 4802.56.10 | 00 | Writing and cover paper.................................... | kg............. | Free[1]/ | | 28% |
| 4802.56.20 | 00 | Drawing paper................................................ | kg............. | Free[1]/ | | 15.5% |
| 4802.56.30 | 00 | India and bible paper ..................................... | kg............. | Free[1]/ | | 18% |
| 4802.56.40 | 00 | Other............................................................. | kg............. | Free[1]/ | | 11.5% |
| | | Other: | | | | |
| 4802.56.60 | 00 | Basic paper to be sensitized for use in photography........................................................ | kg............. m² | Free[1]/ | | 5% |
| 4802.56.70 | | Other............................................................. | ................. | Free[1]/ | | 30% |
| | 20 | Containing by weight 25 percent or more cotton  fiber.................................................. | kg | | | |
| | | Other: | | | | |
| | 50 | Writing and cover paper...................... | kg | | | |
| | 90 | Other........................................................ | kg | | | |

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4802 (con.) | | Uncoated paper and paperboard, of a kind used for writing, printing or other graphic purposes, and non perforated punch-cards and punch tape paper, in rolls or rectangular (including square) sheets, of any size, other than paper of heading 4801 or 4803; hand-made paper and paperboard: (con.) | | | | |
| | | Other paper and paperboard, not containing fibers obtained by a mechanical or chemi-mechanical process or of which not more than 10 percent by weight of the total fiber content consists of such fibers: (con.) | | | | |
| 4802.57 | | Other, weighing 40 g/m² or more but not more than 150 g/m²: | | | | |
| 4802.57.10 | | Writing and cover paper | | Free[1/] | | 28% |
| | 20 | With one side equal to 559 mm and the other side equal to 280 mm in the unfolded state | kg | | | |
| | 40 | With one side equal to 965 mm and the other side equal to 635 mm in the unfolded state | kg | | | |
| | 90 | Other | kg | | | |
| 4802.57.20 | 00 | Drawing paper | kg | Free[1/] | | 15.5% |
| 4802.57.30 | 00 | India and bible paper | kg | Free[1/] | | 18% |
| 4802.57.40 | | Other | | Free[1/] | | 11.5% |
| | 20 | With one side equal to 559 mm and the other side equal to 280 mm in the unfolded state | kg | | | |
| | 40 | With one side equal to 965 mm and the other side equal to 635 mm in the unfolded state | kg | | | |
| | 90 | Other | kg | | | |
| 4802.58 | | Weighing more than 150 g/m²: | | | | |
| | | In strips or rolls of a width exceeding 15 cm or in rectangular (including square) sheets with one side exceeding 36 cm and the other side exceeding 15 cm in the unfolded state: | | | | |
| 4802.58.10 | 00 | Writing and cover paper | kg | Free[1/] | | 30% |
| 4802.58.20 | | Other | | Free[1/] | | 24.5% |
| | 20 | Drawing paper | kg | | | |
| | 40 | Bristols | kg | | | |
| | 80 | Other | kg | | | |
| | | Other: | | | | |
| 4802.58.50 | 00 | Basic paper to be sensitized for use in photography | kg m² | Free[1/] | | 5% |
| 4802.58.60 | | Other | | Free[1/] | | 30% |
| | 20 | Containing by weight 25 percent or more cotton fiber | kg | | | |
| | 40 | Other | kg | | | |

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4802 (con.) | | Uncoated paper and paperboard, of a kind used for writing, printing or other graphic purposes, and non perforated punch-cards and punch tape paper, in rolls or rectangular (including square) sheets, of any size, other than paper of heading 4801 or 4803; hand-made paper and paperboard: (con.) | | | | |
| | | Other paper and paperboard, of which more than 10 percent by weight of the total fiber content consists of fibers obtained by a mechanical or chemi-mechanical process: | | | | |
| 4802.61 | | In rolls: | | | | |
| | | Of a width exceeding 15 cm: | | | | |
| 4802.61.10 | 00 | Writing and cover paper.................................. | kg | Free[1/] | | 28% |
| 4802.61.20 | 00 | Drawing paper.................................................. | kg | Free[1/] | | 15.5% |
| 4802.61.31 | | Other................................................................ | kg | Free[1/] | | 11.5% |
| | 10 | Weighing less than 40 g/m$^2$.................... | kg | | | |
| | | Other: | | | | |
| | 35 | Supercalendered.................................... | kg | | | |
| | 91 | Other........................................................ | kg | | | |
| | | Other: | | | | |
| 4802.61.50 | 00 | Basic paper to be sensitized for use in photography.......................................... | kg m$^2$ | Free[1/] | | 5% |
| 4802.61.60 | | Other........................................................ | .................. | Free[1/] | | 30% |
| | 20 | Containing by weight 25 percent or more cotton fiber.............................................. | kg | | | |
| | 40 | Other........................................................ | kg | | | |
| 4802.62 | | In sheets with one side not exceeding 435 mm and the other side not exceeding 297 mm in the unfolded state: | | | | |
| | | With one side exceeding 360 mm and the other side exceeding 150 mm in the unfolded state: | | | | |
| 4802.62.10 | 00 | Writing and cover paper............................ | kg | Free[1/] | | 28% |
| 4802.62.20 | 00 | Drawing paper............................................ | kg | Free[1/] | | 15.5% |
| 4802.62.30 | 00 | Other............................................................ | kg | Free[1/] | | 11.5% |
| | | Other: | | | | |
| 4802.62.50 | 00 | Basic paper to be sensitized for use in photography.......................................... | kg m$^2$ | Free[1/] | | 5% |
| 4802.62.61 | | Other........................................................ | .................. | Free[1/] | | 30% |
| | 20 | Containing by weight 25 percent or more cotton fiber.............................................. | kg | | | |
| | 40 | Other........................................................ | kg | | | |
| 4802.69 | | Other: | | | | |
| 4802.69.10 | 00 | Writing and cover paper.................................. | kg | Free[1/] | | 28% |
| 4802.69.20 | 00 | Drawing paper.................................................. | kg | Free[1/] | | 15.5% |
| 4802.69.30 | 00 | Other................................................................ | kg | Free[1/] | | 11.5% |

**Harmonized Tariff Schedule of the United States (2020) Revision 28**
Annotated for Statistical Reporting Purposes

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4803.00 | | Toilet or facial tissue stock, towel or napkin stock and similar paper of a kind used for household or sanitary purposes, cellulose wadding and webs of cellulose fibers, whether or not creped, crinkled, embossed, perforated, surface-colored, surface decorated or printed, in rolls or sheets: | | | | |
| 4803.00.20 | 00 | Cellulose wadding.................................................. | kg | Free[1/] | | 24% |
| 4803.00.40 | 00 | Other...................................................................... | kg | Free[1/] | | 36% |
| 4804 | | Uncoated kraft paper and paperboard, in rolls or sheets, other than that of heading 4802 or 4803: | | | | |
| | | Kraftliner: | | | | |
| 4804.11.00 | 00 | Unbleached.................................................... | kg | Free[1/] | | 20% |
| 4804.19.00 | 00 | Other.............................................................. | kg | Free[1/] | | 20% |
| | | Sack kraft paper: | | | | |
| 4804.21.00 | 00 | Unbleached.................................................... | kg | Free[1/] | | 30% |
| 4804.29.00 | 00 | Other.............................................................. | kg | Free[1/] | | 30% |
| | | Other kraft paper and paperboard weighing 150 g/m² or less: | | | | |
| 4804.31 | | Unbleached: | | | | |
| | | Condenser paper: | | | | |
| 4804.31.10 | 00 | Weighing over 15 g/m² but not over 30 g/m²... | kg | Free[1/] | | 20.5% |
| 4804.31.20 | 00 | Other....................................................... | kg | Free[1/] | | 25% |
| 4804.31.40 | | Wrapping paper.......................................... | .................. | Free[1/] | | 30% |
| | 20 | Bag or sack paper............................. | kg | | | |
| | 40 | Other.................................................. | kg | | | |
| 4804.31.60 | 00 | Other....................................................... | kg | Free[1/] | | 30% |
| 4804.39 | | Other: | | | | |
| 4804.39.20 | 00 | Condenser paper........................................ | kg | Free[1/] | | 25% |
| 4804.39.40 | | Wrapping paper.......................................... | .................. | Free[1/] | | 30% |
| | 20 | Bag or sack paper............................. | kg | | | |
| | | Other: | | | | |
| | 41 | Tissue paper having a basis weight not exceeding 29 g/m², in sheets.................. | kg | | | |
| | 49 | Other.................................................. | kg | | | |
| 4804.39.60 | | Other....................................................... | .................. | Free[1/] | | 30% |
| | 20 | Base stock for trays, dishes, plates, cups and the like. | kg | | | |
| | 40 | Other.................................................. | kg | | | |

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4804 (con.) | | Uncoated kraft paper and paperboard, in rolls or sheets, other than that of heading 4802 or 4803: (con.) | | | | |
| | | Other kraft paper and paperboard weighing more than 150 g/m² but less than 225 g/m²: | | | | |
| 4804.41 | | Unbleached: | | | | |
| 4804.41.20 | 00 | Wrapping paper.................................................. | kg | Free[1/] | | 30% |
| 4804.41.40 | 00 | Other................................................................... | kg | Free[1/] | | 30% |
| 4804.42.00 | | Bleached uniformly throughout the mass and of which more than 95 percent by weight of the total fiber content consists of wood fibers obtained by a chemical process................................................................... | .................. | Free[1/] | | 30% |
| | 10 | Base stock for milk cartons and other beverage containers............................................................ | kg | | | |
| | | Other: | | | | |
| | 20 | Folding carton stock....................................... | kg | | | |
| | 30 | Base stock for trays, dishes, plates, cups and the like..................................................... | kg | | | |
| | | Other: | | | | |
| | 40 | Base stock for packaging........................... | kg | | | |
| | 50 | Other.......................................................... | kg | | | |
| 4804.49.00 | 00 | Other................................................................... | kg | Free[1/] | | 30% |
| | | Other kraft paper and paperboard weighing 225 g/m² or more: | | | | |
| 4804.51.00 | 00 | Unbleached........................................................ | kg | Free[1/] | | 30% |
| 4804.52.00 | | Bleached uniformly throughout the mass and of which more than 95 percent by weight of the total fiber content consists of wood fibers obtained by a chemical process................................................................... | .................. | Free[1/] | | 30% |
| | 10 | Base stock for milk cartons and other beverage containers............................................................ | kg | | | |
| | | Other: | | | | |
| | 20 | Folding carton stock....................................... | kg | | | |
| | 30 | Base stock for trays, dishes, plates, cups and the like..................................................... | kg | | | |
| | | Other: | | | | |
| | 40 | Base stock for packaging........................... | kg | | | |
| | 50 | Other.......................................................... | kg | | | |
| 4804.59.00 | 00 | Other................................................................... | kg | Free[1/] | | 30% |

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4805 | | Other uncoated paper and paperboard, in rolls or sheets, not further worked or processed than as specified in note 3 to this chapter: | | | | |
| | | Fluting paper: | | | | |
| 4805.11.00 | 00 | Semichemical fluting paper................................ | kg.............. | Free[1/] | | 30% |
| 4805.12 | | Straw fluting paper: | | | | |
| 4805.12.10 | 00 | Weighing 150 g/m² or less................................ | kg.............. | Free[1/] | | 30% |
| 4805.12.20 | 00 | Weighing over 150 g/m²................................ | kg.............. | Free[1/] | | 30% |
| 4805.19 | | Other: | | | | |
| 4805.19.10 | 00 | Weighing 150 g/m² or less................................ | kg.............. | Free[1/] | | 30% |
| 4805.19.20 | 00 | Weighing over 150 g/m²................................ | kg.............. | Free[1/] | | 30% |
| | | Testliner (recycled liner board): | | | | |
| 4805.24 | | Weighing 150 g/m² or less: | | | | |
| 4805.24.50 | 00 | Weighing not over 15 g/m²................................ | kg.............. | Free[1/] | | 30% |
| 4805.24.70 | 00 | Weighing over 15 g/m² but not over 30 g/m²........ | kg.............. | Free[1/] | | 11¢/kg + 15% |
| 4805.24.90 | 00 | Weighing over 30 g/m²................................ | kg.............. | Free[1/] | | 30% |
| 4805.25.00 | 00 | Weighing more than 150 g/m²................................ | kg.............. | Free[1/] | | 30% |
| 4805.30.00 | 00 | Sulfite wrapping paper................................ | kg.............. | Free[1/] | | 30% |
| 4805.40.00 | 00 | Filter paper and paperboard................................ | kg.............. | Free[1/] | | 11¢/kg + 15% |
| 4805.50.00 | 00 | Felt paper and paperboard................................ | kg.............. | Free[1/] | | 10% |

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty 1 General | Rates of Duty 1 Special | Rates of Duty 2 |
|---|---|---|---|---|---|---|
| 4805 (con.) | | Other uncoated paper and paperboard, in rolls or sheets, not further worked or processed than as specified in note 3 to this chapter: (con.) | | | | |
| | | Other: | | | | |
| 4805.91 | | Weighing 150 g/m² or less: | | | | |
| 4805.91.10 | | Multi-ply paper and paperboard; bibulous and wrapping paper | .................. | Free[1] | | 30% |
| | 10 | Folding carton board.............................. | kg | | | |
| | 90 | Other.................................................. | kg | | | |
| 4805.91.20 | 00 | Condenser paper................................... | kg | Free[1] | | 25% |
| | | Other: | | | | |
| 4805.91.50 | 00 | Weighing not over 15 g/m²................... | kg | Free[1] | | 30% |
| 4805.91.70 | 00 | Weighing over 15 g/m² but not over 30 g/m²... | kg | Free[1] | | 11¢/kg + 15% |
| 4805.91.90 | 00 | Weighing over 30 g/m²........................ | kg | Free[1] | | 30% |
| 4805.92 | | Weighing more than 150 g/m² but less than 225 g/m²: | | | | |
| 4805.92.20 | 00 | Pressboard........................................... | kg | Free[1] | | 30% |
| 4805.92.40 | | Other.................................................. | .................. | Free[1] | | 30% |
| | 10 | Folding carton board.............................. | kg | | | |
| | 20 | Construction paper................................. | kg | | | |
| | 30 | Linerboard containing by weight less than 80 percent chemical sulfate wood pulp.............. | kg | | | |
| | 40 | Other.................................................. | kg | | | |
| 4805.93 | | Weighing 225 g/m² or more: | | | | |
| 4805.93.20 | 00 | Pressboard........................................... | kg | Free[1] | | 30% |
| 4805.93.40 | | Other.................................................. | .................. | Free[1] | | 30% |
| | 10 | Folding carton board.............................. | kg | | | |
| | 15 | Wet machine board................................ | kg | | | |
| | 20 | Construction paper................................. | kg | | | |
| | 30 | Linerboard containing by weight less than 80 percent chemical sulfate wood pulp.............. | kg | | | |
| | 50 | Tube and core board............................. | kg | | | |
| | 60 | Other.................................................. | kg | | | |
| 4806 | | Vegetable parchment, greaseproof papers, tracing papers and glassine and other glazed transparent or translucent papers, in rolls or sheets: | | | | |
| 4806.10.00 | 00 | Vegetable parchment............................. | kg | Free[1] | | 19% |
| 4806.20.00 | 00 | Greaseproof papers............................... | kg | Free[1] | | 7¢/kg + 15% |
| 4806.30.00 | 00 | Tracing papers..................................... | kg | Free[1] | | 7¢/kg + 15% |
| 4806.40.00 | 00 | Glassine and other glazed transparent or translucent papers.................................. | kg | Free[1] | | 7¢/kg + 15% |

**Harmonized Tariff Schedule of the United States (2020) Revision 28**
Annotated for Statistical Reporting Purposes

X
48-13

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4807.00 | | Composite paper and paperboard (made by sticking flat layers of paper or paperboard together with an adhesive), not surface-coated or impregnated, whether or not internally reinforced, in rolls or sheets: | | | | |
| 4807.00.10 | 00 | Paper and paperboard, laminated internally with bitumen, tar or asphalt.................................................................. | kg............. | Free[1/] | | 30% |
| | | Other: | | | | |
| 4807.00.91 | 00 | Straw paper and paperboard, whether or not covered with paper other than straw paper................................. | kg............. | Free[1/] | | 30% |
| | | Other: | | | | |
| 4807.00.92 | 00 | Cloth-lined or reinforced paper................................. | kg............. | Free[1/] | | 22.5% |
| 4807.00.94 | 00 | Other............................................................ | kg............. | Free[1/] | | 30% |
| 4808 | | Paper and paperboard, corrugated (with or without glued flat surface sheets), creped, crinkled, embossed or perforated, in rolls or sheets, other than paper of the kind described in heading 4803: | | | | |
| 4808.10.00 | 00 | Corrugated paper and paperboard, whether or not perforated....................................................... | kg............. | Free[1/] | | 30% |
| 4808.40.00 | 00 | Kraft paper, creped or crinkled, whether or not embossed or perforated..................................................... | kg............. | Free[1/] | | 36% |
| 4808.90 | | Other: | | | | |
| 4808.90.20 | 00 | Creped or crinkled.................................................... | kg............. | Free[1/] | | 36% |
| 4808.90.40 | 00 | Embossed........................................................... | kg............. | Free[1/] | | 18.5% |
| 4808.90.60 | 00 | Other................................................................ | kg............. | Free[1/] | | 35% |
| 4809 | | Carbon paper, self-copy paper and other copying or transfer papers (including coated or impregnated paper for duplicator stencils or offset plates), whether or not printed, in rolls or sheets: | | | | |
| 4809.20 | | Self-copy paper: | | | | |
| 4809.20.20 | 00 | Writing paper...................................................... | kg............. | Free[1/] | | 35% |
| 4809.20.40 | 00 | Other................................................................ | kg............. | Free[1/] | | 25% |
| 4809.90 | | Other: | | | | |
| 4809.90.20 | 00 | Stereotype-matrix board and mat.............................. | kg............. | Free[1/] | | 35% |
| | | Decalcomania paper: | | | | |
| 4809.90.40 | 00 | Simplex............................................................. | kg............. | Free[1/] | | 15% |
| 4809.90.60 | 00 | Duplex.............................................................. | kg............. | Free[1/] | | Free |
| | | Other: | | | | |
| 4809.90.71 | 00 | Impregnated, coated or both, but not otherwise treated........................................................... | kg............. | Free[1/] | | 25% |
| 4809.90.80 | 00 | Other................................................................ | kg............. | Free[1/] | | 20% |

**Harmonized Tariff Schedule of the United States (2020) Revision 28**
Annotated for Statistical Reporting Purposes

X
48-14

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4810 | | Paper and paperboard, coated on one or both sides with kaolin (China clay) or other inorganic substances, with or without a binder, and with no other coating, whether or not surface-colored, surface-decorated or printed, in rolls or rectangular (including square) sheets, of any size: | | | | |
| | | Paper and paperboard of a kind used for writing, printing or other graphic purposes, not containing fibers obtained by a mechanical or chemi-mechanical process or of which not more than 10 percent by weight of the total fiber content consists of such fibers: | | | | |
| 4810.13 | | In rolls: | | | | |
| | | Of a width exceeding 15 cm: | | | | |
| | | Weighing not more than 150 g/m²: | | | | |
| 4810.13.11 | | Basic paper to be sensitized for use in photography.................. | .................. | Free[1/] | | 5% |
| | 20 | Baryta coated........................ | kg m² | | | |
| | 40 | Other.................................... | kg m² | | | |
| 4810.13.13 | 00 | India or bible paper................................. | kg | Free[1/] | | 24% |
| 4810.13.19 | 00 | Other................................. | kg | Free[1/] | | 37% |
| 4810.13.20 | | Weighing more than 150 g/m²........................ | | Free[1/] | | 42% |
| | 10 | Coated on one side only............................. | kg | | | |
| | 90 | Other............................... | kg | | | |
| | | Other: | | | | |
| 4810.13.50 | 00 | Printed, embossed or perforated..................... | kg | Free[1/] | | 30% |
| | | Other: | | | | |
| 4810.13.60 | 00 | Basic paper to be sensitized for use in photography.................. | kg m² | Free[1/] | | 5% |
| 4810.13.70 | | Other...................................... | .................. | Free[1/] | | 30% |
| | 20 | Containing by weight 25 percent or more cotton fiber.................. | kg | | | |
| | 40 | Other.................................... | kg | | | |

**Harmonized Tariff Schedule of the United States (2020) Revision 28**
Annotated for Statistical Reporting Purposes

X
48-15

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4810 (con.) | | Paper and paperboard, coated on one or both sides with kaolin (China clay) or other inorganic substances, with or without a binder, and with no other coating, whether or not surface-colored, surface-decorated or printed, in rolls or rectangular (including square) sheets, of any size: (con.) | | | | |
| | | Paper and paperboard of a kind used for writing, printing or other graphic purposes, not containing fibers obtained by a mechanical or chemi-mechanical process or of which not more than 10 percent by weight of the total fiber content consists of such fibers: (con.) | | | | |
| 4810.14 | | In sheets with one side not exceeding 435 mm and the other side not exceeding 297 mm in the unfolded state: | | | | |
| | | With one side exceeding 360 mm and the other side exceeding 150 mm in the unfolded state: | | | | |
| | | Weighing not more than 150 g/m²: | | | | |
| 4810.14.11 | | Basic paper to be sensitized for use in photography.................... | .............. | Free[1/] | | 5% |
| | 20 | Baryta coated.................... | kg m² | | | |
| | 40 | Other.................... | kg m² | | | |
| 4810.14.13 | 00 | India or bible paper.................... | kg | Free[1/] | | 24% |
| 4810.14.19 | 00 | Other.................... | kg | Free[1/] | | 37% |
| 4810.14.20 | | Weighing more than 150 g/m².................... | .............. | Free[1/] | | 42% |
| | 10 | Coated on one side only.................... | kg | | | |
| | 90 | Other.................... | kg | | | |
| | | Other: | | | | |
| 4810.14.50 | 00 | Printed, embossed or perforated.................... | kg | Free[1/] | | 30% |
| | | Other: | | | | |
| 4810.14.60 | 00 | Basic paper to be sensitized for use in photography.................... | kg m² | Free[1/] | | 5% |
| 4810.14.70 | | Other.................... | .............. | Free[1/] | | 30% |
| | 20 | Containing by weight 25 percent or more cotton fiber.................... | kg | | | |
| | 40 | Other.................... | kg | | | |
| 4810.19 | | Other: | | | | |
| | | Weighing not more than 150 g/m²: | | | | |
| 4810.19.11 | 00 | Basic paper to be sensitized for use in photography.................... | kg m² | Free[1/] | | 5% |
| 4810.19.13 | 00 | India or bible paper.................... | kg | Free[1/] | | 24% |
| 4810.19.19 | 00 | Other.................... | kg | Free[1/] | | 37% |
| 4810.19.20 | | Weighing more than 150 g/m².................... | .............. | Free[1/] | | 42% |
| | 10 | Coated on one side only.................... | kg | | | |
| | 90 | Other.................... | kg | | | |

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4810 (con.) | | Paper and paperboard, coated on one or both sides with kaolin (China clay) or other inorganic substances, with or without a binder, and with no other coating, whether or not surface-colored, surface-decorated or printed, in rolls or rectangular (including square) sheets, of any size: (con.) | | | | |
| | | Paper and paperboard of a kind used for writing, printing or other graphic purposes, of which more than 10 percent by weight of the total fiber content consists of fibers obtained by a mechanical or chemi-mechanical process: | | | | |
| 4810.22 | | Light-weight coated paper: | | | | |
| 4810.22.10 | 00 | In strips or rolls of a width exceeding 15 cm or in rectangular (including square) sheets with one side exceeding 36 cm and the other side exceeding 15 cm in the unfolded state.................................. | kg............ | Free[1/] | | 37% |
| | | Other: | | | | |
| 4810.22.50 | | Printed, embossed or perforated..................... | .................. | Free[1/] | | 30% |
| | 44 | Hole-punched looseleaf paper................. | kg | | | |
| | 80 | Other........................................ | kg | | | |
| | | Other: | | | | |
| 4810.22.60 | 00 | Basic paper to be sensitized for use in photography........................................ | kg............ m² | Free[1/] | | 5% |
| 4810.22.70 | | Other............................................. | .................. | Free[1/] | | 30% |
| | 20 | Containing by weight 25 percent or more cotton fiber.................................. | kg | | | |
| | 40 | Other........................................ | kg | | | |
| 4810.29 | | Other: | | | | |
| 4810.29.10 | | In strips or rolls of a width exceeding 15 cm or in rectangular (including square) sheets with one side exceeding 36 cm and the other side exceeding 15 cm in the unfolded state.................................. | .................. | Free[1/] | | 37% |
| | 25 | In rolls.................................. | kg | | | |
| | 35 | In sheets.................................. | kg | | | |
| | | Other: | | | | |
| 4810.29.50 | 00 | Printed, embossed or perforated..................... | kg............ | Free[1/] | | 30% |
| | | Other: | | | | |
| 4810.29.60 | 00 | Basic paper to be sensitized for use in photography........................................ | kg............ m² | Free[1/] | | 5% |
| 4810.29.70 | | Other............................................. | .................. | Free[1/] | | 30% |
| | 20 | Containing by weight 25 percent or more cotton fiber.................................. | kg | | | |
| | | Other: | | | | |
| | 25 | In rolls.......................................... | kg | | | |
| | 35 | In sheets........................................ | kg | | | |

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4810 (con.) | | Paper and paperboard, coated on one or both sides with kaolin (China clay) or other inorganic substances, with or without a binder, and with no other coating, whether or not surface-colored, surface-decorated or printed, in rolls or rectangular (including square) sheets, of any size: (con.) | | | | |
| | | Kraft paper and paperboard, other than that of a kind used for writing, printing or other graphic purposes: | | | | |
| 4810.31 | | Bleached uniformly throughout the mass and of which more than 95 percent by weight of the total fiber content consists of wood fibers obtained by a chemical process and weighing 150 g/m² or less: | | | | |
| 4810.31.10 | | In strips or rolls of a width exceeding 15 cm or in rectangular (including square) sheets with one side exceeding 36 cm and the other side exceeding 15 cm in the unfolded state.................... | .................. | Free[1/] | | 25% |
| | 20 | Folding carton stock.......................... | kg | | | |
| | 40 | Base stock for trays, dishes, plates, cups and the like.................................................. | kg | | | |
| | | Other: | | | | |
| | 50 | Gift wrap.................................. | kg | | | |
| | 80 | Other.......................................... | kg | | | |
| | | Other: | | | | |
| 4810.31.30 | 00 | Cards, not punched, for punchcard machines, whether or not in strips.................... | kg | Free[1/] | | 30% |
| 4810.31.65 | 00 | Other.......................................... | kg | Free[1/] | | 26.5% |
| 4810.32 | | Bleached uniformly throughout the mass and of which more than 95 percent by weight of the total fiber content consists of wood fibers obtained by a chemical process and weighing more than 150 g/m²: | | | | |
| 4810.32.10 | | In strips or rolls of a width exceeding 15 cm or in rectangular (including square) sheets with one side exceeding 36 cm and the other side exceeding 15 cm in the unfolded state.................... | .................. | Free[1/] | | 25% |
| | 20 | Folding carton stock.......................... | kg | | | |
| | 40 | Base stock for trays, dishes, plates, cups and the like.................................................. | kg | | | |
| | 60 | Other.......................................... | kg | | | |
| | | Other: | | | | |
| 4810.32.30 | 00 | Cards, not punched, for punchcard machines, whether or not in strips.................... | kg | Free[1/] | | 30% |
| 4810.32.65 | 00 | Other.......................................... | kg | Free[1/] | | 26.5% |
| 4810.39 | | Other: | | | | |
| | | In strips or rolls of a width exceeding 15 cm or in rectangular (including square) sheets with one side exceeding 36 cm and the other side exceeding 15 cm in the unfolded state: | | | | |
| 4810.39.12 | 00 | Whether or not impregnated, but not otherwise treated........................................ | kg | Free[1/] | | 25% |
| 4810.39.14 | 00 | Other.......................................... | kg | Free[1/] | | 20% |
| | | Other: | | | | |
| 4810.39.30 | 00 | Cards, not punched, for punchcard machines, whether or not in strips.................... | kg | Free[1/] | | 30% |
| 4810.39.65 | 00 | Other.......................................... | kg | Free[1/] | | 26.5% |

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4810 (con.) | | Paper and paperboard, coated on one or both sides with kaolin (China clay) or other inorganic substances, with or without a binder, and with no other coating, whether or not surface-colored, surface-decorated or printed, in rolls or rectangular (including square) sheets, of any size: (con.) | | | | |
| | | Other paper and paperboard: | | | | |
| 4810.92 | | Multi-ply: | | | | |
| | | In strips or rolls of a width exceeding 15 cm or in rectangular (including square) sheets with one side exceeding 36 cm and the other side exceeding 15 cm in the unfolded state: | | | | |
| 4810.92.12 | | Weighing more than 150 g/m²................. | .......... | Free[1/] | | 30% |
| | 25 | In rolls............................. | kg | | | |
| | 35 | In sheets........................... | kg | | | |
| 4810.92.14 | | Other................................. | .......... | Free[1/] | | 20% |
| | 25 | In rolls............................. | kg | | | |
| | 35 | In sheets........................... | kg | | | |
| | | Other: | | | | |
| 4810.92.30 | 00 | Cards, not punched, for punch card machines, whether or not in strips................. | kg | Free[1/] | | 30% |
| 4810.92.65 | | Other................................. | .......... | Free[1/] | | 26.5% |
| | 25 | In rolls............................. | kg | | | |
| | 35 | In sheets........................... | kg | | | |
| 4810.99 | | Other: | | | | |
| 4810.99.10 | | In strips or rolls of a width exceeding 15 cm or in rectangular (including square) sheets with one side exceeding 36 cm and the other side exceeding 15 cm in the unfolded state.................... | .......... | Free[1/] | | 20% |
| | 10 | Gift wrap paper....................... | kg | | | |
| | 50 | Folding Carton........................ | kg | | | |
| | 60 | Other................................. | kg | | | |
| | | Other: | | | | |
| 4810.99.30 | 00 | Cards, not punched, for punch card machines, whether or not in strips................. | kg | Free[1/] | | 30% |
| 4810.99.65 | 00 | Other................................. | kg | Free[1/] | | 26.5% |

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4811 | | Paper, paperboard, cellulose wadding and webs of cellulose fibers, coated, impregnated, covered, surface-colored, surface-decorated or printed, in rolls or rectangular (including square) sheets, of any size, other than goods of the kind described in heading 4803, 4809 or 4810: | | | | |
| 4811.10 | | Tarred, bituminized or asphalted paper and paperboard: | | | | |
| 4811.10.11 | 00 | In strips or rolls of a width exceeding 15 cm or in rectangular (including square) sheets with one side exceeding 36 cm and the other side exceeding 15 cm in the unfolded state.................................. | kg............. | Free[1/] | | 10% |
| 4811.10.21 | 00 | Other............................................................ | kg............. | Free[1/] | | 26.5% |
| | | Gummed or adhesive paper and paperboard: | | | | |
| 4811.41 | | Self-adhesive: | | | | |
| 4811.41.10 | 00 | In strips or rolls of a width exceeding 15 cm or in rectangular (including square) sheets with one side exceeding 36 cm and the other side exceeding 15 cm in the unfolded state.................................. | kg............. | Free[1/] | | 40% |
| | | Other: | | | | |
| 4811.41.21 | 00 | In strips or rolls.............................................. | kg............. | Free[1/] | | 40% |
| 4811.41.30 | 00 | Other........................................................ | kg............. | Free[1/] | | 35% |
| 4811.49 | | Other: | | | | |
| 4811.49.10 | 00 | In strips or rolls of a width exceeding 15 cm or in rectangular (including square) sheets with one side exceeding 36 cm and the other side exceeding 15 cm in the unfolded state.................................. | kg............. | Free[1/] | | 14% |
| | | Other: | | | | |
| 4811.49.21 | 00 | In strips or rolls.............................................. | kg............. | Free[1/] | | 30% |
| 4811.49.30 | 00 | Other........................................................ | kg............. | Free[1/] | | 35% |

X
48-20

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4811 (con.) | | Paper, paperboard, cellulose wadding and webs of cellulose fibers, coated, impregnated, covered, surface-colored, surface-decorated or printed, in rolls or rectangular (including square) sheets, of any size, other than goods of the kind described in heading 4803, 4809 or 4810: (con.) | | | | |
| | | Paper and paperboard, coated, impregnated or covered with plastics (excluding adhesives): | | | | |
| 4811.51 | | Bleached, weighing more than 150 g/m²: | | | | |
| | | In strips or rolls of a width exceeding 15 cm or in rectangular (including square) sheets with one side exceeding 36 cm and the other side exceeding 15 cm in the unfolded state: | | | | |
| 4811.51.20 | | 0.3 mm or more in thickness........................ | .................. | Free[1/] | | 30% |
| | 10 | Base stock for milk cartons and other beverage containers................................. | kg | | | |
| | | Other: | | | | |
| | 20 | Folding carton stock............................. | kg | | | |
| | 30 | Base stock for trays, dishes, plates, cups and the like................................. | kg | | | |
| | | Other: | | | | |
| | 40 | Base stock for packaging............. | kg | | | |
| | 50 | Other[2/]............................................. | kg | | | |
| 4811.51.40 | 00 | Other[3/]......................................... | kg | Free[1/] | | 42% |
| 4811.51.60 | 00 | Other[3/]............................................ | kg | Free[1/] | | 35% |
| 4811.59 | | Other: | | | | |
| | | In strips or rolls of a width exceeding 15 cm or in rectangular (including square) sheets with one side exceeding 36 cm and the other side exceeding 15 cm in the unfolded state: | | | | |
| 4811.59.20 | 00 | Printing paper............................... | kg | Free[1/] | | 37% |
| 4811.59.40 | | Other............................................. | .................. | Free[1/] | | 25% |
| | 20 | Folding carton stock................................. | kg | | | |
| | 40 | Other................................................... | kg | | | |
| 4811.59.60 | 00 | Other.......................................... | kg | Free[1/] | | 35% |
| 4811.60 | | Paper and paperboard, coated, impregnated or covered with wax, paraffin, stearin, oil or glycerol: | | | | |
| 4811.60.40 | 00 | In strips or rolls of a width exceeding 15 cm or in rectangular (including square) sheets with one side exceeding 36 cm and the other side exceeding 15 cm in the unfolded state.................. | kg | Free[1/] | | 17.5% |
| 4811.60.60 | 00 | Other.......................................... | kg | Free[1/] | | 35% |

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4811 (con.) | | Paper, paperboard, cellulose wadding and webs of cellulose fibers, coated, impregnated, covered, surface-colored, surface-decorated or printed, in rolls or rectangular (including square) sheets, of any size, other than goods of the kind described in heading 4803, 4809 or 4810: (con.) | | | | |
| 4811.90 | | Other paper, paperboard, cellulose wadding and webs of cellulose fibers: | | | | |
| | | In strips or rolls of a width exceeding 15 cm or in rectangular (including square) sheets with one side exceeding 36 cm and the other side exceeding 15 cm in the unfolded state: | | | | |
| 4811.90.10 | 00 | Handmade paper.................................................. | kg............. | Free[1/] | | 27% |
| | | Other: | | | | |
| 4811.90.20 | 00 | Wholly or partly covered with flock, gelatin, metal or metal solutions................................... | kg............. | Free[1/] | | 22.5% |
| | | Other: | | | | |
| 4811.90.30 | 00 | Impregnated with latex................................ | kg............. | Free[1/] | | 25% |
| | | Other: | | | | |
| 4811.90.40 | | Weighing not over 15 g/m²................ | ................. | Free[1/] | | 30% |
| | 10 | Tissue papers, in sheets............... | kg | | | |
| | 90 | Other.......................................... | kg | | | |
| 4811.90.60 | | Weighing over 15 g/m² but not over 30 g/m²................................................ | ................. | Free[1/] | | 20% |
| | 10 | Tissue papers having a basis weight not exceeding 29 g/m², in sheets............................................ | kg | | | |
| | 90 | Other.......................................... | kg | | | |
| 4811.90.80 | | Weighing over 30 g/m²........................ | ................. | Free[1/] | | 18.5% |
| | 20 | Gift Wrap (other than tissue)........ | kg | | | |
| | 30 | Direct thermal coated paper......... | kg | | | |
| | 50 | Other.......................................... | kg | | | |
| 4811.90.90 | | Other............................................. | ................. | Free[1/] | | 35% |
| | 10 | Tissue papers having a basis weight not exceeding 29 g/m², in sheets................ | kg | | | |
| | 30 | Direct thermal coated paper.................... | kg | | | |
| | 35 | Paper in sheets, lined or ruled, having a width of 152.4 to 360 mm inclusive and a length of 225.25 to 360 mm inclusive.............. | kg | | | |
| | 80 | Other.................................................. | kg | | | |
| 4812.00.00 | 00 | Filter blocks, slabs and plates, of paper pulp........................... | kg............. | Free[1/] | | 20% |
| 4813 | | Cigarette paper, whether or not cut to size or in the form of booklets or tubes: | | | | |
| 4813.10.00 | 00 | In the form of booklets or tubes................................ | kg............. | Free[1/3/] | | 60%[3/] |
| 4813.20.00 | 00 | In rolls of a width not exceeding 5 cm......................... | kg............. | Free[1/] | | 60% |
| 4813.90.00 | 00 | Other................................................................. | kg............. | Free[1/] | | 60% |

**Harmonized Tariff Schedule of the United States (2020) Revision 28**
Annotated for Statistical Reporting Purposes

X
48-22

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4814 | | Wallpaper and similar wallcoverings; window transparencies of paper: | | | | |
| 4814.20.00 | 00 | Wallpaper and similar wallcoverings, consisting of paper coated or covered, on the face side, with a grained, embossed, colored, design-printed or otherwise decorated layer of plastics | kg | Free[4/] | | 3.3¢/kg + 20% |
| 4814.90.02 | 00 | Other[5/] | kg | Free[4/] | | 3.3¢/kg + 20% |
| 4816 | | Carbon paper, self-copy paper and other copying or transfer papers (other than those of heading 4809), duplicator stencils and offset plates, of paper, whether or not put up in boxes: | | | | |
| 4816.20.00 | 00 | Self-copy paper | kg | Free[1/] | | 30% |
| 4816.90.01 | 00 | Other | kg | Free[1/] | | 35% |
| 4817 | | Envelopes, letter cards, plain postcards and correspondence cards, of paper or paperboard; boxes, pouches, wallets and writing compendiums, of paper or paperboard, containing an assortment of paper stationery: | | | | |
| 4817.10.00 | 00 | Envelopes | thousands. | Free[1/] | | 35% |
| 4817.20 | | Letter cards, plain postcards and correspondence cards: | | | | |
| 4817.20.20 | 00 | Sheets of writing paper, with border gummed or perforated, with or without inserts, prepared for use as combination sheets and envelopes | kg | Free[1/] | | 40% |
| 4817.20.40 | 00 | Other | kg | Free[1/] | | 33% |
| 4817.30.00 | 00 | Boxes, pouches, wallets and writing compendiums, of paper or paperboard, containing an assortment of paper stationery | kg | Free[1/] | | 40% |
| 4818 | | Toilet paper and similar paper, cellulose wadding or webs of cellulose fibers, of a kind used for household or sanitary purposes, in rolls of a width not exceeding 36 cm, or cut to size or shape; handkerchiefs, cleansing tissues, towels, tablecloths, table napkins, bed sheets and similar household, sanitary or hospital articles, articles of apparel and clothing accessories, of paper pulp, paper, cellulose wadding or webs of cellulose fibers: | | | | |
| 4818.10.00 | 00 | Toilet paper | kg | Free[1/] | | 35% |
| 4818.20.00 | | Handkerchiefs, cleansing or facial tissues and towels | | Free[1/] | | 35% |
| | 20 | Towels | kg | | | |
| | 40 | Other | kg | | | |
| 4818.30.00 | 00 | Tablecloths and table napkins | kg | Free[1/] | | 35% |
| 4818.50.00 | | Articles of apparel and clothing accessories | | Free[1/] | | 26.5% |
| | 20 | Hospital/medical gowns or scrubs | kg | | | |
| | 80 | Other | kg | | | |
| 4818.90.00 | | Other | | Free[4/] | | 30% |
| | 20 | Face masks[6/] | kg | | | |
| | 80 | Other[6/] | kg | | | |

**Harmonized Tariff Schedule of the United States (2020) Revision 28**
Annotated for Statistical Reporting Purposes

X
48-23

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4819 | | Cartons, boxes, cases, bags and other packing containers, of paper, paperboard, cellulose wadding or webs of cellulose fibers; box files, letter trays and similar articles, of paper or paperboard of a kind used in offices, shops or the like: | | | | |
| 4819.10.00 | | Cartons, boxes and cases, of corrugated paper or paperboard.................................................. | .................. | Free[1/] | | 35% |
| | 20 | Sanitary food and beverage containers...................... | kg | | | |
| | 40 | Other[7/] | kg | | | |
| 4819.20.00 | | Folding cartons, boxes and cases, of non-corrugated paper or paperboard.................................................. | .................. | Free[1/] | | 35% |
| | 20 | Sanitary food and beverage containers...................... | kg | | | |
| | 40 | Other................................................................. | kg | | | |
| 4819.30.00 | | Sacks and bags, having a base of a width of 40 cm or more.................................................................. | .................. | Free[1/] | | 35% |
| | 20 | Shipping sacks and multiwall bags, other than grocers' bags............................................................... | kg | | | |
| | 40 | Other................................................................. | kg | | | |
| 4819.40.00 | | Other sacks and bags, including cones.............................. | .................. | Free[1/] | | 35% |
| | 20 | Shipping sacks and multiwall bags, other than grocers' bags............................................................... | kg | | | |
| | 40 | Other................................................................. | kg | | | |
| 4819.50 | | Other packing containers, including record sleeves: | | | | |
| 4819.50.20 | 00 | Sanitary food and beverage containers...................... | kg | Free[1/] | | 35% |
| 4819.50.30 | 00 | Record sleeves.................................................... | kg | Free[1/] | | 19.3¢/kg |
| 4819.50.40 | | Other................................................................. | kg | Free[1/] | | 35% |
| | 20 | Fiber drums, cans, tubes and similar containers... | kg | | | |
| | | Other: | | | | |
| | 40 | Rigid boxes and cartons[8/]................................. | kg | | | |
| | 60 | Other[9/] | kg | | | |
| 4819.60.00 | 00 | Box files, letter trays, storage boxes and similar articles, of a kind used in offices, shops or the like........................ | kg | Free[1/] | | 35% |

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4820 | | Registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles, exercise books, blotting pads, binders (looseleaf or other), folders, file covers, manifold business forms, interleaved carbon sets and other articles of stationery, of paper or paperboard; albums for samples or for collections and book covers (including cover boards and book jackets) of paper or paperboard: | | | | |
| 4820.10 | | Registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles: | | | | |
| 4820.10.20 | | Diaries, notebooks and address books, bound; memorandum pads, letter pads and similar articles.... | .................. | Free[1] | | 25% |
| | 10 | Diaries and address books[10]................................. | No. | | | |
| | 20 | Memorandum pads, letter pads and similar articles[11]........ | No. | | | |
| | 30 | Sewn composition books with dimensions of 152.4-381 mm (6" - 15"), inclusive (small side) X 222.5-381 mm (8.75" -15"), inclusive (large side)........ | No. | | | |
| | 40 | Other note books with dimensions of 152.4-381 mm (6" - 15"), inclusive (small side) X 222.5-381 mm (8.75" -15"), inclusive (large side)........ | No. | | | |
| | 60 | Other[12]........ | No. | | | |
| 4820.10.40 | 00 | Other[2]........................ | No. | Free[1] | | 25% |
| 4820.20.00 | 00 | Exercise books.......................... | No. | Free[1] | | 25% |
| 4820.30.00 | | Binders (other than book covers), folders and file covers.. | .................. | Free[1] | | 35% |
| | 20 | Looseleaf binders................................. | kg | | | |
| | 40 | Other[11]........................... | kg | | | |
| 4820.40.00 | 00 | Manifold business forms and interleaved carbon sets..... | kg | Free[1] | | 26.5% |
| 4820.50.00 | 00 | Albums for samples or for collections[10].................. | No. | Free[1] | | 30% |
| 4820.90.00 | 00 | Other.......................... | kg | Free[1] | | 35% |
| 4821 | | Paper and paperboard labels of all kinds, whether or not printed: | | | | |
| 4821.10 | | Printed: | | | | |
| 4821.10.20 | 00 | Printed in whole or in part by a lithographic process.... | kg | Free[1] | | 88¢/kg |
| 4821.10.40 | 00 | Other[13]............................... | kg | Free[1] | | 35% |
| 4821.90 | | Other: | | | | |
| 4821.90.20 | 00 | Self-adhesive.......................... | kg | Free[1] | | 40% |
| 4821.90.40 | 00 | Other.......................... | kg | Free[1] | | 30% |
| 4822 | | Bobbins, spools, cops and similar supports of paper pulp, paper or paperboard (whether or not perforated or hardened): | | | | |
| 4822.10.00 | 00 | Of a kind used for winding textile yarn.................. | kg | Free[1] | | 43% |
| 4822.90.00 | 00 | Other................................ | kg | Free[1] | | 35% |

**Harmonized Tariff Schedule of the United States (2020) Revision 28**
Annotated for Statistical Reporting Purposes

X
48-25

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4823 | | Other paper, paperboard, cellulose wadding and webs of cellulose fibers, cut to size or shape; other articles of paper pulp, paper, paperboard, cellulose wadding or webs of cellulose fibers: | | | | |
| 4823.20 | | Filter paper and paperboard: | | | | |
| 4823.20.10 | 00 | Paint filters and strainers.................. | kg............ | Free[1/] | | 35% |
| 4823.20.90 | 00 | Other.................. | kg............ | Free[1/] | | 30% |
| 4823.40.00 | 00 | Rolls, sheets and dials, printed for self-recording apparatus | kg............ | Free[1/] | | 35% |
| | | Trays, dishes, plates, cups and the like, of paper or paperboard: | | | | |
| 4823.61.00 | | Of bamboo.................. | .............. | Free[1/] | | 35% |
| | 20 | Cups and round nested food containers.............. | kg | | | |
| | 40 | Other[14/].................. | kg | | | |
| 4823.69.00 | | Other.................. | .............. | Free[1/] | | 35% |
| | 20 | Cups and round nested food containers.............. | kg | | | |
| | 40 | Other.................. | kg | | | |
| 4823.70.00 | | Molded or pressed articles of paper pulp.................. | .............. | Free[1/] | | 30% |
| | 20 | Plates, bowls or cups[12/].................. | No. | | | |
| | 40 | Other[15/].................. | kg | | | |
| 4823.90 | | Other: | | | | |
| 4823.90.10 | 00 | Of paper pulp.................. | kg............ | Free[1/] | | 30% |
| 4823.90.20 | 00 | Of papier-mâché.................. | kg............ | Free[1/] | | 25% |
| | | Other: | | | | |
| 4823.90.31 | 00 | Cards, not punched, for punchcard machines, whether or not in strips.................. | kg............ | Free[1/] | | 30% |
| 4823.90.40 | 00 | Frames or mounts for photographic slides.......... | kg............ | Free[1/] | | 45% |
| 4823.90.50 | 00 | Hand fans.................. | kg............ No. | Free[1/] | | 50% |
| | | Other: Of coated paper or paperboard: | | | | |
| 4823.90.60 | 00 | Gaskets, washers and other seals.......... | kg............ | Free[1/] | | 26.5% |
| 4823.90.67 | 00 | Other.................. | kg............ | Free[1/] | | 26.5% |
| 4823.90.70 | 00 | Of cellulose wadding.................. | kg............ | Free[1/] | | 19.5% |
| | | Other: | | | | |
| 4823.90.80 | 00 | Gaskets, washers and other seals.......... | kg............ | Free[1/] | | 35% |
| 4823.90.86 | | Other.................. | .............. | Free[1/] | | 35% |
| | 20 | Shoe covers (booties) of a kind described in statistical note 2 to this chapter.................. | kg | | | |
| | 80 | Other[13/].................. | kg | | | |

# Harmonized Tariff Schedule of the United States (2020) Revision 28
Annotated for Statistical Reporting Purposes

X
Endnotes--page 48 - 26

1/ See 9903.88.03.
2/ See 9903.88.46.
3/ Imports under this provision may be subject to Federal Excise Tax (26 U.S.C. 5701).
4/ See 9903.88.15.
5/ See 9903.88.51 and 9903.88.57.
6/ See 9903.88.39 and 9903.88.57.
7/ See 9903.88.43.
8/ See 9903.88.34.
9/ See 9903.88.46 and 9903.88.56.
10/ See 9903.88.48.
11/ See 9903.88.45.
12/ See 9903.88.43 and 9903.88.56.
13/ See 9903.88.38.
14/ See 9903.88.33 and 9903.88.56.
15/ See 9903.88.18, 9903.88.36, 9903.88.43 and 9903.88.56.

**48.20 - Registers, account books, note books, order books, receipt books, letter pads, memorandum pads, diaries and similar articles, exercise books, blotting-pads, binders (loose-leaf or other), folders, file covers, manifold business forms, interleaved carbon sets and other articles of stationery, of paper or paperboard; albums for samples or for collections and book covers, of paper or paperboard.**

4820.10 - Registers, account books, note books, order books, receipt books, letter pads, memorandum pads, diaries and similar articles

4820.20 - Exercise books

4820.30 - Binders (other than book covers), folders and file covers

4820.40 - Manifold business forms and interleaved carbon sets

4820.50 - Albums for samples or for collections

4820.90 - Other

This heading covers various articles of stationery, **other than** correspondence goods of **heading 48.17** and the goods referred to in Note 10 to this Chapter. It includes :

(1)   Registers, account books, note books of all kinds, order books, receipt books, copy books, diaries, letter pads, memorandum pads, engagement books, address books and books, pads, etc., for entering telephone numbers.

(2)   Exercise books. These may simply contain sheets of lined paper but may also include printed examples of handwriting for copying in manuscript.

Educational workbooks, sometimes called writing books, with or without narrative texts, which contain printed textual questions or exercises not subsidiary to their primary use as workbooks and usually with spaces for completion in manuscript are, however, **excluded (heading 49.01)**. Children's workbooks consisting essentially of pictures, with complementary texts, for writing or other exercises are also **excluded (heading 49.03)**.

(3)   Binders designed for holding loose sheets, magazines, or the like (e.g., clip binders, spring binders, screw binders, ring binders) and folders, file covers, files **(other than box files)** and portfolios.

(4)   Manifold business forms : These are multipart form sets either printed on self copy paper or interleaved with carbon paper. These forms are used to make multiple copies and may be continuous or non-continuous. They contain printed matter which requires the insertion of additional information to complete.

(5)   Interleaved carbon sets : These are similar to manifold business forms but they either contain no printed matter or contain only identifying information such as letter heads. They are used extensively for typing multiple copies and like most manifold business forms are held together by means of a glued and perforated stub.

(6)   Albums for samples or for collections (e.g., stamp, photograph).

(7)   Other articles of stationery such as blotting-pads (folding or not).

(8)   Book covers (binding covers and dust covers), whether or not printed with characters (title, etc.) or illustrations.

Some articles of this heading often contain a considerable amount of printed matter but remain classified in this heading (and not in Chapter 49) **provided** that the printing is subsidiary to their primary use, for example, on forms (essentially for completion in manuscript or typescript) and diaries (essentially for writing).

The goods of this heading may be bound with materials other than paper (e.g., leather, plastics or textile material) and have reinforcements or fittings of metal, plastics, etc.

On the other hand, articles such as desk memo-blocks consisting essentially of wood, marble, etc., are classified as manufactures of wood, marble, etc., as the case may be. Loose sheets of exercise paper and other writing paper, including perforated sheets for loose-leaf books, fall generally in **heading 48.02, 48.10, 48.11 or 48.23**, as the case may be. Loose-leaf sheets for albums are also **excluded** from this heading and fall in other headings according to their characteristics.

The heading excludes :

(a)   Cheque books **(heading 49.07)**.

(b)   Blank multi-coupon travel tickets **(heading 49.11)**.

(c)   Lottery tickets, "scratch cards", raffle tickets and tombola tickets (generally **heading 49.11**).

Filed: 05/24/2024   Document: 8   Case: 24-1710

ADD-029

Copyright 2009 CUSTOMS Info LLC, All Rights Reserved.

CHAPTER 49

PRINTED BOOKS, NEWSPAPERS, PICTURES AND OTHER
PRODUCTS OF THE PRINTING INDUSTRY; MANUSCRIPTS,
TYPESCRIPTS AND PLANS

X
49-1

Notes

1.    This chapter does not cover:

(a)   Photographic negatives or positives on transparent bases (chapter 37);

(b)   Maps, plans or globes, in relief, whether or not printed (heading 9023);

(c)   Playing cards or other goods of chapter 95; or

(d)   Original engravings, prints or lithographs (heading 9702), postage or revenue stamps, stamp-postmarks, first-day covers, postal stationery or the like of heading 9704, antiques of an age exceeding one hundred years or other articles of chapter 97.

2.    For the purposes of chapter 49 the term "printed" also means reproduced by means of a duplicating machine, produced under the control of an automatic data processing machine, embossed, photographed, photocopied, thermocopied or typewritten.

3.    Newspapers, journals and periodicals which are bound otherwise than in paper, and sets of newspapers, journals or periodicals comprising more than one issue under a single cover are to be classified in heading 4901, whether or not containing advertising material.

4.    Heading 4901 also covers:

(a)   A collection of printed reproductions of, for example, works of art or drawings, with a relative text, put up with numbered pages in a form suitable for binding into one or more volumes;

(b)   A pictorial supplement accompanying and subsidiary to, a bound volume; and

(c)   Printed parts of books or booklets, in the form of assembled or separate sheets or signatures, constituting the whole or a part of a complete work and designed for binding.

However, printed pictures or illustrations not bearing a text, whether in the form of signatures or separate sheets, fall in heading 4911.

5.    Subject to note 3 of this chapter, heading 4901 does not cover publications which are essentially devoted to advertising (for example, brochures, pamphlets, leaflets, trade catalogs, yearbooks published by trade associations and tourist promotional literature). Such publications are to be classified in heading 4911.

6.    For the purposes of heading 4903, the expression "children's picture books" means books for children in which the pictures form the principal interest and the text is subsidiary.

Additional U.S. Notes

1.    For the purposes of determining the classification of printed matter produced in whole or in part by a lithographic process, the thickness of such printed matter is that of the thinnest paper contained therein, except that the thickness of a permanently mounted lithograph is the combined thickness of the lithograph and its mounting.

2.    Currency in current circulation in any country imported for monetary purposes and securities and similar evidences of value provided for in heading 4907 shall be admitted without formal customs consumption entry or the payment of duty. This does not affect any requirement under other provisions of law to the effect that transfers of monetary instruments into or through the United States, in an amount exceeding $10,000 on any one occasion, shall be reported as prescribed therein.

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4901 | | Printed books, brochures, leaflets and similar printed matter, whether or not in single sheets: | | | | |
| 4901.10.00 | | In single sheets, whether or not folded............................ | ................. | Free[1/][2/] | | Free |
| | 20 | Reproduction proofs.................................................. | kg | | | |
| | 40 | Other.......................................................................... | kg | | | |
| | | Other: | | | | |
| 4901.91.00 | | Dictionaries and encyclopedias, and serial installments thereof............................................... | ................. | Free[1/] | | Free |
| | 20 | Dictionaries (including thesauruses)...................... | No. | | | |
| | 40 | Encyclopedias........................................................ | No. | | | |
| 4901.99.00 | | Other.......................................................................... | ................. | Free[3/] | | Free |
| | 10 | Textbooks................................................................ | No. | | | |
| | 20 | Bound newspapers, journals and periodicals provided for in Legal Note 3 to this chapter.......... | No. | | | |
| | 30 | Directories.............................................................. | No. | | | |
| | | Other: | | | | |
| | 40 | Bibles, testaments, prayer books and other religious books.................................................... | No. | | | |
| | 50 | Technical, scientific and professional books... | No. | | | |
| | | Art and pictorial books: | | | | |
| | 60 | Valued under $5 each[4/]............................... | No. | | | |
| | 65 | Valued $5 or more each[5/]............................ | No. | | | |
| | | Other: | | | | |
| | 70 | Hardbound books.......................................... | No. | | | |
| | 75 | Rack size paperbound books........................ | No. | | | |
| | | Other: | | | | |
| | 91 | Containing not more than 4 pages each (excluding covers)...................... | No. | | | |
| | 92 | Containing 5 or more pages each, but not more than 48 pages each (excluding covers).............................. | No. | | | |
| | 93 | Containing 49 or more pages each (excluding covers)[6/]............................ | No. | | | |
| 4902 | | Newspapers, journals and periodicals, whether or not illustrated or containing advertising material: | | | | |
| 4902.10.00 | 00 | Appearing at least four times a week................................ | kg.............. | Free[1/] | | Free |
| 4902.90 | | Other: | | | | |
| 4902.90.10 | 00 | Newspaper supplements printed by a gravure process.................................................................... | No.............. | Free[1/] | | 25% |
| 4902.90.20 | | Other.......................................................................... | ................. | Free[1/] | | Free |
| | 20 | Newspapers appearing less than four times per week.................................................................... | kg | | | |
| | 40 | Other business and professional journals and periodicals (including single issues tied together for shipping purposes)......................................... | No. | | | |
| | 60 | Other (including single issues tied together for shipping purposes)......................................... | No. | | | |
| 4903.00.00 | 00 | Children's picture, drawing or coloring books........................... | No.............. | Free[7/] | | Free |

**Harmonized Tariff Schedule of the United States (2020) Revision 28**
Annotated for Statistical Reporting Purposes

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4904.00.00 | | Music, printed or in manuscript, whether or not bound or illustrated.................. | .................. | Free[1] | | Free |
| | 20 | Sheet music, whether or not stapled or folded, but not otherwise bound.................. | kg | | | |
| | 40 | Other.................. | No. | | | |
| 4905 | | Maps and hydrographic or similar charts of all kinds, including atlases, wall maps, topographical plans and globes, printed: | | | | |
| 4905.10.00 | 00 | Globes.................. | kg | Free[1] | | 35% |
| | | Other: | | | | |
| 4905.91.00 | 00 | In book form.................. | No. | Free[1] | | Free |
| 4905.99.00 | 00 | Other.................. | kg | Free[1] | | Free |
| 4906.00.00 | 00 | Plans and drawings for architectural, engineering, industrial, commercial, topographical or similar purposes, being originals drawn by hand; handwritten texts; photographic reproductions on sensitized paper and carbon copies of the foregoing.......... | kg | Free[1] | | 25% |
| 4907.00.00 | 00 | Unused postage, revenue or similar stamps of current or new issue in the country in which they have, or will have, a recognized face value; stamp-impressed paper; banknotes; check forms; stock, share or bond certificates and similar documents of title.................. | kg | Free[1] | | 66¢/kg |
| 4908 | | Transfers (decalcomanias): | | | | |
| 4908.10.00 | 00 | Transfers (decalcomanias), vitrifiable.................. | kg | Free[1/2] | | 66¢/kg + 15% |
| 4908.90.00 | 00 | Other.................. | kg | Free[1] | | 88¢/kg |
| 4909.00 | | Printed or illustrated postcards; printed cards bearing personal greetings, messages or announcements, whether or not illustrated, with or without envelopes or trimmings: | | | | |
| 4909.00.20 | 00 | Postcards.................. | thousands. | Free[1] | | 25% |
| 4909.00.40 | 00 | Other.................. | kg | Free[7] | | 45% |
| 4910.00 | | Calendars of any kind, printed, including calendar blocks: | | | | |
| | | Printed on paper or paperboard in whole or in part by a lithographic process: | | | | |
| 4910.00.20 | 00 | Not over 0.51 mm in thickness.................. | kg | Free[7] | | 66¢/kg |
| 4910.00.40 | 00 | Over 0.51 mm in thickness.................. | kg | Free[1] | | 19¢/kg |
| 4910.00.60 | 00 | Other.................. | kg | Free[1] | | 35% |

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 4911 | | Other printed matter, including printed pictures and photographs: | | | | |
| 4911.10.00 | | Trade advertising material, commercial catalogs and the like.............................................................. | ................. | Free[1/] | | Free |
| | 20 | Printed catalogs relating principally to current offers for the sale of United States products......................... | No. | | | |
| | 40 | Printed catalogs, price lists or trade notices, relating to offers, by a person whose principal place of business or bonafide residence is in a foreign country, to sell or rent products of a foreign country or to furnish foreign or international transportation or commercial insurance services.................................................................. | No. | | | |
| | 60 | Tourist and other literature (including posters), containing geographic, historical, hotel, institutional, timetable, travel or similar information, principally with respect to places, travel facilities or educational opportunities outside the customs territory of the United States.................................................................... | kg | | | |
| | 80 | Other.................................................................... | kg | | | |
| 4911.91 | | Other: | | | | |
| 4911.91.10 | | Pictures, designs and photographs: | | | | |
| 4911.91.10 | 00 | Printed over 20 years at time of importation.......... | kg | Free[1/] | | Free |
| | | Printed not over 20 years at time of importation: | | | | |
| 4911.91.15 | 00 | Suitable for use in the production of articles of heading 4901................................................. | kg | Free[1/] | | Free |
| | | Other: | | | | |
| | | Lithographs on paper or paperboard: | | | | |
| 4911.91.20 | | Not over 0.51 mm in thickness............ | ................. | Free[2/7/] | | 66¢/kg |
| | 20 | Posters........................................... | kg | | | |
| | 40 | Other.............................................. | kg | | | |
| 4911.91.30 | 00 | Over 0.51 mm in thickness.................. | kg | Free[2/7/] | | 19.3¢/kg |
| 4911.91.40 | | Other............................................................. | ................. | Free[1/2/] | | 25% |
| | 20 | Posters........................................... | kg | | | |
| | 40 | Other.............................................. | kg | | | |
| 4911.99 | | Other: | | | | |
| 4911.99.20 | 00 | International customs forms (carnets) and parts thereof, in English or French (whether or not in additional languages)........................................ | kg | Free[1/] | | Free |
| | | Other: | | | | |
| 4911.99.60 | 00 | Printed on paper in whole or in part by a lithographic process.................................... | kg | Free[1/] | | 66¢/kg + 0.4% |
| 4911.99.80 | 00 | Other.................................................................. | kg | Free[1/] | | 35% |

**Harmonized Tariff Schedule of the United States (2020) Revision 28**
Annotated for Statistical Reporting Purposes

1/ See 9903.88.15.
2/ See U.S. note 21(n) to subchapter III, chapter 99 and 9903.89.43.
3/ See U.S. note 20(s)(ii) to subchapter III, chapter 99 and 9903.88.15.
4/ See 9903.88.51.
5/ See 9903.88.51 and 9903.88.57.
6/ See 9903.88.49.
7/ See 9903.88.16.

Title - 49.10 Calendars of any kind, printed, including calendar blocks.

**49.10 - Calendars of any kind, printed, including calendar blocks.**

This heading relates to calendars of any kind whether they are printed on paper, paperboard, woven fabric or any other material, **provided** that the printing gives the article its essential character. They may contain, in addition to the normal sequence of dates, days of the week, etc., various other items of information, such as notes of important events, festivals, astronomical and other data, verses and proverbs. They may also incorporate pictorial or advertising matter. However, publications sometimes improperly called calendars which, although dated, are published essentially to give information concerning public or private events, etc., are classified in **heading 49.01** (unless falling in **heading 49.11** as publicity matter).

The heading also covers calendars of the "perpetual" type or with replaceable blocks mounted on bases of materials other than paper of paperboard (e.g., wood, plastics or metal).

The heading further includes calendar blocks. These consist of a number of slips of paper each printed with particulars of a separate day of the year and assembled in chronological order in the form of a block from which the separate slips are removed daily. These blocks are generally used for mounting on a base of paperboard, or for annual replacement in calendars with bases of a more permanent nature.

The heading, however, **does not cover** articles whose essential character is not determined by the presence of a calendar.

The heading also **excludes** :

(a) Memorandum pads incorporating calendars and diaries (including so-called engagement calendars) (**heading 48.20**).

(b) Printed calendar backs not incorporating calendar blocks (**heading 49.11**).

Copyright 2009 CUSTOMS Info LLC, All Rights Reserved.

ADD-035

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by Blue Sky the Color of Imagination, LLC v. United States, CIT, April 10, 2024

283 F.3d 1342
United States Court of Appeals,
Federal Circuit.

THE MEAD CORPORATION, Plaintiff-Appellant,

v.

UNITED STATES, Defendant-Appellee.

No. 98-1569.
|
March 8, 2002.

**Synopsis**

After remand of tariff classification case, 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292, The Court of Appeals, Rader, Circuit Judge, held that imported day planners could not be classified as bound diaries under subheading 4820.10.20 of Harmonized Tariff Schedules of the United States (HTSUS) but were properly classifiable under the "other" provision of subheading 4820.10.40.

Reversed.

West Headnotes (6)

**[1]    Customs Duties 🔑 Mode of Review**

Court of Appeals reviews the Court of International Trade's grant of summary judgment on tariff classification issue without deference.

4 Cases that cite this headnote

**[2]    Customs Duties 🔑 Scope of Inquiry or Review**

Where parties do not dispute material facts regarding the imported goods, court's review of tariff classification of the goods collapses into a determination of the proper meaning and scope of Harmonized Tariff Schedules of the United States (HTSUS) terms, which, as a matter of statutory interpretation, is a question of law.

17 Cases that cite this headnote

**[3]    Customs Duties 🔑 Construction as to Classification of Goods**

Court must accord a tariff classification ruling the degree of deference commensurate with its power to persuade, but has an independent responsibility to decide the legal issue regarding the proper meaning and scope of the Harmonized Tariff Schedules of the United States (HTSUS) terms.

31 Cases that cite this headnote

**[4]    Customs Duties 🔑 Commercial Designation**

Court construes a tariff term according to its common and commercial meanings, which it presumes are the same.

5 Cases that cite this headnote

**[5]    Customs Duties 🔑 Construction as to Classification of Goods**

To discern the common meaning of a tariff term, court consults dictionaries, scientific authorities, and other reliable information sources.

11 Cases that cite this headnote

**[6]    Customs Duties 🔑 Printed Matter, Books, and Periodicals**

Imported day planners could not be classified as bound diaries under subheading 4820.10.20 of Harmonized Tariff Schedules of the United States (HTSUS) but were properly classifiable under the "other" provision of subheading 4820.10.40; the imports, which would not permit a diarist to record detailed notations about events, observations, feelings, or thoughts and which were in loose-leaf binders, were neither "diaries" nor "bound." Harmonized Tariff Schedule, HTSUS 4820.10.20, 4820.10.40.

2 Cases that cite this headnote

**Attorneys and Law Firms**

**\*1343**  J. Peter Coll, Jr., Orrick, Herrington & Sutcliffe, LLP, of New York, New York, filed a brief on remand from the Supreme Court of the United States for plaintiff-appellant. With him on the brief was Kristen Bancroft. Of counsel on the brief was Sidney H. Kuflik, Lamb & Lerch, of New York, New York.

Amy M. Rubin, Attorney, Civil Division, International Trade Field Office, Department of Justice, of New York, New York, filed a brief on remand from the Supreme Court of the United States for defendant-appellee. With her on the brief was David M. Cohen, Director, Civil Division, Commercial Litigation Branch Department of Justice, of Washington, DC. Of counsel on the brief was Karen P. Binder, Assistant Chief Counsel, U.S. Customs Service, of New York, New York. Of counsel were William Kanter, and Bruce G. Forrest, Attorneys, Appellate Staff, Civil Division, Department of Justice, of Washington, DC; and Allan L. Martin, Associate Chief Counsel, and Lou Brenner, Attorney, U.S. Customs Service, of Washington, DC; and Edward N. Maurer, Attorney, U.S. Customs Service, of New York, New York.

Terence P. Stewart, Stewart and Stewart, of Washington, DC; David Serko, Serko & Simon, LLP, of New York, New York; Richard M. Belanger, Powell, Goldstein, Frazer & Murphy, LLP, of Washington, DC; and Peter Jay Baskin, Sharretts, Paley, Carter & Blauvelt, P.C., of New York, New York, for amicus curiae **\*1344**  Customs and International Trade Bar Association.

Before NEWMAN, RADER, and SCHALL, Circuit Judges.

**Opinion**

RADER, Circuit Judge.

This case is before this court on remand from the Supreme Court of the United States. United States v. Mead Corp., 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)

(*Mead III* ). In Mead Corp. v. United States, 185 F.3d 1304 (Fed.Cir.1999) (*Mead II* ), this court reversed the Court of International Trade's affirmance of a tariff classification from the U.S. Customs Service (Customs). Customs had classified day planners imported by Mead Corporation (Mead) as bound diaries. In reversing the trial court, this court accorded no deference to the Customs classification. The Supreme Court vacated the judgment of this court in *Mead II* and remanded because this court did not accord deference to the classification under Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

In reconsidering the merits, this court applies *Skidmore* deference to the classification ruling at issue. Because Customs' classification of Mead's day planners within subheading 4820.10.20 of the Harmonized Tariff Schedules of the United States (HTSUS) does not persuade under the *Skidmore* standard, this court reverses.

### I.

At issue are five models of Mead's day planners (model nos. 47192, 47062, 47124, 47104, and 47102). The day planners differ from each other only stylistically based on size (ranging from 7 1/2″ x 4 3/8″ to 12″ x 10 5/8″), outer jacket cover material, and type of closure. The basic model contains a calendar, a section for daily notes, a section for telephone numbers and addresses, and a notepad. The larger models contain the features of the basic model with additional items such as a daily planner section, plastic ruler, plastic pouch, credit card holder, and computer diskette holder. A loose-leaf ringed binder holds the contents of the day planner, except for the notepad, which fits into the rear flap of the day planner's outer cover.

In a January 11, 1993 ruling, Customs classified the subject planners as bound diaries under subheading 4820.10.20 (emphasis added):

| 4820 | Registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, *diaries and similar articles,* exercise books, blotting pads, binders (looseleaf or other), folders, file covers, manifold business forms, interleaved carbon sets and other articles of stationery, of paper or paperboard; albums for sample or for collections and book covers (including cover boards and book jackets) of paper or paperboard: |
|------|------|

|         |                                                                                                       |
|---------|-------------------------------------------------------------------------------------------------------|
| 4820.10 | Registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, *diaries and similar articles:* |
| 4820.10.20 | *Diaries,* notebooks and address books, *bound;* memorandum pads, letter pads and similar articles |

Customs' original 1993 ruling offered little explanation for classifying Mead's day planners as bound diaries. After Mead protested, Customs issued a new ruling on October 21, 1994, with more detailed reasoning **\*1345** about the classification under subheading 4820.10.20. This 1994 ruling is at issue in this case.

Moving for summary judgment in the trial court, Mead asserted both that its imports were not diaries and were not bound. Either contention, if accepted, compels classification under the "other" provision of subheading 4820.10.40. Under that subheading, Mead would owe no tariff on the imported articles, in contrast with the 4.0% tariff assessed in Customs' 1993 ruling. In support of its motion, Mead submitted dictionary definitions of the terms at issue, affidavits from seven individuals from the U.S. stationery goods industry, and affidavits from two bookbinding experts. The Government cross-moved for summary judgment in support of Customs' classification, offering its own definitions of "diary" and "bound," and submitting supporting affidavits.

In a July 14, 1998 opinion (No. 98-101), the trial court granted the Government's motion. The Court of International Trade broadly defined "diaries" as "articles whose principle purpose is to allow a person to make daily notations concerning events of importance." Under that definition, the trial court decided that Mead's day planners qualify as diaries even though they admittedly contain "supplementary material"-non-diary elements such as a section for addresses and telephone numbers. With respect to the term "bound," the trial court opined: "The common meaning of 'bound' is fastened. The irrevocability of the fastening is not important so long as it goes beyond the transitory role of packaging." The trial court thus found that Mead's day planners, whose contents fit in a loose-leaf ringed binder, fall within that broad definition of "bound."

Mead argued for a different definition of "diaries": "A book for recording a person's observations, thoughts and/ or events." Mead further contended that "bound" applies only when pages are "permanently secured along one edge between covers in a manner traditionally performed by a

bookbinder." Reversing the Court of International Trade, this court held that Mead's day planners were neither "diaries" nor "bound." *Mead II,* 185 F.3d at 1311. Thus, this court concluded that the day planners required classification under the "other" provision of subheading 4820.10.40. In reaching its conclusion, this court did not accord ordinary classification rulings the deference described in *Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

The United States then petitioned for a writ of certiorari to the United States Supreme Court. The Supreme Court granted certiorari, 530 U.S. 1202, 120 S.Ct. 2193, 147 L.Ed.2d 231 (2000), to determine "the limits of *Chevron* deference owed to administrative practice in applying a statute." *Mead III,* 533 U.S. at 226, 121 S.Ct. at 2171. The Court held that classification rulings, although "beyond the *Chevron* pale," may merit some deference under *Skidmore. Id.* at 220, 121 S.Ct. at 2167. The Court vacated and remanded the earlier judgment of this court with instructions to consider Customs' classification ruling under the principles in *Skidmore. Id.* at 237-38, 121 S.Ct. at 2177.

II.

**[1]   [2]**   This court reviews the Court of International Trade's grant of summary judgment without deference. *Sharp Microelectronics Tech., Inc. v. United States,* 122 F.3d 1446, 1449 (Fed.Cir.1997). Where, as here, the parties do not dispute material facts regarding the imported **\*1346** goods, this court's review of the classification of the goods collapses into a determination of the proper meaning and scope of the HTSUS terms, which, as a matter of statutory interpretation, is a question of law. *See SGI, Inc. v. United States,* 122 F.3d 1468, 1471 (Fed.Cir.1997).

**[3]**   In keeping with the Supreme Court's instructions in *Mead III,* this court affords a classification ruling deference in accordance with the principles set forth in *Skidmore. Mead III,* 533 U.S. at 219-20, 121 S.Ct. at 2167. Under *Skidmore,* a classification ruling receives a measure of deference

proportional to its "power to persuade." *Id.*; *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161. That power to persuade depends on the thoroughness evident in the classification ruling, the validity of its reasoning, its consistency with earlier and later pronouncements, the formality attendant the particular ruling, [1] and all those factors that give it power to persuade. *Mead III*, 533 U.S. at 219-20, 121 S.Ct. at 2167; *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161. In addition, Customs' relative expertise in administering the tariff statute often lends further persuasiveness to a classification ruling, entitling the ruling to a greater measure of deference. While this court therefore recognizes its responsibility to accord a classification ruling the degree of deference commensurate with its power to persuade, this court also recognizes its independent responsibility to decide the legal issue regarding the proper meaning and scope of the HTSUS terms. *Rocknel Fastener, Inc. v. United States,* 267 F.3d 1354, 1358 (Fed.Cir.2001).

### III.

[4] [5] This court construes a tariff term according to its common and commercial meanings, which it presumes are the same. *See Simod Am. Corp. v. United States,* 872 F.2d 1572, 1576 (Fed.Cir.1989). To discern the common meaning of a tariff term, this court consults dictionaries, scientific authorities, and other reliable information sources. *See C.J. Tower & Sons of Buffalo, Inc. v. United States,* 69 C.C.P.A. 128, 673 F.2d 1268, 1271 (Fed.Cir.1982).

### A. Diaries

[6] Customs gleaned its broad meaning of diaries from three prior cases. In *Baumgarten v. United States,* 49 Cust. Ct. 275, Abstract No. 67150 (1962), the court considered a plastic-covered book, 4 1/4″ by 7 3/8″, having pages for addresses and telephone numbers followed by ruled pages allocated to the days of the year and the hours of the day. Calendars for the current and following months headed the ruled pages. The importer invoiced the articles as "desk-diaries." In classifying them as diaries rather than as "other blank books and slate books," the court looked first to the definition of a diary in *Webster's New International Dictionary of the English Language* (2d ed. 1951): "A register of daily events or transactions; a daily record; journal; esp., a book for personal notes or memoranda, or for details of experiences or observations of the writer; also, a blank book

for daily memoranda." *Baumgarten,* 49 Cust. Ct. at 276. Based on this definition, the court decided:

> [T]he particular distinguishing feature of a diary is its suitability for the receipt of daily notations .... By virtue of the allocation of spaces for hourly entries during the course of each day of the year, the books are designed for that **\*1347** very purpose. That the daily events to be chronicled may also include scheduled appointments would not detract from their general character as appropriate volumes for the recording of daily memoranda.

*Id.*

In *Brooks Brothers v. United States,* 68 Cust. Ct. 91 (1972), the court considered an "Economist Diary," a 10″ by 8″ spiral bound article, covered in red leather, with fine plate-finish parchment. The importer did not dispute that the Diary featured pages suitable for use as a diary, but argued that the Diary also contained printed informational material such as maps and thus could not be classified as "Blank books, bound: Diaries." Discussing *Baumgarten,* the trial court noted: "Judicial authority, therefore, has adopted the crux of the lexicographic definitions that the 'particular distinguishing feature of a diary is its suitability for the receipt of daily notations.' " *Id.* at 97. The court concluded that although the informational pages added to the usefulness or value of the article, the diary portion of the Economist Diary, "clearly 'suitable for the receipt of daily notations,' " controlled the classification. *Id.* at 97-98.

Finally, in *Charles Scribner's Sons v. United States,* 6 CIT 168, 574 F.Supp. 1058 (1983), the court classified an "Engagement Calendar," a 9 3/8″ by 6 1/2″ spiral bound article with photographs on the left side and a table of the days of the week on the right, as a calendar rather than a diary. It acknowledged the *Baumgarten* and *Brooks Brothers* cases, but decided that, in contrast to a diary that is "primarily intended to be used in connection with extensive notations," the article at issue was intended only "for a notation of no more than a sentence or two." *Id.* at 175, 574 F.Supp. 1058.

Both Customs and the trial court relied heavily on these cases for their definition of diaries. These cases, however, involved classification of goods under tariff provisions different from the HTSUS at issue in this case. These prior cases therefore supply only limited guidance for this case. In *Charles Scribner's Sons,* for instance, the court decided between classifying the articles as calendars or diaries. Neither party in this case would classify the day planners as calendars. In *Baumgarten,* the court classified the articles at issue under the Tariff Act of 1930, which provided sparse guidance under Schedule 14 ("Papers and Books"):

Blank books and slate books:

Address books, diaries, and notebooks

| | |
|---|---|
| 256.56 | Diaries, notebooks, and address books |
| 256.58 | Other |

These earlier tariff schedules do not contain the specificity of the corresponding HTSUS headings. The more precise HTSUS classification scheme, which distinguishes diaries from articles similar to diaries, necessitates a more precise definition of the terms at issue. Stated another **\*1348** way, while the blunt dividing line in *Baumgarten* and *Brooks Brothers* distinguished diaries from other blank books, this court must distinguish diaries from account books, notebooks, receipt books, and other articles similar to diaries. Thus, this court must define and differentiate diaries with a finer point than those earlier cases.

The *Oxford English Dictionary,* at 612 (1989), defines a diary as: "1. A daily record of events or transactions, a journal; specifically, a daily record of matters affecting the writer personally, or which come under his personal observation." This definition largely comports with the definition cited in *Baumgarten* and with other dictionary definitions. The *American Heritage Dictionary of the English Language,* at 516 (3d ed.1992), for example, defines a diary as: "1. A daily record, especially a personal record of events, experiences, and observations, a journal." *See also Webster's New Twentieth Century Dictionary of the English Language* at 504 (2d ed.1961) ("1. a daily written record, especially of the writer's own experiences, thoughts, etc.").

These definitions reflect two key aspects of a diary. A diary provides space for a record, especially, as the Court of International Trade recognized, "concerning events of importance." Thus, a diary facilitates recording more than the mere date or time of events, but also more detailed

Other

Likewise, the court in *Brooks Brothers* decided its case with similarly sparse guidance under the old Tariff Schedule of the United States (TSUS):

Schedule 2. Wood and Paper; Printed Matter

Part 4. Paper, Paperboard, and Products Thereof

Subpart C. Paper and Paperboard Cut to Size or Shape; Articles of Paper and Paperboard

Blank books, bound:

observations, thoughts, or feelings about those events. This court, however, would not expand a diary record to embrace a broad range of writings embraced by the term "notations." To the contrary, the term "notations" encompasses the use of only a word or a brief phrase-writings too brief to include details about events, observations, thoughts, or feelings. To constitute a diary record at all, then, notations must be relatively extensive. In the words of *Charles Scribner's Sons,* a diary must have space for "more than a sentence or two." 6 CIT at 175, 574 F.Supp. 1058.

In addition, a diary is a "record" in the sense that it "recalls or relates *past* events." *Webster's Ninth New Collegiate Dictionary* at 984 (1990) (emphasis added). A diarist records events, observations, feelings, or thoughts after they happen. A diary is retrospective, not prospective. A diary is not a place to jot down the date and time of a distant dentist appointment, regardless of whether that appointment would constitute an "event of importance."

Applying these aspects of the definition of a diary, the imports are articles similar to diaries (encompassed by "other" in subheading 4820.10.40), rather than diaries themselves under subheading 4820.10.20. With regard to the question of sufficient space to record detailed observations, this court notes that the Government's brief does not identify which part of the imports constitutes the diary portion. The record suggests that the trial court below focused on the "daily planner" section, which all five imported models have in common.[2] The daily planner section includes a series of pages allocated to days and numbered with the hours of the

day along the left hand side of the page. Two blank lines (four shorter lines in the largest model) extend to the right of each hour. The very limited space provided by these blank lines would not permit a diarist to record detailed notations about events, observations, feelings, or thoughts. This limited space **\*1349** permits only the briefest notations. Space for only a word or phrase disqualifies these articles as diaries.

Moreover, an examination of the articles shows that the few lines for recording events does not envision recording of past events. The caption "Daily Planner" appears at the top of each page. The word "Appointments" appears above the blank lines. These pages facilitate advance planning and scheduling. As noted above, however, a diary is not a planning tool. Instead, a diary receives a retrospective record of events, observations, thoughts, or feelings. Mead markets its entire article as a "Day *Planner,*" further buttressing the distinction between this prospective scheduling article and a diary. While the importer's marketing of the goods will not dictate the classification, such evidence is relevant to the determination and, in this case, weighs against classifying the articles as diaries. Indeed, the earlier trade cases-*Baumgarten* (desk-diaries); *Brooks Brothers* (Economist Diary); *Charles Scribner's Sons* (Engagement Calendar)-turned at least in part on the fact that the importers themselves regarded their articles either as diaries or as calendars. *See, e.g., Brooks Brothers*, 68 Cust. Ct. at 98 ("[T]he Economist Diary is ... by its own description a 'diary.' ").

Thus, although mindful of Customs' relative expertise in classifying imported articles and its consistency in classifying day planners and other similar articles as bound diaries since 1993, this court concludes that Mead's imported day planners are not "diaries" (nor any form of a diary) within the meaning of subheading 4820.10.20. This conclusion alone compels the classification of the subject articles under the "other" provision of subheading 4820.10.40.

### B. Bound

Reasoning that the tariff provisions at issue cover a "wide variety of book and non-book articles," the trial court eschewed the meaning of "bound" as used in the trade of book manufacturing. While heading 4820 covers book and non-book articles, the term "bound" does not appear in that heading. Rather, the term appears for the first time in subheading 4820.10.20 where it modifies "Diaries, notebooks and address books." These three items, the parties agree, are

all books. Thus, the proper context to ascertain the meaning of "bound" is in the context of the manufacture of books. The trial court interpreted the term "bound" more broadly because it applied the term to non-book articles as well. In proper context, however, the HTSUS subheading uses "bound" in connection with types of books. Therefore, anchored to this correct context, this court seeks the meaning of that term.

*The Dictionary of Publishing,* at 43-44 (1982), defines the term "bound book" as: "Books that have been cased in, usually referring to books that have been sewn, glued, or stapled into permanent bindings." *Webster's Ninth New Collegiate Dictionary* defines "bound" as "4. *of a book:* secured to the covers by cords, tapes, or glue." These definitions within the proper context describe binding methods and materials as permanent. Thus, this court concludes that the term "bound," when used with reference to books as in subheading 4820.10.20, means permanently secured or fastened. In addition, affidavits from bookbinding and stationery goods experts in the record confirmed this meaning of the term "bound" in its proper context.

Customs' definition of "bound," in contrast, essentially disregards the bookbinder's **\*1350** meaning of the term. The HTSUS specifies a "bound diary." This specificity contemplates the existence of an "unbound diary." The Customs definition, however, would make the meaning of "bound" (fastened regardless of the permanency) so broad that it leaves no room for an "unbound diary." The Government argues that a stack of loose-leaf pages could constitute an unbound diary. While such a stack would certainly be unbound, the record as a whole does not suggest that this stack would qualify as a diary. The definition adopted in this opinion, however, leaves room for a class of goods to qualify as unbound diaries, namely, those not permanently fastened. In sum, the imported articles are not "bound" because they are in loose-leaf binders.

### IV.

Despite Customs' relative expertise and the reasoning in its classification ruling, for the reasons stated above, this court holds that Mead's day planners are neither "diaries" nor "bound." The classification ruling at issue here lacks the power to persuade under the principles set forth in *Skidmore.* Because the imported articles are properly classified under the "other" provision of subheading 4820.10.40, this court reverses the decision of the Court of International Trade.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    6

REVERSED

COSTS

**All Citations**

Each party shall bear its own costs.

283 F.3d 1342, 23 ITRD 2153

## Footnotes

1    Certain rulings-specifically, those that have the "effect of changing a practice"-undergo notice-and-comment procedures. 19 C.F.R. § 177.10(c) (2001). This case does not involve such a ruling.

2    To the extent the Government relies on any other portion of the day planners not discussed herein, this court has considered all sections and has determined that none qualify the article as a diary.

End of Document                                                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 2024-1710

**Short Case Caption** Blue Sky the Color of Imagination, LLC v. US

> **NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on _____

by ☐ U.S. Mail ☐ Hand Delivery ☐ Email ☐ Facsimile
☒ Other: CM/EMCF

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Monica P. Triana, Esq. Counsel for Appellee, United States | United States Department of Justice International Trade Field Office 26 Federal Plaza, New York, NY 10278; monica.p.triana@usdoj.gov |
|  |  |
|  |  |
|  |  |
|  |  |

☐ Additional pages attached.

Date: May  24, 2024

Signature: /s/ Christopher J. Duncan

Name: Christopher J. Duncan, Esq.