# United States Court of Appeals
# For The Federal Circuit

BLUE SKY THE COLOR OF IMAGINATION, LLC,

*Plaintiff-Appellant,*

—v.—

UNITED STATES,

*Defendant-Appellee.*

Appeal from the United States Court of International Trade in
Case No. 1:21-cv-00624-JAR, Judge Jane A. Restani

## BRIEF FOR DEFENDANT-APPELLEE, UNITED STATES

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. MCCARTHY
Director

JUSTIN R. MILLER
Attorney-in-Charge

AIMEE LEE
Assistant Director

MONICA P. TRIANA
Senior Trial Counsel
International Trade Field Office
U.S. Department of Justice
26 Federal Plaza, Room 346
New York, New York 10278
Tel. No. (212) 264-9240 or 9230
*Attorneys for Defendant-Appellee*

*Of Counsel:*

FARIHA KABIR
Office of Assistant Chief Counsel
U.S. Customs and Border Protection

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES ............................................................. 1

STATEMENT OF THE CASE................................................................. 1

I.  Factual Background........................................................................ 1

    A. Merchandise At Issue ............................................................. 2

    B. Sale And Marketing Of The Weekly/Monthly Planners.......................... 4

II.  Proceedings Before The Court Of International Trade................................. 7

SUMMARY OF ARGUMENT..............................................................11

ARGUMENT .................................................................................. 13

I.  STANDARD OF REVIEW ......................................................... 13

II.  APPLICABLE INTERPRETIVE RULES...................................... 13

III.  THE TRIAL COURT PROPERLY DETERMINED THAT THE
    WEEKLY/MONTHLY PLANNERS ARE NOT "CALENDARS" ............. 15

    A. The Trial Court Correctly Interpreted The Statutory Term
       "Calendars" ..................................................................... 15

    B. Blue Sky's Analysis Of Heading 4910 Is In Error .............................. 21

IV.  THE TRIAL COURT CORRECTLY HELD THAT THE
    MERCHANDISE IS CLASSIFIED IN HEADING 4820, HTSUS ............. 24

    A. The Trial Court Was Correct In That Heading 4820 Encompasses The
       Planners ......................................................................... 25

    B. Heading 4820 Encompasses The Planners As Similar Articles
       Independent Of The Term "Diaries"........................................... 28

    C. Blue Sky's Attempt To Challenge The Trial Court's Common
       Meaning Analysis Is Unavailing............................................... 30

D. *Mead* Does Not Change The Court's Conclusion That Classification In Heading 4820 Is Correct ................................................................... 36

V.   GRI 1 LEADS TO THE CORRECT CLASSIFICATION WITHOUT RESORT TO GRI 3 ..................................................................................... 40

CONCLUSION .................................................................................................. 43

# TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. United States,*
    964 F.3d 1087, 1092 (Fed. Cir. 2020) ................................................ 13

*Aves. in Leather, Inc. v. United States,*
    423 F.3d 1326, 1332 *(Fed. Cir. 2005)* .............................................. 28

*BASF Corp. v. United States*,
    482 F.3d 1324 (Fed. Cir. 2007) ......................................................... 13

*Bausch & Lomb, Inc. v. United States*,
    148 F.3d 1363 (1998) ......................................................................... 23

*BenQ Am. Corp. v. United States*,
    646 F.3d 1371 (Fed. Cir. 2011) ......................................................... 13

*Carl Zeiss, Inc. v. United States*,
    195 F.3d 1375 (Fed. Cir. 1999) ......................................................... 14

*Deckers Corp. v. United States*,
    752 F.3d 949 (Fed. Cir. 2014) ..................................................... 37, 38

*Degussa Corp. v. United States*,
    508 F.3d 1044 (Fed. Cir. 2007) .................................................. 14, 34

*Int'l Customs Prods., Inc. v. United States,*
    748 F.3d 1182, 1186 (Fed. Cir. 2014) .............................................. 13

*Jing Mei Auto. (USA) v. United States*,
    682 F. Supp. 3d 1354 (Ct. Int'l Trade 2023) .................................... 33

*JVC Co. of Am. v. United States*,
    234 F.3d 1346 (Fed. Cir. 2000) ......................................................... 21

*Len-Ron Mfg. Co., Inc. v. United States*,
    334 F.3d 1304 (Fed. Cir. 2003) .................................................. 14, 30

*Lerner New York, Inc. v. United States*,
   908 F. Supp. 2d 1313 (Ct. Int'l Trade 2013) ..................................................... 13

*Lynteq, Inc. v. United States*,
   976 F.2d 693 (Fed. Cir. 1992) .......................................................................... 14

*Marubeni Am. Corp. v. United States*,
   35 F.3d 530 (Fed. Cir. 1994) .............................................................................. 7

*Mead Corporation v. United States*,
   283 F.3d 1342 (Fed. Cir. 2002) ................................................................. *passim*

*Mendenhall v. Cedarapids, Inc.*,
   5 F.3d 1557 (Fed. Cir. 1993) ...................................................................... 37, 38

*Mita Copystar Am. v. United States*,
   21 F.3d 1079 (Fed. Cir. 1994) ......................................................................... 14

*Motorola, Inc. v. United States*,
   436 F.3d 1357 (Fed. Cir. 2006) ....................................................................... 14

*Russell Stedelman & Co., v. United States*,
   242 F.3d 1044 (Fed. Cir. 2001) ....................................................................... 30

*Totes, Inc. v. United States*,
   69 F.3d 495 (Fed. Cir. 1995) ........................................................................... 28

*United States v. Percheman*,
   32 U.S. 51 (1833) ............................................................................................ 33

*Victoria's Secret Direct, LLC v. United States*,
   908 F. Supp. 2d 1332 (Ct. Int'l Trade 2023) ................................................... 33

*Warner-Lambert Co. v. United States*,
   407 F.3d 1207, 1209 (Fed. Cir. 2005) ................................................. 14, 30, 34

## **Statutes**

Section 301 of the Trade Act of 1974 (Pub. L. 93-618)

iv

19 U.S.C. § 2411 ................................................................................................. 2

19 U.S.C. § 3004 ................................................................................................. 8

**Harmonized Tariff Schedule of the United States (HTSUS)**

GRI 1 ...................................................................................................... *passim*

GRI 3 ...................................................................................... 12, 40, 42

Chapter 48 .............................................................................. 8, 9, 25, 26

  Heading 4820 ............................................................................... *passim*

    Subheading 4820.10.20 ......................................................... *passim*

    Subheading 4820.10.40 ......................................................... *passim*

    Subheading 4910.00.20 ............................................................ 1, 15

    Subheading 9903.88.03 ................................................................... 1

  Chapter 49 ..................................................................................... *passim*

    Heading 4910 .............................................................................. *passim*

## STATEMENT OF RELATED CASES

No other appeal in or from the present civil action has previously been before this or any other appellate court. The Government is not aware of any related cases within the meaning of Federal Circuit Rule 47.5(b).

## STATEMENT OF THE ISSUES

Whether the trial court appropriately classified the imported weekly/monthly planners under heading 4820 of the Harmonized Tariff Schedule of the United States (HTSUS) when the merchandise is a stationery item, the primary use of which is to write down information for the purpose of planning. Separately, whether the weekly/monthly planners are specifically classified as "diaries" in subheading 4820.10.20, HTSUS.

## STATEMENT OF THE CASE

### I.    Factual Background

This appeal challenges the trial court's classification of the weekly/monthly planners in heading 4820, HTSUS.  APPX0002.  Blue Sky The Color of Imagination (Blue Sky) entered its merchandise under subheading 4910.00.20, HTSUS, as "calendars," a duty free provision.  At liquidation, U.S. Customs and Border Protection (Customs) classified the merchandise in subheading 4820.10.40, HTSUS, which covers, in relevant part, "[r]egisters, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles . . . [r]egisters, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles . . . [o]ther," a duty-free provision.  The merchandise was concurrently classified under subheading 9903.88.03, HTSUS, at a duty rate of 25 percent *ad valorem* pursuant to Section

301 of the Trade Act of 1974 (Pub. L. 93-618, 19 U.S.C. § 2411).  Blue Sky's

claimed classification was not subject to Section 301 duties at the time of entry.

### A.  Merchandise At Issue

There are four types of weekly/monthly planners at issue that all have

similar characteristics.  *See* APPX0452-1078.  They are legacy items, which means

they remain predominantly the same year after year.  APPX1262.  Blue Sky's

production file for each item displays each page of the item as well as the outer

packaging material, which provides additional salient information.  APPX0452-

1078; APPX1261; APPX0431; APPX1543.

Each of the weekly/monthly planners is identified as a "planner," both on the

packaging material and title page, as well as in Blue Sky's marketing material.

APPX0452; APPX0455; APPX0610-611; APPX0613; APPX0768-769;

APPX0924-925; APPX0353-354.  Specifically, the packaging material refers to

the items as a "Tabbed Planner Jan 2021 – Dec 2021" and highlights several

features of the items, including, for example, "6 Bonus Months, Clear Pocket

Cover, Storage Pocket, Weekly + Monthly Calendars, Reference Pages, Contacts,

Notes," APPX0452; *see also* APPX0610; APPX0768; APPX0924, and includes

the letters "W/M" and the words "Weekly + Monthly" to identify the type of

planner.  *Id.*

Three weekly/monthly planners measure 8.5 x 11 inches, and one measures 5 x 8 inches. APPX0353-354. They all include the following features: a yearly overview page showing monthly calendars for a two-year period, *see e.g.,* APPX0456, a page that allows the owner to write his or her name, address and yearly goals, *see, e.g.,* APPX00457, a full lined page for contacts, *see, e.g.,* APPX0458, and a page to identify important dates for each month. *See, e.g.,* APPX0459. In addition, each of the weekly/monthly planners includes "6 Bonus Months," which are two-page monthly view pages for each of the six months prior to the date range covered by the planner at issue, here July-December of 2020. APPX0460-471; APPX0618-629; APPX0774-785; APPX0930-941; APPX1262-1263. The monthly view pages include a separate "notes" section and small images of the prior month and subsequent month. APPX0461; APPX0619; APPX0774-775; APPX0930-931.

Following the bonus months, the weekly/monthly planners include tabbed sections for each month of the year, followed by a two-page monthly view of each month, *see, e.g.,* APPX0472-473; APPX0630-631; APPX0786-787; APPX0942-943, and then two-page weekly views covering each week of the month. *See, e.g.,* APPX0474-483; APPX0632-641; APPX0788-797; APPX0944-953. Each two-page weekly view is broken down by days of the week, with lined sections for each day. *Id.* Some of the items have additional smaller lined sections for "weekly to

do" and "notes." *Id.* Each weekday on a weekly view page has between eight and eleven lines of writing space that run across the length of the page. *Id.* More than 2/3 of the pages in the weekly/monthly planners – 106 of the either 152 or 153 pages inside the planner (excluding the cover pages and packaging) – are weekly view pages. APPX0452-1078.

Following the weekly view pages, the planners have five fully lined notes pages, APPX0602-606; APPX0760-764; APPX0916-920; APPX1072-1076, a page listing all holidays, APPX0607; APPX0765; APPX0921; APPX1077, and some include a page with a map of the United States. APPX608; APPX0922; APPX1078.

### B. Sale And Marketing Of The Weekly/Monthly Planners

"The merchandise at issue was marketed, advertised, depicted, merchandised, and sold in 2021 nationwide in U.S. retail stores and websites of Target, Walmart, Staples, Office Depot, Walgreens, CVS, and FedEx Office, and websites of Amazon.com and BlueSky.com." APPX1332; APPX1274-1275; APPX1337.

Once customers, like Target or Staples, select items for purchase, Blue Sky provides the necessary technical data about an item (dimensions, weight, etc.), as well as marketing language for use when sold online. APPX1352-1354. For example, both the marketing language and product specifications on the Staples

website for item no. 110394 were provided by Blue Sky. APPX1353-1354; APPX1376-1378. The description identifies the various sections of the legacy planner, such as "weekly and monthly planning calendars, dedicated notes pages, and a storage pocket to secure papers and receipts." APPX1376-1378. In addition, the description featured "[t]wo-page weekly and monthly calendar layouts [that] offer *extra writing space* . . . two-sided storage pocket, reference calendars, and extra notes pages." *Id.* (emphasis added). The website further noted that the item has "everything you need to organize tasks and be more productive." *Id.*; *see also* APPX1357; APPX1383-1385 (descriptive information for item no. 111291, provided by Blue Sky, including "lined weekly and monthly views for organized writing, extra notes pages, and reference calendars").

In describing item no. 110211, Blue Sky provided the following description for use by Amazon.com:

> • January 2022-December 2022 chic day planner with 12 months of monthly and weekly pages for easy year-round planning; . . .
> • Monthly view pages contain previous and next month reference calendars for long-term planning, and a notes section for important projects; . . .
> • Weekly view pages offer ample lined writing space for more detailed planning, allowing you to keep track of your appointments, reminders, ideas and to-do lists every day of the week
> • Yearly calendar planner includes a poly storage pocket, a convenient list of holidays, reference calendars, contacts pages and extra notes pages to accommodate your scheduling needs

APPX1391-1392; APPX1357.  Similar language was included on Walmart's website.  *See* APPX1403-1405 (identifying "Product details" to include "[t]wo-page weekly and monthly calendar layouts offer extra writing space").  The weekly/monthly planners are the most popular of Blue Sky's planners. APPX1358.  Although smaller than a daily planner, which includes a page for each day of the week, the weekly/monthly planners provide more ample lined space than is provided by a monthly planner, for a person to write down what they are doing on a particular day.  *Id.*

In-store marketing is done primarily through the information on the cover page or packaging, described above, which, among other things, identifies each item as a "Tabbed Planner."  APPX1361; APPX0452-1078.  Blue Sky only recently started referring to its merchandise as "planning calendar," a change made purportedly to clarify what the product is amid the Customs classification issue. APPX1362; APPX1278-1279; APPX1282.

Store displays varied by store, with some stores grouping the planners by collections (*e.g.*, the Bacarra collection items (APPX0353-354)), and others by format (*e.g.*, weekly, monthly, daily).  APPX1361-1362.  The display aisle similarly varies.  In one Staples store, for example, the weekly/monthly planners were included in an aisle for "briefcases & planners," "planners," or "fashion planners," APPX0355-356; APPX1284-1285, and at a second, in an aisle marked

"dated organizers." APPX0358; APPX1286. At Target stores, the planners were displayed in aisles marked "school and office," APPX0359-360, or "planners," APPX0360, and may be displayed in an aisle with notebooks. *Id.*; APPX1287-1288. In at least one Walmart store, they were included in an aisle marked "stationery," or "planners." APPX0361-363.

## II. Proceedings Before The Court Of International Trade

The trial court issued *Blue Sky The Color of Imagination, LLC v. United States*, Slip Op. 24-42 (April 10, 2024) (APPX0001-17), following the parties' cross-motions for summary judgment. The trial court agreed with the Government that the weekly/monthly planners were correctly classified in heading 4820, HTSUS, but classified the merchandise in a different subheading, 4820.10.20, as "diaries." *See* APPX0001-17. The court further held that the weekly/monthly planners are not classifiable as "calendars" of heading 4910, HTSUS. *Id.*

First, the trial court discussed, at length, the legal framework within which it determines classification decisions. APPX0003-9. Aside from the General Rules of Interpretation (GRI), and the Additional Rules of Interpretation (ARI), the court, in interpreting the HTSUS, looked to the Harmonized System (HS), the international product nomenclature adopted up to the six-digit coding level in the United States as the HTSUS. APPX0004 (citing *Marubeni Am. Corp. v. United States*, 35 F.3d 530, 532-33 (Fed. Cir. 1994)). The HS was part of a treaty (the

International Convention on the Harmonized Commodity Description and Coding System (Convention)) implemented into U.S. law by statute. APPX0004-5 (citing 19 U.S.C. § 3004). Unless there is legislative intent to alter the language of the HS, Congress intended to implement the international nomenclature as the HTSUS. APPX0005.

The trial court then looked to the "common or dictionary meaning," of the statutory provisions, APPX0006, and relied on the Explanatory Notes to the Harmonized System to guide the court's interpretation. *Id.* Because English is spoken in both the United Kingdom and the United States, with some linguistic differences, "the court presumes that HS terms that are implemented into the HTSUS without any alteration may encompass both the British and the American definitions of the term." APPX0007. The trial court also noted that the Convention, the basis for the HS, was adopted in English and French. APPX0008. Because the treaty provisions are adopted in two languages, they should be read in a way that the interpretations are consistent. APPX0009.

The trial court then conducted an analysis, under GRI 1, as to whether the weekly/monthly planners are properly classified in heading 4910, HTSUS, or heading 4820, HTSUS. Chapter 49, the trial court noted, covers "printed books, newspapers, pictures or other products of the printing industry . . ." whereas Chapter 48 covers "paper and paperboard, articles of paper pulp, of paper or of

paperboard." APPX0011. The court looked to the Explanatory Notes to each heading for clarity, noting that Chapter 48 covers paper products that "record various kinds of information," where the printing is subsidiary to the primary purpose of the item, as is the case for diaries, which are "essentially for writing." *Id.* (citing Explanatory Note 48.20). Comparatively, the Explanatory Note to heading 4910 (which covers "calendars of any kind"), notes that for classification in that heading, the printing must provide the article with its essential character. *Id.* (citing Explanatory Note 49.10).

Looking to the British English definition of the term "calendars," the Court held that the weekly/monthly planners are not classified in heading 4910 because they are "not merely charts for showing the divisions of a given year," but instead are notebooks that include some calendar charts, but also include "space to write information about each day/month as well as space to write additional notes, addresses, and telephone numbers." APPX0012. The court found that classification in heading 4820 was appropriate. APPX0013. The Explanatory Note for heading 4910 clarifies that the heading does not cover articles "whose essential character is not determined by the presence of a calendar" and *excludes* "[m]emorandum pads incorporating calendars and diaries (including so-called engagement calendars) (heading 48.20)." APPX0013.

The trial court then shifted its analysis to heading 4820, HTSUS, looking to several dictionaries, *The Cambridge Essential British English Dictionary* and *The Oxford English Dictionary,* to define the term diary.  The court found that the term diary encompasses both retrospective journals, and prospective scheduling devices.  APPX0013-14.  Because the weekly/monthly planners are notebooks in which you "write down things you must remember to do," the court found that they are classified as "diaries" within subheading 4820.10.20, HTSUS, and excluded from classification in heading 4910, HTSUS.  APPX0014, 16.  The court's interpretation of the statutory term was further bolstered when considering the French word for "diaries" – "agendas."  APPX0014.  The French definition for "agenda" translates to "registers, a notebook with a calendar in which one writes for each day what one proposes to do" and "appointment book."  *Id.*

Within heading 4820, the court noted that the Government argued for classification in the "other" provision, based on the Federal Circuit's decision in *The Mead Corporation v. United States*, 283 F.3d 1342 (Fed. Cir. 2002), which classified a "day planner" in that subheading.  APPX0015.  The trial court distinguished *Mead*'s analysis of the term "diary," noting that it need not rely on the narrow definition of the term included therein.  The trial court noted that the merchandise in *Mead* was different, that the *Mead* court did not consider heading

4910 at all, and the *Mead* court did not discuss the HS or the Explanatory Notes. APPX0015-16.

## SUMMARY OF ARGUMENT

The trial court properly determined that the weekly/monthly planners do not satisfy the common meaning of the statutory term "calendars" of heading 4910, HTSUS, because the planners are not a system or chart representing the days, weeks, and months of the year. The trial court's analysis of the term "calendars" is consistent with the language of the relevant Explanatory Note, which informs the meaning of the term, and provides that, for items classified in heading 4910, the printing must give the item its essential character *and* that the essential character of the item must be determined by the presence of a calendar. Although the weekly/monthly planners contained some calendar pages, the planners, as a whole, are planning devices that provide ample space to write down a variety of information to plan one's time. The essential character is not determined by the presence of a calendar, and Blue Sky fails to identify any error in the trial court's analysis.

Heading 4820 covers, in part, "[r]egisters, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles" encompassing stationery items with ample space for writing various types of

information.  The weekly/monthly planners plainly share those same characteristics, and appropriately fall within the heading.

Blue Sky, however, spends the vast majority of its submission arguing that the weekly/monthly planners are not "diaries" of heading 4820, HTSUS, and that the trial court erred in not following a Federal Circuit decision in analyzing that term.  The trial court held that the term "diaries" was a book used to record retrospective events of importance and as a prospective scheduling device, which is consistent with the common meaning of that term.  Even if, as Blue Sky asserts, this Court's decision in *Mead*, 283 F.3d 1342, dictates a definition of the statutory term "diaries" that is narrower than its common meaning, the trial court did not err in placing the weekly/monthly planners within heading 4820, as "diaries" is only one of the many *eo nomine* terms included therein.  Alternatively, the weekly/monthly planners are classifiable as "similar articles" to the listed exemplars, pursuant to principles of *ejusdem generis*.  Therefore, if anything, the determination that the subheading providing for "diaries" encompasses the weekly/monthly planners could be revised to classify the planners within subheading 4820.10.40, as articles "other" similar articles within heading 4820.

Finally, GRI 3 is inapplicable here because the weekly/monthly planners are classifiable pursuant to GRI 1.

## <u>ARGUMENT</u>

## I. STANDARD OF REVIEW

This Court reviews the CIT's summary judgment decision *de novo* "applying the same standard employed by the [CIT] in assessing Customs' classification determinations." *Apple Inc. v. United States*, 964 F.3d 1087, 1092 (Fed. Cir. 2020) (internal quotation marks omitted); *Int'l Customs Prods., Inc. v. United States*, 748 F.3d 1182, 1186 (Fed. Cir. 2014) ("This court reviews the CIT's statutory interpretation *de novo* . . . .").

## II. APPLICABLE INTERPRETIVE RULES

In construing the tariff statute, the trial court properly applied the GRIs, which are applied in numerical order, *BASF Corp. v. United States*, 482 F.3d 1324, 1325-26 (Fed. Cir. 2007), to arrive at the proper classification for the merchandise. *Id.; Lerner New York, Inc. v. United States*, 908 F. Supp. 2d 1313, 1318 (Ct. Int'l Trade 2013). As the trial court held, the classification of the weekly/monthly planners can be determined based on GRI 1, which provides that "classification [under a particular heading] shall be determined according to the terms of the headings and any relative section or chapter notes . . . ." *See also* APPX0014-17.

Undefined terms must be "construed according to their common [and] commercial meaning[]." *BenQ Am. Corp. v. United States*, 646 F.3d 1371, 1376 (Fed. Cir. 2011) (internal quotation marks omitted). To ascertain the "common

and commercial meaning[]" of a particular tariff term, the Court "may rely on its own understanding of the term as well as upon lexicographic and scientific authorities." *Len-Ron Mfg. Co., Inc. v. United States*, 334 F.3d 1304, 1309 (Fed. Cir. 2003). That is, the "court may consult dictionaries, scientific authorities, and other reliable information sources." *Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005).

In addition to considering the common meaning of statutory terms, courts have recognized that the Explanatory Notes, although not binding law, are intended to clarify the scope of tariff provisions, are instructive, and provide useful interpretive guidance for determining the scope of tariff provisions. *See, e.g. Motorola, Inc. v. United States*, 436 F.3d 1357, 1361 (Fed. Cir. 2006); *Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994); *Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed. Cir. 1992). The Explanatory Notes are the official interpretation of the HS at the international level, which again, formed the basis for the HTSUS. *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1378 n.1 (Fed. Cir. 1999). As this Court has recognized, the Explanatory Notes are "generally indicative of the proper interpretation of a tariff provision." *Degussa Corp. v. United States*, 508 F.3d 1044, 1047 (Fed. Cir. 2007); *see also Warner-Lambert Co.*, 407 F.3d at 1209. It was against this backdrop that the trial court

analyzed the relevant provisions of the HTSUS and made its classification

determination.

## III. THE TRIAL COURT PROPERLY DETERMINED THAT THE WEEKLY/MONTHLY PLANNERS ARE NOT "CALENDARS"

### A. The Trial Court Correctly Interpreted The Statutory Term "Calendars"

The trial court's interpretation of the term "calendars," in subheading

4910.00.20, HTSUS, Blue Sky's preferred classification, is supported by the plain

language of the statute, and Blue Sky can show no error in the trial court's

application of the statutory language to the weekly/monthly planners at issue.

Indeed, the trial court's determination that the weekly/monthly planners at issue do

not fall within heading 4910 is correct and should be affirmed.

Starting its analysis at the chapter and heading level, the trial court noted,

first, that Chapter 49 covers printed material – *i.e.*, "*printed* books, newspapers,

pictures, and other *products of the printing industry*; manuscripts, typescripts and

plans." APPX0011 (emphasis added). The trial court then correctly looked to the

dictionary definition of the *eo nomine* term "calendars" from the *Oxford English

Dictionary*, defining calendar as a "system according to which the beginning and

length of successive civil years, and the subdivision of the year into its parts, is

fixed . . ." or a "table showing the divisions of a given year into its months and

days, and referring the days of each month to the days of the week . . . ."

APPX0012. Indeed, the trial court referred to "calendars" as "charts for showing the divisions of a year." *Id.*

The trial court appropriately looked to the Explanatory Note for guidance as to the types of articles that fall within the provision. Explanatory Note 49.10 states that heading 4910 "relates to calendars of any kind . . . <u>provided</u> that the *printing* gives the article its essential character." APPX0011 (underline in original, italics added) (quoting Explanatory Note 49.10). The emphasis on printing is consistent with the stated coverage of Chapter 49, *i.e.*, various items of "the printing industry."

The trial court's analysis of the statutory term is consistent with almost every other dictionary source. Indeed, according to *Webster's New Collegiate Dictionary* (1979) at 155, a calendar is defined as "1: a system for fixing the beginning, length and divisions of the civil year and arranging days and longer divisions of time (as weeks and months) in a definite order . . . 2: a tabular register of days according to a system usu. covering one year and referring the days of each month to the days of the week . . . ." APPX1411. *Webster's New World Dictionary*, *Third College Edition* (1988) at 198, similarly defines calendar as "1 a system of determining the beginning, length, and divisions of a year and for arranging the year into days, weeks, and months 2 a table or chart that shows such an arrangement, usually for a single year." APPX1416; *see also Collins*

*Dictionary*, APPX1421 (defining calendar as "1. a system of determining the beginning, length, and divisions of a year and for arranging the year into days, weeks and months 2. a table, chart, register, etc. that shows such an arrangement, usually for a single year 3. a list or schedule, as of pending court cases, bills coming before a legislature, planned social events. etc.").

Similarly, the BLACK'S LAW DICTIONARY (7th Edition 1999) at 195, defines calendar as "1. A systematized ordering of time into years, months, weeks, and days . . . ." APPX1461. And, the *American College Dictionary* (1962) at 169, defines calendar as "1. any of various systems of reckoning time, esp. with reference to the beginning, length, and divisions of a year . . . . 2. a tabular arrangement of the days of each month and week in a year. 3. a list or register, esp. one arranged chronologically, as a list of the cases to be tried in a court . . . ." APPX1466.

A common thread throughout these definitions, including the one relied upon by the trial court, is that the term "calendar[]," is a system or chart representing the days, weeks or months of the year. Typically a calendar must include a table or grid – some kind of visual depiction – to identify the breakdown of the year by days, weeks and months. And, the purpose of a calendar is for "fixing," "arranging" or "determining" where each particular day fits in reference to other days/weeks/months in the year. *See supra* at 16-17.

This interpretation is further confirmed by a more fulsome review of the

Explanatory Notes.  General Explanatory Note to Chapter 49 states that "With . . .

few **exceptions . . .** this Chapter covers all printed matter of which the essential

nature and use is determined by the fact of its being printed with motifs, characters

or pictorial representations."  Explanatory Note 49.10, further provides:

> This heading relates to calendars of any kind whether
> they are printed on paper, paperboard, woven fabric or
> any other material, **provided** that the printing gives the
> article its essential character. They may contain, in
> addition to the normal sequence of dates, days of the
> week, etc., various other items of information, such as
> notes of important events, festivals, astronomical and
> other data, verses and proverbs. They may also
> incorporate pictorial or advertising matter. However,
> publications sometimes improperly called calendars
> which, although dated, are published essentially to give
> information concerning public or private events, etc., are
> classified in **heading 49.01** (unless falling in **heading
> 49.11** as publicity matter.)
> . . .
> The heading, however, **does not cover** articles whose
> essential character is not determined by the presence of a
> calendar.
>
> *The heading also* **excludes:**
> *(a) Memorandum pads incorporating calendars and
> diaries (including so-called engagement calendars)
> (**heading 48.20**) . . . .*

*Id.*  (italics added, bold in original).  Like the dictionary definitions, the

Explanatory Note explains that a calendar includes the "normal sequence of dates,

days of the week, etc." and, as the trial court noted, it further provides that the

"printing" on the item, which reflects the features of a calendar must "give[]the item its essential character."  Explanatory Note 49.10; APPX0011.  Additionally, as the Explanatory Note states, the essential character of the item – the true nature of the item – must be "determined by the presence of a calendar."  Explanatory Note 49.10; APPX0013.

Here, the essential character of the planners is not determined by the presence of a calendar and they do not, as a whole, satisfy the common meaning of the term.  While the items include some calendar pages, 106 of the approximately 150 pages (excluding the packaging and cover) are weekly view pages, the majority of which are lined pages, noting the days of the week, for each month of the year but are primarily lined pages.  *See e.g.*, APPX0452-608.  Blue Sky's contention that the weekly/monthly planners are "calendars" is further belied by its packing materials, *see e.g.* APPX0452, its marketing documents, APPX0353-354, and the language provided to its own customers, *see e.g.* APPX1391-1392; APPX1357, which focuses on the planners' use for year-round scheduling.  The marketing language notes their use to keep track of "appointments, reminders, ideas and to-do lists every day of the week" and the presence of "ample lined writing space for more detailed planning."  *Id.*  The purpose of the planners is for the user to write down information in the space provided to plan his or her time.

The trial court committed no error in applying the law to the facts. As the trial court correctly noted, while "[p]ortions" of the items may meet the definitions of a calendar "the whole of each item . . . exceeds Blue Sky's proffered <u>eo nomine</u> classification." APPX0012. Notably, the Explanatory Note specifically excludes from classification in heading 4910 "Memorandum pads incorporating calendars and diaries (including so-called engagement calendars) (**heading 48.20**)." Explanatory Note 49.10; APPX0013. Accordingly, items that incorporate a calendar will not automatically be classified as "calendars" in the tariff. For instance, engagement calendars, defined by the trial court in its analysis of heading 4820, are precisely the items at issue – books used for the "daily recording of social engagements and other appointments." APPX0016; APPX1468.

As the trial court held, "the products are not merely charts for showing the division of a given year, but rather are bound notebooks that contain charts that meet the calendar definition along with space to write information about each day/month as well as space to write additional notes, addresses, and telephone numbers." APPX0012-13. The products not only keep track of days, but are used to make notes regarding those days. *Id.* Indeed, as the trial court stated, "[t]here is a difference between a 'calendar' and a 'book with a calendar, just as there is a difference between a 'wheel' and a 'vehicle that moves by wheels.'" APPX0013.

The weekly/monthly planners do not satisfy the common meaning of the statutory term "calendars" and are not, therefore, classifiable in heading 4910, HTSUS.

**B.  Blue Sky's Analysis Of Heading 4910 Is In Error**

Blue Sky appears to agree with the trial court's – and the Government's – definition of the term "calendars," but fails to establish how the trial court erred in determining that the planners do not fall within that *eo nomine* provision.  Blue Br. at 21.  Blue Sky makes two arguments.  First, Blue Sky claims that the trial court applied the so-called "more than" doctrine.  *Id.* at 22-23.  Second, Blue Sky claims that the trial court made its own findings of fact.  *Id.* at 23-24.  Neither contention has any merit.

With respect to Blue Sky's first contention, Blue Sky simply misconstrues the trial court's analysis.  As a threshold matter, we agree that the "more than" doctrine no longer applies.  The "more than" doctrine is a judicially-created tool used when classifying goods under the predecessor to the HTSUS, the Tariff Schedule of the United States (TSUS).  *JVC Co. of Am. v. United States*, 234 F.3d 1348, 1354 (Fed. Cir. 2000).  These types of judicially-created interpretive tools, as the *JVC* court noted, were sanctioned in the General Interpretive Rules to the TSUS.  *Id.*  All interpretive principles under the HTSUS are, however, subsumed in the GRI's, *id.*, which, as stated above, are the interpretive rules that govern

classification determinations.  *See supra* at 13.  The GRIs are precisely the interpretive tools that the trial court, and the Government, applied in concluding that the weekly/monthly planners are not classifiable in heading 4910, HTSUS, as "calendars."  That the trial court states that the items "exceed[] Blue Sky's proffered <u>eo nomine</u> classification," APPX0012 (emphasis in original), does not negate that analysis.

Indeed, as required by GRI 1, the trial court looked to the common meaning of the statutory term "calendars" – a system or chart representing the days, weeks or months of the year.  As noted above, this typically includes a table or grid or some kind of visual depiction, the purpose of which is for "fixing," "arranging" or "determining" where each day fits with respect to other days/weeks/months in the year.  *See supra* at 17.  As the Explanatory Note explicitly states, to be classified as a "calendar[]," the "printing" on the item must give the item its "essential character" *and* the "essential character" of the item must be "determined by the presence of a calendar."  Explanatory Note 49.10.  These requirements cannot be satisfied.  Acknowledgement that the planners contain some calendar pages that constitute less than one-third of the pages in the weekly/monthly planners does not lead to the conclusion that the items on the whole are "calendars."  *See supra* at 18-19.  Instead, through the application of the GRIs, and guidance from the

Explanatory Notes, the article here is a planning device, whereby the user can write down information, not a calendar. *Id.*

Second, Blue Sky contends that the trial court made findings of fact by calling the merchandise "notebooks," which, it contends, was unsupported by the parties' undisputed statements. Blue. Br. at 23-24. The trial court did not make any such finding of fact, and there was no need for the court to do so. The parties do not dispute what the merchandise is, APPX0430-431; APPX1542-1543, or that the issue was ripe for summary judgment. *See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (noting that "summary judgment is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is.") Indeed, if there were any question as to what the planners are, the record included production files showing each page of the weekly/monthly planners along with its packaging material. APPX0452-1078.

The trial court described the merchandise, then noted that the weekly/monthly planners at issue are "bound notebooks that contain charts that meet the calendar definition along with space to write information about each day/month as well as space to write additional notes, addresses, and telephone numbers." APPX0012-13; *see also* APPX0002-3. The trial court did not make any finding of fact. Blue Sky takes issue with the trial court's description of the articles as "notebooks" and the fact that it did not define the term. Blue Br. at 23.

Had the court determined that the proper classification was in the *eo nomine* provision of heading 4820 for "notebooks," a further analysis of that term would have been required. But the trial court did not make such a determination. The trial court, therefore, committed no error in its analysis, properly holding that the weekly/monthly planners are not classifiable in heading 4910 as "calendars."

## IV. THE TRIAL COURT CORRECTLY HELD THAT THE MERCHANDISE IS CLASSIFIED IN HEADING 4820, HTSUS

Blue Sky does not assert that classification of the weekly/month planners in heading 4820, HTSUS, is not proper. Blue Sky instead challenges the trial court's decision to classify the planners under the *eo nomine* provision for "diaries" in subheading 4820.10.20, in light of this Court's decision in *Mead*. Blue Br. at 9-19. In *Mead*, this Court interpreted the tariff term "diaries" to mean a book to record retrospective events. *Mead*, 283 F.3d at 1348. The trial court interpreted the term "diaries" to include a book to record retrospective events of importance as well as a prospective scheduling device. APPX0013-14. This interpretation should be affirmed as it is supported by the common meaning, as derived from dictionary definitions of the term as well as the relevant Explanatory Notes. And, even if this Court's decision in *Mead*, 283 F.3d 1342, dictates a definition of the term "diaries" that is narrower than its common meaning, this does not change the conclusion that the weekly/monthly planners should be classified in heading 4820.

As the trial court noted and Explanatory Note 48.20 confirms, heading 4820, which covers, among other things, "[r]egisters, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles," encompasses "paper products that can be used to record various kinds of information." APPX0011; *see also* Explanatory Note 48.20 ("This heading covers various articles of stationery . . . ") The weekly/monthly planners plainly share those same characteristics. Accordingly, pursuant to principles of *ejusdem generis*, the planners can be classified within subheading 4820.10.40, as articles "other" than "diaries" within heading 4820 because they are similar to the listed exemplars.

## A. The Trial Court Was Correct In That Heading 4820 Encompasses The Planners

As GRI 1 requires, the trial court looked to the language of the statute, APPX0011, and considered the relevant Explanatory Notes. APPX0009; APPX0011. The trial court noted, as an initial matter, that the chapter under which heading 4820 falls, Chapter 48, covers generally "paper and paperboard; articles of paper pulp, of paper or of paperboard." APPX0011. Heading 4820 then identifies several lists of items, which are classifiable *eo nomine* therein, including, in part, "[r]egisters, account books, notebooks, order books, receipt books, letter pads, memorandum pads, diaries and similar articles . . . ." APPX0009.

The Explanatory Notes provide guidance as to what items were intended to be included and support the classification of the weekly/monthly planners in heading 4820. Explanatory Note 48.20 provides, in relevant part:

> this heading covers various articles of stationery, **other than** correspondence goods of **heading 48.17** and the goods referred to in Note 10 to this chapter. It includes:
>
> (1) Registers, account books, note books of all kinds, order books, receipt books, copy books, diaries, letter pads, memorandum pads, engagement books, address books and books, pads, etc., for entering telephone numbers.
> . . .
> Some articles of this heading often contain a considerable amount of printed matter but remain classified in this heading (and not in Chapter 49) **provided** that the *printing is incidental to their primary use*, for example, on forms (essentially for completion in manuscript or typescript) and diaries (essentially for writing).
>
> The goods of this heading may be bound with materials other than paper (e.g. leather, plastics or textile material) and have reinforcements or fittings of metal, plastics, etc.

Explanatory Note 48.20 (bold in original, italics added). As the trial court acknowledged, the Explanatory Notes "clarify that Chapter 48 is for other paper products [*i.e.* 'various articles of stationery'] that can be used to record various kinds of information." APPX0011. And, Explanatory Note 48.20, like Explanatory Note 49.10, considers the importance of the printed material on the paper product.

Specifically, Explanatory Note 48.20 provides that where the printing on the item is *incidental* to the primary use of an item, classification remains in heading 4820 (not Chapter 49). Explanatory Note 48.20. Juxtapose this language with Explanatory Note 49.10, discussed above, which requires that for classification in heading 4910, the printing itself – such as the printing that provides a depiction of days, weeks or months of the year (*i.e.*, a calendar) – must give the item its *essential character*. Explanatory Note 49.10. With respect to the weekly/monthly planner, the printed information is incidental to the main purpose of the item, which is to provide the user with the necessary space to input information in an organized fashion (*i.e.*, it is "mostly for writing," like a diary). Explanatory Note 48.20.

Notably, to support the determination that the planners fall within heading 4820, Explanatory Note 48.20 specifically calls out an item, an engagement book, as classifiable in heading 4820. Explanatory Note 48.20. An engagement book, indistinguishable from the planners at issue, is defined in the *Collins Dictionary* as "a book or diary in which people keep a note of their social and business appointments." APPX1429. As stated above, Explanatory Note 49.10 simultaneously excludes what appears to be an identical item, an engagement calendar, from classification in heading 4910, noting instead that it is classifiable in heading 4820. *See* Explanatory Note 49.10 (excluding from heading 4910

"Memorandum pads incorporating calendars and diaries (including so-called engagement calendars," which are of "**heading 48.20**))." *See also supra* at 20; APPX0016. To be sure, Blue Sky admits that the planners are, among other things, used for that precise purpose, "to note future appointments," APPX0050, or, stated another way, for "planning the *future*." Blue Br. at 6 (emphasis in original). Accordingly, the merchandise at issue fits within heading 4820.

### B. Heading 4820 Encompasses The Planners As Similar Articles Independent Of The Term "Diaries"

By its plain terms, heading 4820 contains a list of specific items followed by the general phrase "and similar articles." If this Court finds that the weekly/monthly planners are not listed *eo nomine* in heading 4820, as was the trial court's approach below, the rule of *ejusdem generis* applies to classify the merchandise in that heading. *Ejusdem generis* applies to determine the scope of the general word or phrase "and similar articles" when, like here, that phrase follows a list of more specific terms. *See, e.g., Aves. in Leather, Inc. v. United States*, 423 F.3d 1326, 1332 (Fed. Cir. 2005) (citing *Totes, Inc. v. United States*, 69 F.3d 495, 498 (Fed. Cir. 1995)). This Court, in *Aves. in Leather, Inc.*, 423 F.3d at 1332, held that "for any imported merchandise to fall within the scope of the general term or phrase [ejusdem generis requires that] the merchandise . . . possess the same essential characteristics or purposes that unite the listed exemplars . . . ." *Id*.

The essential characteristics and purposes of the items listed in the relevant section of heading 4820 (the items ultimately grouped as subheading 4820.10) – registers, account books, notebooks, order books, receipt books, letter pads, memorandum pads, and diaries – are that they are stationery items to write down various types of information.  Defining the various terms make this analysis clear.

Indeed, according to *Merriam Webster Online Dictionary*, an account book is "a book in which accounts are kept; ledger," APPX1478, an order book is "a book that shows the number of orders that a company has received from its customers . . . ," APPX1484, and a receipt book is defined as either "a book containing [receipts]" or "a book containing forms to be used in giving receipts for payment of money."  APPX1490.  According to *Webster's New Collegiate Dictionary*, at 778) a notebook is defined as "a book for notes or memoranda." APPX1412.  And, in *Collins Dictionary*, memo pads are defined as a "block with tear off pages for writing notes on," and a register is "a. a record or list of names, events, items, etc., often kept by an official appointed to do so b. a book in which this is kept . . . ."  APPX1433, APPX1445.  Therefore, the weekly monthly planners are classifiable in heading 4820, HTSUS because they are stationery items used to record information, consistent with the purpose of the other listed exemplars.

## C. Blue Sky's Attempt To Challenge The Trial Court's Common Meaning Analysis Is Unavailing

The trial court engaged in a GRI 1 and common meaning analysis in considering heading 4820. Blue Sky's attempt to challenge the trial court's analysis of the common meaning of the term "diaries" is unpersuasive. As stated above, *see supra*, to ascertain the "common and commercial meaning[]" of a particular tariff term, the court "may rely on its own understanding of the term as well as upon lexicographic and scientific authorities," *Len-Ron*, 334 F.3d at 1309, by "consult[ing] dictionaries, scientific authorities, and other reliable information sources." *Warner-Lambert*, 407 F.3d at 1209. That is precisely what the trial court did.

As part of its GRI 1 analysis, the trial court looked to several dictionary sources to define the term diary against the backdrop of the history of the HTSUS and the HS. APPX0003-17. *See Russell Stedelman & Co., v. United States*, 242 F.3d 1044, 1048 (Fed. Cir. 2001) (In construing a tariff term, the court first must determine if "Congress clearly defined the term in either the HTSUS or its legislative history."). Despite its agreement that the trial court could consider the term in this context, APPX1607; APPX1613-14, Blue Sky now takes issue with the trial court's analysis of the British English and French meaning of the statutory term. Blue Br. at 14-15. The trial court noted that the origin of the HTSUS, the HS, was an international nomenclature system adopted by the United States and its

trading partners up to the six-digit level, the purpose of which was to establish a "common core language for trade." APPX0004-5. The trial court considered the British English definition of relevant terms, noting that the HS was developed through the Customs Co-Operation Counsel, an organization established in 1952. At that time, the United Kingdom was a contracting party, APPX0007-8; the United States did not join until much later. *Id.* As Blue Sky conceded before the trial court, consideration of the British English definitions of statutory terms was proper. APPX1613-14. Blue Sky cannot cite to any judicial precedent that holds it is improper to consider British English or the French translation of a tariff term, particularly given the history of the HS.

Having noted its reasoning for referencing the British English meaning of statutory terms, APPX0004-9, the trial court looked, first, to the *Cambridge Essential British English Dictionary*, which defined diary as "a book in which you write down about what you have done and your thoughts and feelings" or "*a book in which you write things that you must remember to do.*" APPX0013 (citing *Cambridge Dictionary, Essential British English*, https://dictionary.cambridge.org/dictionary/essential-british-english/diary (last visited Feb. 21, 2024) (emphasis added). The trial court also referenced the *Oxford English Dictionary*, which defined the term as "[a] daily record of events or transactions, a journal; specifically a daily record of matters affecting the writer personally, or which come

under his or her personal observation" or "[a] book prepared for keeping a daily record, or having spaces with printed dates for daily memoranda and jottings; also, applied to calendars containing daily memoranda on matters of importance to people generally, or to members of a particular profession." APPX0013-14 (citing *Oxford English Dictionary*, https://www.oed.com/dictionary/calendar_n?tl=true (last visited Mar. 21, 2024)).

The trial court concluded that the common meaning of the term diaries can, as stated above, include both a "retrospective journal" as well as a "prospective scheduling device." APPX0014. And, because the weekly/monthly planner is a book in which the user "write[s] things that you must remember to do," the trial court held that they appear to be "diaries." APPX0014. These definitions, and the trial court's conclusion, are consistent with the meaning of the term diary from other dictionary sources. In the *Collins Dictionary*, for example, the British English definition of diary includes "1. a personal record of daily events, *appointments*, observations, etc. 2. a book for keeping such record." And, the American English definition from that same source includes, among other things, "a book or pad containing pages marked and arranged in calendar order, in which to note appointments and the like." *Collins Dictionary,* Diary, *https://collinsdictionary.com/us/dictionary/english/diary* (last visited Aug. 29, 2024).

The trial court bolstered its conclusion when considering the French version of the tariff – Système Harmonisé – which includes the word "agendas" in place the English term "diaries" in heading 4820. APPX0014. The Convention, the trial court noted, was drafted in both English and French, making both languages equally authoritative in demonstrating the intended meaning of the tariff terms. *See* APPX0008. The trial court, thus, translated the French definition of the word "agenda" as meaning "registers, a notebook with a calendar and in which one writes for each day what one proposes to do" and "appointment book." APPX0014. This is precisely the merchandise at issue here. And, as the Supreme Court held, when a treaty is drafted in two languages, a construction that can be read in conformity should prevail. APPX0009 (citing *United States v. Percheman*, 32 U.S. 51, 52 (1833)). Thus, analysis of the statutory term "diaries" as including, not just a retrospective journal, but a prospective scheduling device, is supported.

Moreover, the trial court *did not* conclude, as Blue Sky contends, that *only* British English or French was relevant. Blue Br. at 15. To the contrary, citing to *Victoria's Secret Direct, LLC v. United States*, 908 F. Supp. 2d 1332, 1345 (Ct. Int'l Trade 2013) and *Jing Mei Auto. (USA) v. United States*, 682 F. Supp. 3d 1354, n. 27, 35 (Ct. Int'l Trade 2023)*, the trial court presumed that terms "encompass both the British and American English definitions of the terms," and then noted that "in the absence of a specific, American change, the court aims to identify what

the tariff term would mean if used as part of the 'common core language for trade' and *where appropriate* consider the British definition of the term." APPX0007 (emphasis added). It is worth noting that, here, the *Collins Dictionary* provided both an American and British definition of the term diary, consistent with the trial court's conclusion as to the meaning of the term – covering both a retrospective journal and a scheduling device. *See supra* at 32. Blue Sky's assertion that the trial court applied an "obscure meaning of the term in Great Britain, France, or an exporting country," Blue Br. at 19, is patently incorrect.

Blue Sky next appears to challenge the trial court's reliance on the Explanatory Notes which, while not binding, are understood as "generally indicative of the proper interpretation of a tariff provision." *Degussa Corp.*, 508 F.3d at 1047; *see also Warner-Lambert Co.*, 407 F.3d at 1209. Blue Sky contends that in arriving at the meaning of the tariff term, the trial court should not have used the Explanatory Notes to "import" either "incidental characteristics" or "extraneous limitations" on the scope of the heading. Blue Br. at 15-16. The trial court did neither. Instead, the trial court appropriately considered Explanatory Note 48.20, and to the extent relevant, Explanatory Note 49.10, both of which provide helpful guidance as to the meaning of the tariff term.

As stated above, *see supra* at 26, Explanatory Note 48.20 identifies the chapter as covering "articles of stationery," and notes that the printing on items

classifiable in heading 4820 is *incidental* to the primary use of the item. *Id.* The

Explanatory Note then specifically identifies "engagement book" – "a book or

diary in which people keep a note of their social and business appointments" – as

being classifiable in that heading. *See supra* at 27. This is consistent with the

plain meaning of the term "diaries," as set forth herein, and supports the trial

court's conclusion that the weekly/monthly planners, which are the same as

engagement books, are classified in heading 4820, and more specifically, in

subheading 4820.10.20 as "diaries."

Blue Sky takes particular issue with the trial court's reference to Explanatory

Note 49.10, which identifies, as excluded from heading 4910 (and *included* in

heading 4820), "memorandum pads with calendars and diaries (including so-called

engagement calendars)." Blue Br. at 16-17. Despite the fact that an engagement

calendar is defined as "an appointment book for the daily recording of social

engagements and other appointments," APPX1468, Blue Sky curiously contends

the definition of "engagement calendar" actually supports its assertion that diaries

record *past* events. Blue Br. at 16. Blue Sky dissects the definition of

"engagement calendar" pointing to the words "daily recording" and "book" as if

these words indicate a limitation to recording only past events. *Id.* at 16-17. That

the engagement calendars allow for "daily recording" or that an engagement

calendar is described as a "book" does not factor into whether it (or any diary) is

used for the recordation of future or past events.  And, an appointment book would logically identify an appointment that takes place in the future, it would not be used to take notes on an appointment that occurred in the past.

Finally, Blue Sky then argues that even if the Explanatory Notes support the trial court's conclusion that a diary covers both a retrospective journal and a prospective scheduling device, this Court should disregard the Explanatory Note as being contrary to the plain meaning of the statutory term.  Blue Br. at 17-18.  As stated above, the Explanatory Notes are consistent with the trial court's proper analysis, under GRI 1, of the statutory term.

Blue Sky's contentions simply do not call into question the trial court's analysis under GRI 1 and the Explanatory Notes of the statutory term "diaries," or classification of the planners in heading 4820.

### D. *Mead* Does Not Change The Court's Conclusion That Classification In Heading 4820 Is Correct

Blue Sky devotes much of its brief arguing that the trial court was bound by the analysis of the term "diaries" set forth in *Mead*, 283 F.3d 1342.  *See e.g.*, Blue Br. at 9-19.  Specifically, Blue Sky contends that based on *Mead*, the term "diaries" only covers a "retrospective record of the past," Blue Br. at 10, and therefore, cannot include the merchandise at issue.  Although Blue Sky may be correct with respect to the analysis of the term "diaries" under the principle of *stare decisis*, it does not change the accuracy of the trial court's pure GRI 1

analysis, or its ultimate conclusion that classification in heading 4820, HTSUS, is proper, and that classification in heading 4910, HTSUS, is not. Should *Mead* preclude classification of the weekly/monthly planners as "diaries," they are properly classified as "similar articles" to those listed in heading 4820 – as was the outcome in *Mead*. That is, if *Mead* precludes classification of the merchandise as "diaries," heading 4820 would still be correct. Only the subheading classification would change.

As a threshold matter, we agree with the trial court's analysis of the statutory term "diaries" as including both a retrospective journal and a prospective scheduling device according to the application of GRI 1, as guided by the common meaning of the term and the Explanatory Notes. *See supra* at 29-33. The trial court, however, did not apply the interpretation of the statutory term "diaries" from the *Mead* decision, instead distinguishing it on a number of grounds. APPX0015-16. Among other things, the trial court noted that *Mead* did not look to the history of the Harmonized Schedule or discuss the need to reference the British English definition of certain terms. Moreover, the trial court noted that the merchandise here is different from that considered in *Mead*, and that the *Mead* court did not conduct an analysis of heading 4910, or the relevant Explanatory Note, both of which are instructive when considered in conjunction with heading 4820. *Id.*

However, we recognize that based on the principle of *stare decisis,* this Court may be bound by the legal interpretation in *Mead.*

Specifically, this Court in *Deckers Corp. v. United States*, 752 F.3d 949 (Fed. Cir. 2014) held that "each prior precedential holding of the court becomes a 'statement of the law, or precedent, binding in future cases before the same court or another court owing obedience to its decision.'" *Id.* at 956 (quoting *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1570 (Fed. Cir. 1993)).  This applies only with respect to "legal determinations." *Deckers*, 752 F.2d 956.  Indeed, the *Deckers* court noted, "[i]n this Circuit, a later panel is bound by the determinations of a prior panel, unless relieved of that obligation by an *en banc* order or a decision of the Supreme Court." *Id.* at 959.[1]  The Government did *not* argue for classification under the term "diaries" based on the decision in *Mead.*

However, notwithstanding the *Mead* court's interpretation of "diaries," classification in heading 4820 remains appropriate.  Under a GRI 1 analysis, the items embraced by heading 4820 are stationery products, the common purpose of which is to provide space to write a variety of information.  Many of these items, such as diaries and account books often record items as they relate to a particular

---

[1] Blue Sky argues that, under *stare decisis*, a legal analysis is binding unless it is established to be "clearly erroneous."  Blue Br. at 9-10.  That is no longer good law.  Again, *Deckers* held that a binding decision must be overturned by an *en banc* panel or a decision of the Supreme Court. *Deckers*, 752 F.3d at 959.

day.[2]  The weekly/monthly planners – made up predominantly of weekly planner

pages used to write down information and plan one's time – share these common

characteristics.  And, consideration of the various additional sections of the

planners (contacts pages, notes pages, yearly goals *etc.*) further establishes that

they are used for the recordation and organization of not just future appointments

but any information.

The facts in *Mead* are helpful to this analysis.  In that case, the items were

identified as "day planners," and the *Mead* court held that they should be classified

as "similar articles" in subheading 4820.10.40, HTSUS – the "other" provision

under which the merchandise at issue here was classified at liquidation.  *Mead,* 283

F.3d at 1350.  Although the merchandise in *Mead* is not identical to the

merchandise at issue, they share a number of similar characteristics.  In *Mead*, each

item contained "a calendar, a section for daily notes, a section for telephone

numbers and addresses, and a notepad. The larger models contain[ed] the features

of the basic model with additional items such as a daily planner section, plastic

ruler, plastic pouch, credit card holder, and a computer diskette holder."  *Id*. at

1344.

---

[2] That an item is dated, however, is not dispositive of whether that item is
classified as a calendar.  Indeed, the Explanatory Note 49.10 specifically excludes
certain items from classification in that heading despite being dated.

The issue in *Mead* was whether the items should be considered "diaries" of heading 4820.10.20, HTSUS, or as "similar articles" that are properly classified in subheading 4820.10.40, HTSUS. The *Mead* court found that the merchandise was not a diary, but instead was similar to a diary. *Id.* at 1348. In doing so, the Court focused on the "day planner" section, which included only a couple of lines near each hour and did not envision recordation of past events. *Id.* at 1348-49. Although the *Mead* court only looked to whether the item was a diary, or an item similar to a diary (which it found the merchandise to be), this Court should also look to the additional listed exemplars in the tariff heading, and this Court should reach the same result – classification in subheading 4820.10.40, HTSUS. Indeed, the weekly/monthly planners share the common characteristics of all of the exemplars, including "diaries," stationery items used to write down various kinds of information.

Therefore, if the Court finds that *Mead's* narrow interpretation of the term "diaries" is binding, the weekly/monthly planners should be classified in subheading 4820.10.40.

## V.    GRI 1 LEADS TO THE CORRECT CLASSIFICATION WITHOUT RESORT TO GRI 3

Blue Sky argues that if the goods are classifiable under heading 4820 (which they are), GRI 3 applies to decide between classification in heading 4820 and

heading 4910.  Blue Br. at 24-28.  This contention ignores the correct application of GRI 1 and should be rejected.

As a threshold and dispositive matter, GRI 3 applies to determine the appropriate classification when "goods are, *prima facie*, classifiable under two or more headings . . . ."  As stated above, the weekly/monthly planners are not *prima facie* classifiable as "calendars" of heading 4910.  Although Blue Sky finds significant the fact that there are calendar pages in the planner – calling them "composite goods" – that an item includes calendar pages does not make the product, as a whole, a calendar.  As the trial court aptly noted "[t]here is a difference between a 'calendar' and a 'book with a calendar,' just as there is a difference between a 'wheel' and a 'vehicle that moves by wheels.'"  APPX0013.

As stated above, the explanation for the term "calendars" in Explanatory Note 49.10 is consistent with the common meaning of the term (a system or chart representing the days, weeks or months of the year, typically including a table or grid), and dictates that the item be looked at *as a whole*.  *See supra* at 15-19.  It explains that a calendar includes the "normal sequence of dates, days of the week, etc." and, as the Court noted, the "printing" on the item, which reflects the "sequence of dates" and "days of the week" (and which may include "notes of events, festivals, astronomical" information) must "give[] the article its essential character."  EN 49.10; APPX0011.  Moreover, the essential character of the item –

the true identity of the item – must be "determined by the presence of a calendar."

Here, it is not.

The entirety of the item is not a table or grid representing the days, weeks or months of the week, the printing does *not* give the item its essential character, nor is the essential character determined by the presence of the table or grid. And, the item does not merely, as Blue Sky asserts, "include some additional note taking functions." Blue Br. at 22. The weekly/monthly planners are stationery items, the primary use of which is to write down information for the purpose of planning. Accordingly, the only heading under which the merchandise is classified is heading 4820 and, thus, GRI 3 does not apply.

## CONCLUSION

For these reasons, we respectfully request that the Court affirm the judgment of the trial court.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

By:  /s/ Aimee Lee
AIMEE LEE
Assistant Director

*Of Counsel:*

Fariha Kabir
*Office of Assistant Chief Counsel*
*U.S. Customs and Border Protection*

/s/ Monica P. Triana
MONICA P. TRIANA
Senior Trial Counsel
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
(212) 264-9237

Dated:  August 30, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Monica Triana*

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO FEDERAL CIRCUIT RULE 32(b)(3)**

I, Monica Triana, a senior trial counsel in the Office of the Assistant

Attorney General, Civil Division, Commercial Litigation Branch, International

Trade Field Office, who is responsible for the foregoing brief, relying upon the

word count feature of Microsoft Word, the word processing program used to

prepare the brief, certify that this brief complies with the type-volume limitation

under Fed. R. App. P. 32(a)(7)(B), and contains 9,618 words.


_/s/ Monica Triana_
MONICA TRIANA